_____

| | | |
|---|---|---|
| RADHA BOLIVAR AND | ) | |
| ANGELICA GOATACHE, | ) | |
| Plaintiffs, | ) | **DOCKET NO. 1:24-cv-00155** |
| | ) | |
| v. | ) | **JUDGE TRAVIS R. MCDONOUGH** |
| | ) | |
| HMD TRUCKING, INC., and | ) | **MAGISTRATE JUDGE** |
| ANTONIO WORTHAM | ) | **MICHAEL J. DUMITRU** |
| Defendants. | ) | |
| | ) | |
| | ) | **Jury Demanded** |

---

**DEFENDANT HMD TRUCKING, INC. AND ANTONIO WORTHAM'S
MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR PARTIAL
SUMMARY JUDGMENT ON PLAINTIFFS' PUNITIVE DAMAGES CLAIMS AGAINST
HMD TRUCKING, INC. AND ANTONIO WORTHAM, AND ON DIRECT
NEGLIGENCE CLAIMS AGAINST HMD TRUCKING, INC.**

---

Defendants HMD Trucking, Inc. ("HMD Trucking" or "HMD") and Antonio Wortham ("Mr. Wortham") (collectively "Defendants"), through counsel and pursuant to Federal Rules of Civil Procedure 56, Local Rule 7.1, and the Order regarding extension of deadlines by 90 days (Doc. 65), submit this Memorandum of Law in support of their Motion For Partial Summary Judgment on Plaintiffs' Punitive Damages Claims Against HMD Trucking, Inc. and Antonio Wortham and on Direct Negligence Claims Asserted Against HMD Trucking, Inc. ("Motion"). As will be shown below, the undisputed material facts in this matter do not and could never support an award of punitive damages against Defendants nor can they show a finding of direct negligence against HMD. Therefore, Defendants move this Honorable Court for judgment as a matter of law as to Plaintiffs' claim for punitive damages and direct negligence claims.

1

**I.     The Incident**

This case involves a two-vehicle incident between a tractor trailer driven by Mr. Wortham and another vehicle driven by Radha Bolivar Angeles ("Mr. Bolivar") in Marion County, Tennessee on March 1, 2023 (the "Incident"). (Compl. at ¶10, Doc. 1-2). Mr. Wortham was traveling westbound on Interstate 24 near mile marker 141 at 7:13 p.m. in a 2022 Peterbilt Conventional tractor and attached trailer occupying the left lane. At the same time, Mr. Bolivar was operating a 2022 Toyota Camry and was also traveling westbound on Interstate 24. (Compl. at ¶ 11, Doc. 1-2). He had one passenger in his vehicle, Angelica Goatache. (Compl. at ¶ 11, Doc. 1-2). Mr. Wortham turned his signal on and merged into the left lane to pass Mr. Bolivar's vehicle (Deposition of Antonio Wortham attached to Motion as **Exhibit A** ("Wortham Dep.") at 15:11-13). After Mr. Wortham believed he passed Mr. Bolivar's vehicle, he attempted to merge back into the right lane. (Wortham Dep. at 15:13-14). While moving back into the right lane, Mr. Wortham struck Mr. Bolivar's vehicle. (Wortham Dep. at 15:15-23; Compl. at ¶ 12, Doc. 1-2). Mr. Wortham did not see Mr. Bolivar's vehicle to his right before he began changing lanes. (Wortham Dep. at 38:25-39:12).

Both vehicles moved to the shoulder after the Incident occurred.  Plaintiffs exited their vehicle without any problems and were able to walk around. (Deposition of Radha Bolivar attached to Motion as **Exhibit B** ("Bolivar Dep.") at 52:25-53:8). After the investigating officer arrived, he asked Plaintiffs if they were hurt, and Plaintiffs told the investigating officer they were not hurt. (Bolivar Dep. at 56:14-25; Deposition of Angelica Goatache attached to Motion as **Exhibit C** ("Goatache Dep.") at 22:4-15). Plaintiffs did not need or request an ambulance at the scene. (Bolivar Dep. at 56:14-25; Goatache Dep. at 22; 4-15). Plaintiffs drove away from the scene

2

without any problem. (Bolivar Dep. at 57:1-3; Goatache Dep. at 22:12-15). Plaintiffs were moving from Florida to Kansas City when the Incident occurred. (Bolivar Dep. at 28:24-29:1). Plaintiffs had planned to stay the night near where the Incident occurred. They did that and continued their trip to Kansas City the next day as intended, arriving on March 2, 2023. (Bolivar Dep. at 57:1-17).

Despite not reporting any injury at the scene to Mr. Wortham or the officer and continuing with their move to Kansas City that evening, Plaintiffs retained legal counsel and then sought medical care. (Bolivar Dep. at 64:1-5; Goatache Dep. at 25:24-27:11).

Following the Incident, HMD immediately administered appropriate disciplinary action. (Wortham Dep. at 22:13-15). Mr. Wortham was routed back to the HMD Yard in Chicago Ridge to review the Incident with someone at the company. (Wortham Dep. at 22:17-19).

## II.     HMD Trucking and Mr. Wortham

At the time of the Incident, Mr. Wortham was an independent contractor of HMD. (Deposition of Fausta Mikniute attached to Motion as **Exhibit D** ("Mikniute Dep") at 7:24-8:2). Mr. Wortham became an independent contractor with HMD on November 18, 2021. (Mikniute Dep. at 10:22). Before hiring Mr. Wortham, HMD inquired with his prior employers regarding his driving history. (Mikniute Dep. at 36:15-17). Mr. Wortham was subsequently trained by the safety department and the orientation team at HMD and was required to pass a road test. (Mikniute Dep. at 15:22-16:4; Wortham Dep. at 17-19; Declaration of Fausta Mikniute attached to motion as **Exhibit E** ("Mikniute, Declaration") ¶ 21). During the orientation process, Mr. Wortham was trained on HMD's policies and procedures, how to navigate hours of service and logbooks, how to perform pre-trip inspections, general safe driving, and how to avoid motor vehicle incidents. (Mikniute Dep. at 16:21-17:3; 17:8-10; Mikniute, Declaration ¶ 6). Furthermore, Mr. Wortham was required to complete in-person safety classes twice a year and other safety trainings as needed.

(Mikniute Dep. at 18:6-9; 19:16-23; 21:3-4; Mikniute, Declaration ¶ 9). Mr. Wortham was also provided with an employee handbook during orientation that outlined HMD's policies. (Mikniute Dep. at 42: 24-43:2).

Prior to the Incident, Mr. Wortham was involved in four minor incidents[1] while driving under HMD's motor carrier authority. (Mikniute Dep. at 58:15–23; Mikniute, Declaration ¶ 25). Of these, three involved minor equipment damage attributed to Mr. Wortham, but did not involve another vehicle or a claim of personal injury. (Mikniute, Declaration ¶¶ 26-29). The fourth incident involved another driver backing into Mr. Wortham's vehicle. (Mikniute Dep., Exhibit 4, CONFIDENTIAL UNDER PROTECTIVE ORDER HMD TRUCKING 000123; Mikniute, Declaration ¶ 29).  The four prior incidents before the Incident can be further described as below:

1. Mr. Wortham's air deflector[2] made minor contact with a loading dock while he was backing. (Mikniute, Declaration ¶ 26).

2. The rim of Mr. Wortham's tire was lightly scratched due to parking in close proximity to a curb. (Mikniute, Declaration ¶ 27).

3. Mr. Wortham air fairing[3] skimmed a wall. (Mikniute, Declaration ¶ 28).

4. In the final incident, another driver backed into Mr. Wortham's vehicle. (Mikniute, Declaration ¶ 29).

(Mikniute Dep., Exhibit 4, CONFIDENTIAL UNDER PROTECTIVE ORDER HMD TRUCKING 000123).

---

[1] HMD recognizes that the August 10, 2022 Safety Improvement Review reflects a "major" classification, this designation does not relate to the severity of the incidents themselves. Instead, "major" refers solely to the total monetary cost of repairs. Any event with repair costs of $1,500 or more is categorized as "major." (Mikniute, Declaration ¶ 30)

[2] A panel or aerodynamic shield mounted along the side of the truck cab designed to redirect airflow around the vehicle.

[3] A protective and aerodynamic panel mounted along the passenger-side entry steps on a tractor-trailer or truck cab.

4

These four minor incidents fail to show that Mr. Wortham was unfit or incompetent for his position as a driver for HMD. (Mikniute, Declaration ¶ 32). These incidents are minor and do not qualify as Department of Transportation ("DOT") reportable incidents.[4] (Mikniute, Declaration ¶¶ 26-29). In his deposition, Mr. Clary, the former HMD Driver Compliance Manager, testified that after reviewing the details of the four prior incidents as set out in the safety improvement review, he did not consider Mr. Wortham to be an unsafe driver. (Deposition of Jacob Clary attached to Motion as **Exhibit F** ("Clary Dep") at 70:10-13). Moreover, when looking at the details of the prior incidents, Mr. Clary testified that Mr. Wortham did not present a hazard on the roadway. (Clary 70:14-17).

Plaintiff has suggested through prior pleadings that Mr. Wortham's failure to report the incidents establishes a claim of direct negligence against HMD but this is misplaced.  Mr. Wortham did not report these four minor incidents to HMD because of a misunderstanding of the policy due to his independent contractor status and owning his own truck. (Wortham Dep. at 59:4-9, 60:18-23; Mikniute Dep. at 69:3-14). Owner-operators are individuals who own their own commercial vehicle and are responsible for maintaining the equipment. Owner-operators can provide their vehicle and driving services to a motor carrier under a lease for a contracted period of time and operate under the carrier's authority. (Wortham Dep. at 10:2-17).  Here, Mr. Wortham did not report

---

[4] Section 390.5 of the Federal Motor Carrier Regulations defines accident as follows:
  Accident means –
  (1) Except as provided in paragraph (2) of this definition, an occurrence involving a commercial motor vehicle operating on a highway in interstate or intrastate commerce which results in:
      (i) A fatality;
      (ii) Bodily injury to a person who, as a result of the injury, immediately receives medical treatment away from the scene of the accident; or
      (iii) One or more motor vehicles incurring disabling damage as a result of the accident, requiring the motor vehicle(s) to be transported away from the scene by a tow truck or other motor vehicle.
  (2) The term accident does not include:
      (i) An occurrence involving only boarding and alighting from a stationary motor vehicle; or
      (ii) An occurrence involving only the loading or unloading of cargo.

5

the four minor incidents because he thought HMD's reporting policy applied only to company drivers, not owner-operators who owned their vehicles. (Wortham Dep. at 60:18-23. Notably, as soon as HMD found out about these four minor incidents, they coached, trained, and wrote up Mr. Wortham. (Mikniute Dep. at 63:2-12). HMD did not violate its company policy in retaining Mr. Wortham due to the four prior incidents and/or not reporting the four minor incidents. (Clary Dep. 72:13-19). Mr. Wortham received hands-on, in-person training in the HMD orientation room once HMD was aware of the prior incidents. (Clary Dep at 24:7-24; 80:2-6). Mr. Wortham presumably learned from this coaching as he immediately called to report the Incident. (Mikniute Dep. at 78:5-11, 101:5-8; Wortham Dep. at 30:6-10). After the Incident, Mr. Wortham was placed on a performance improvement plan. (Mikniute Dep. at 83:12-19).

HMD uses Netradyne data to monitor their drivers. (Mikniute Dep. at 22:11-19; Mikniute, Declaration ¶ 13). Netradyne's data utilizes artificial intelligence to deliver comprehensive real-time monitoring and analytics aimed at improving fleet safety, operational efficiency, and driver performance.[5] (Mikniute, Declaration ¶ 13) This system provides HMD with insights generated through continuous data collection throughout the driving day. (Mikniute, Declaration ¶ 13). Upon implementing Netradyne's services, HMD received guidance from Netradyne regarding threshold scores that typically indicated safe versus potentially unsafe driving behaviors. (Mikniute, Declaration ¶ 14). Based on these threshold recommendations from Netradyne, HMD developed its internal policies for evaluating driver performance using Netradyne data. (Mikniute, Declaration ¶ 14) Specifically, at the time of the Incident, if the driver had a Netradyne score lower than 750, HMD would coach the driver. (Mikniute Dep. at 22:11-19; Mikniute, Declaration ¶ 15). If the driver ended up with a score lower than 600, HMD would issue a write-up along with

---

[5] https://www.netradyne.com/blog/beyond-monitoring-how-ai-is-elevating-professional-driving

coaching. (Mikniute Dep. at 22:11-19; Mikniute, Declaration ¶ 15). At the time of the Incident, HMD checked drivers' Netradyne scores monthly. (Mikniute Dep. at 24:5-7; Mikniute, Declaration ¶ 16). From November 18, 2021, through the date of the Incident, Mr. Wortham's Netradyne's score did not drop below 750, a score requiring coaching or a write-up under HMD's policy. (Mikniute Dep. at 26:12-24; 27:7-8; Mikniute, Declaration ¶ 17). Since the start of HMD's relationship with Mr. Wortham, HMD has maintained and audited the logs of Mr. Wortham, and there had been no compliance issues. (Mikniute Dep. at 107:13-20; Mikniute, Declaration ¶ 12). Moreover, during that same time period, HMD never found Mr. Wortham in violation of his hours of service regulation. (Mikniute Dep. at 107:21-23).

Prior to his work with HMD, Mr. Wortham was only involved in one other motor vehicle incident; he was in a Publix truck and another motor vehicle hit his trailer tire. (Wortham Dep. at 12:11-13). In that case, the other driver took complete responsibility for the incident. (Wortham Dep. at 12:11-13). Furthermore, Mr. Wortham has not received any moving violations while in possessions of a CDL before starting with HMD. (Wortham Dep. at 13:5-9).

The undisputed facts show that HMD is committed to its drivers' success and maintains proactive standards and training to ensure its drivers perform at the highest level on the road. (Mikniute Dep. at 21:12-18). Additionally, Mr. Wortham was appropriately deemed fit and competent, at the time of hiring and throughout his relationship with HMD, to drive a tractor trailer.

### DISCOVERY

On February 26, 2024, Plaintiffs filed their Complaint, wherein they alleged negligence and negligence *per se* against defendant Wortham and vicarious liability and direct negligence against defendant HMD for the injuries they allegedly sustained in the Incident. (*See generally*, Compl., Doc. 1-2). Specifically, at issue here, Plaintiffs contend that HMD negligently hired,

7

trained, supervised, and retained Mr. Wortham and negligently entrusted the tractor trailer to Mr. Wortham. (Compl. ¶ 41, Doc. 1-2). Plaintiff did not cite any additional facts to support these direct negligence claims. (Compl. ¶ 41, Doc. 1-2). Rather, Plaintiffs simply alleged that "HMD [] through its agents/employees, knew, had reason to know, or should have known by exercising reasonable care, about the risks set forth in this Complaint…" (Comp. at ¶ 42, Doc. 1-2).

Through written discovery, Plaintiffs were asked for all documents, facts, and witnesses supporting their contention that HMD was directly negligent in hiring, training, supervising, retaining, and entrusting a vehicle to Mr. Wortham. Plaintiffs both answered as follows:

> **INTERROGATORY NO. 29**: Without merely restating the allegations in the Complaint, please identify and describe all documents, facts, and witnesses supporting your contention that this Defendant is directly negligent in the hiring, training, supervision, retention, and entrustment of defendant Wortham and/or in its maintenance of the subject tractor trailer as alleged in paragraphs 41 and 46 of the Complaint.
>
> **ANSWER**: On March 1, 2023, Radha Bolivar Angeles was operating the vehicle along with the passenger Angelica Goatache Garcia and was traveling westbound on Interstate 24 near the 141-mile marker in Kimball, Marion County, Tennessee. At the same time, Antonio Wortham was the driver of a truck owned by HMD Trucking (the "commercial vehicle") and was traveling on the same roadway, directly to the left of Radha Bolivar Angeles' vehicle. Suddenly and without warning, Antonio Wortham veered to the right and forcibly collided with the left driver's side of Radha Bolivar Angeles' vehicle in a sideswipe fashion. At all times relevant to the collision, Antonio Wortham was within the course and scope of his employment with HMD Trucking. The collision resulted in Radha Bolivar Angeles sustaining significant personal injuries and other damages.
>
> The witness to the incident is: Radha J Bolivar Angeles, 286 NW 69th Avenue, APT 174, Plantation, FL 33317, 786-779-6188; Angelica M Goatache Garcia, 7901 NW 7 Avenue, APT 209, Miami, FL 33150, 786-779-6188; Antonio D Wortham, 450 Barn Wood Road, Tuscaloosa, AL 35405, 770-731-7220; Summer S Elzy, 450 Barn Wood Road, Tuscaloosa, AL 35405, 770-731-7220; and Officer Larry W Anderson Jr., Badge number 1
>
> The Plaintiff refers to the Traffic Collision Report produced along with the interrogatories.

8

(Pl. Bolivar's Resp. to Defs' Interrog. at ¶ 29, attached to Motion as **Exhibit G**, Pl. Goatache's Resp. to Defs' Interrog. at ¶ 29, attached to Motion as **Exhibit H**). None of these facts, even when taken as true, satisfy the requisite elements required in Tennessee to sustain a claim of direct negligence in hiring, training, supervision, retention or entrustment.  Such a claim requires (1) establishing a negligence claim; and (2) establishing unfitness for the job or incompetence. Plaintiffs have not supplemented their responses to Interrogatory Number 29 with any additional documents, facts, or witnesses.

On March 10, 2025, Plaintiffs' counsel took the deposition of Fausta Mikniute in her capacity as the corporate representative of HMD. This deposition focused on questions related to various HMD protocols such as training, background checks, record keeping and Mr. Wortham's driving history. (*See generally* Mikniute Dep.). Ms. Mikniute explained that HMD takes many steps to ensure that their independent contractors operate safely within HMD's motor carrier authority. (Mikniute Dep. at 8:8-9:8). Specifically, HMD provides comprehensive driver training, maintains clean driver-qualification files, audits logbooks, offers ongoing coaching, and conducts regular safety meetings. (Mikniute Dep. at 8:8-18). Moreover, HMD requires independent contractors to follow company safety policies. (Mikniute Dep. at 8:19-22). Furthermore, HMD has safety assistants that help drivers on a daily basis with any safety related question (e.g., logbook issues). (Mikniute Dep. at 10:8-11). HMD consistently checks the drivers' driving records. (Mikniute Dep. at 21:23-22:2). Additionally, at the time of the Incident, HMD's retention policy for driver retention was no more than five preventable incidents over two years. (Mikniute Dep. 81:23-82:2). Mr. Wortham was never above that threshold. HMD cares about safety and makes a concerted effort to ensure expectations are clear, set, and enforced. (Clary Dep. at 12:3-13).

Like the written discovery responses, no information was obtained in oral discovery that satisfies the elements required in Tennessee to sustain a claim of direct negligence in hiring, training, supervision, retention or entrustment. The undisputed facts also show that Mr. Wortham was not unfit for the position or an incompetent driver. Additionally, as required for a direct negligence claim, discovery did not uncover any breach of or even establish a standard of care for HMD. Instead, the undisputed material facts establish that Mr. Wortham's actions of moving over one lane and clipping the back of Plaintiffs' vehicle were isolated and HMD did not have knowledge of any unfitness for the job or incompetence.

Importantly, Plaintiffs have not disclosed any expert witnesses to opine on Mr. Wortham's hiring or overall employment in the trucking industry. In their Rule 26 Expert Witness Dislcosures, Plaintiffs have not identified any expert witness to testify that HMD violated or breached a duty of care by hiring, training, retaining, supervising or entrusting a vehicle to Mr. Wortham. Therefore, Plaintiffs have not disclosed any expert that can present testimony to support a relevant standard of care, "knowledge of unfitness," or "knowledge of incompetence" by HMD, which is required to establish direct negligence in hiring, training, supervision, retention or entrustment. The undisputed material facts of this case establish that it is a case of mere negligence by Mr. Wortham, and Plaintiffs have failed to present any facts that, taken as true for purposes of this Motion, could allow any rational trier of fact to find a claim of direct negligence in hiring, training, supervision, retention, or entrustment. Moreover, from the beginning, Defendants accepted liability for the Incident and admitted that Mr. Wortham's actions were the cause of the Incident and did not assert the fault of Plaintiffs. (Docs. 10 and 13).

Plaintiffs also alleged exemplary and/or punitive damages against both Defendants:

10

64. Defendants' conduct, individually and collectively, constituted a reckless disregard for the life and safety of the Plaintiffs for the lives and safety of the motoring public generally, were wanton and reckless, and these Defendants are therefore also liable to Plaintiff for exemplary and/or punitive damages.

65. Defendants' conduct, individually and collectively, constituted a reckless disregard for the life and safety of the Plaintiffs and for the lives and safety of the motoring public generally, were wanton and reckless, and these Defendants are therefore also liable to Plaintiffs for exemplary and/or punitive damages.

(Comp. at ¶¶ 64-65, Doc. 1-2)

Plaintiffs did not provide any additional facts to support this punitive damage claim. (*See generally*, Compl., Doc. 1-2). Rather, Plaintiffs simply alleged that Mr. Wortham's acts and omissions constitute "a reckless disregard." (Comp. at ¶¶ 64-65, Doc. 1-2). In their Complaint, Plaintiff described the facts of the Incident as follows:

10. On or about March 1, 2023, Defendant, ANTONIO WORTHAM was driving the HMD TRUCKING, INC. owned commercial vehicle on I-24 in Kimball, Tennessee.

11. At the same time, Plaintiff was traveling on I-24 Kimball, Tennessee in his own vehicle with his passenger, Angelica.

12. Suddenly and without prior warning, Defendant WORTHAM changed lanes improperly, colliding with the vehicle operated by Plaintiffs.

(Comp. at ¶¶ 10-12, Doc. 1-2).

Through written discovery, Plaintiffs were asked for all documents, facts, and witnesses supporting their contention that they were entitled to an award of exemplary and/or punitive damages from either defendant or that either defendant acted wantonly or recklessly as alleged in paragraphs 64 and 65 of the Complaint. Both Plaintiffs answered as follows:

11

**INTERROGATORY NO. 30:** Without merely restating the allegations in the Complaint, please identify and describe all documents, facts, and witnesses supporting your contention that you are entitled to an award of exemplary and/or punitive damages from either this Defendant or defendant Wortham or that either this Defendant or defendant Wortham acted wantonly or recklessly as alleged in paragraphs 64 and 65 of the Complaint.

**ANSWER:** On March 1, 2023, Radha Bolivar Angeles was operating the vehicle along with the passenger Angelica Goatache Garcia and was traveling westbound on Interstate 24 near the 141-mile marker in Kimball, Marion County, Tennessee. At the same time, Antonio Wortham was the driver of a truck owned by HMD Trucking (the "commercial vehicle") and was traveling on the same roadway, directly to the left of Radha Bolivar Angeles' vehicle. Suddenly and without warning, Antonio Wortham veered to the right and forcibly collided with the left driver's side of Radha Bolivar Angeles' vehicle in a sideswipe fashion. At all times relevant to the collision, Antonio Wortham was within the course and scope of his employment with HMD Trucking. The collision resulted in Radha Bolivar Angeles sustaining significant personal injuries and other damages.

The witness to the incident is: Radha J Bolivar Angeles, 286 NW 69th Avenue, APT 174, Plantation, FL 33317, 786-779-6188; Angelica M Goatache Garcia, 7901 NW 7 Avenue, APT 209, Miami, FL 33150, 786-779-6188; Antonio D Wortham, 450 Barn Wood Road, Tuscaloosa, AL 35405, 770-731-7220; Summer S Elzy, 450 Barn Wood Road, Tuscaloosa, AL 35405, 770-731-7220; Officer Larry W Anderson Jr., Badge number 1; Joseph E Loiza, 729 NW, 2nd Street, APT 1122, Miami, FL 33128, 786-779-6188; Medical providers who treated Plaintiff for the sustained injuries and Attorney of record 1604 Reggie White Blvd., Ste. 102, Chattanooga, TN 37402, 423-417-9205

The Plaintiff refers to the medical records and bills produced along with the interrogatories.

(Pl. Bolivar's Resp. to Defs' Interrog. at ¶ 30; Pl. Goatache's Resp. to Defs' Interrog. at ¶ 30). None of these facts, even when taken as true, satisfy the requisite elements required in Tennessee to sustain an award of punitive damages, which requires at a minimum a "conscious wrongdoing." Plaintiffs have not supplemented these written discovery responses with any additional facts, documents or witnesses.

12

On February 4, 2025, Plaintiff's counsel took the deposition of defendant Antonio Wortham, the driver involved in the Incident. Plaintiff's counsel spent much of Mr. Wortham's deposition asking about specific details of the Incident. (Wortham Dep. at 14:20-22:12; 38:23-41:25). When asked how the Incident occurred, Mr. Wortham admitted he that he thought the lane was clear, due to Mr. Bolivar's vehicle being in his blind spot, when he attempted to merge to the right lane. (Wortham Dep. at 15:9-23; 41:6-7). Mr. Wortham did not know that Plaintiffs were beside him when he changed lanes. (Wortham Dep. at 15:9-23; 41:6-7). In fact, Mr. Wortham was unaware that he was about to impact Plaintiffs' vehicle and did not immediately realize that an impact had occurred. (Wortham Dep. at 38:23–39:12). He pulled over to the side of the road because he believed an impact *might* have taken place, based on observing Plaintiffs' vehicle swerve and subsequently pull over following his lane change. (Wortham Dep. at 41:18–21). Likewise, Plaintiffs have never alleged that Mr. Wortham saw Plaintiffs' vehicle before changing lanes or was otherwise consciously aware of it prior to the Incident. (*See generally* Compl.; Pl. Bolivar's Resp. to Defs' Interrog..; Pl. Goatache's Resp. to Defs' Interrog; Wortham Dep.).

On February 4, 2025, Mr. Bolivar was deposed. Mr. Bolivar was asked about interactions between Mr. Bolivar and Mr. Wortham following the Incident. ("Bolivar Dep." at 41:15-21; 55:6). Mr. Bolivar explained that Mr. Wortham was upset because he believed he did not hit Plaintiffs' car. (Bolivar Dep. at 55:7-11). Mr. Bolivar's testimony confirms that not only did Mr. Wortham not feel the impact, but he did not intentionally attempt to contact Plaintiffs' vehicle. Ultimately, there are no facts, witnesses, or documents to show that Mr. Wortham acted willfully or recklessly.

Like the written discovery responses, no facts were obtained in any deposition that satisfy the elements required in Tennessee to sustain an award of punitive damages. The undisputed facts

13

show that Mr. Wortham was not operating his vehicle in a willful or reckless manner. Specifically, the following facts are undisputed: (1) Mr. Wortham was not speeding at the time of the Incident (Bolivar Dep. at 38:3-5); (2) Mr. Wortham had a valid CDL at the time of the Incident (Wortham Dep. at 7:11-16); (3) Mr. Wortham was not using a cell phone when the Incident occurred (*see generally* Bolivar Dep; *see generally* Goatache Dep.); (4) Mr. Wortham was not tired and did not fall asleep at the wheel when the Incident occurred (Wortham Dep. at 25: 2-6; 26:18-19); (5) Mr. Wortham was not intoxicated when the Incident occurred (Wortham's Resp. to Pl.'s Interrog. at ¶25; Mikniute Dep. at 92:8-10); and (6) Mr. Wortham was not in violation of his hours of service when the Incident occurred (Wortham Dep. at 25:12-19; Mikniute Dep. at 108:10-24). Instead, the undisputed material facts establish that Mr. Wortham's lane change was a breach of his duty of reasonable care, a fact that Defendants have accepted since the beginning of this lawsuit.

There are no facts to support a claim of punitive damages. Moreover, Plaintiffs have not disclosed any expert that can present testimony to support a "conscious disregard of a known risk" or "conscious wrongdoing" by Defendants, which is required to sustain a claim of punitive damages in Tennessee. The undisputed material facts of this case establish that it is a case of a mere mistake by Mr. Wortham, and Plaintiffs have failed to "put up" any facts that, taken as true for purposes of this Motion, could warrant an award of punitive damages against Defendants.

<u>**STANDARD OF REVIEW**</u>

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment is appropriate when "the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgement gives the movant an opportunity to challenge the opposing party to "put up or shut up" on a critical issue. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1989). Summary judgment is

14

proper if the respondent does not "put up" after being afforded sufficient time for discovery. *Id.* "Not just any alleged factual disputes will warrant denial of summary judgment; rather, there must be a genuine issue of material facts" *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–248 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* at 248. The central issue is "whether the evidence presents a sufficient disagreement to require the submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no "genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citing *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 288-289 (1968)).

In this matter, there is no dispute as to any material facts concerning the issue at the heart of this Motion (that being a claim of direct negligence in hiring, training, supervision, retention or entrustment, along with punitive damages), and no trier of fact could find for Plaintiffs on these issues. Therefore, the law dictates that Defendants are entitled to judgment as a matter of law concerning Plaintiffs' claim for punitive damages against both Defendants and for direct negligence in hiring, training, supervision, retention or entrustment against HMD.

## LAW & ARGUMENT

I.   **Plaintiffs' direct negligence claims against HMD Trucking for negligent hiring, training, retention, entrustment and supervision fail as a matter of law.**

Plaintiffs assert direct negligence claims against HMD, claiming that HMD negligently hired, trained, retained, entrusted, and supervised Mr. Wortham. To prevail on a negligent hiring, training, retention or supervision claim, Plaintiffs must establish (1) "the elements of a negligence claim" and (2) "that the employer had knowledge of the employee's unfitness for the job." *Gunter v. Estate of Armstrong*, 600 S.W.3d 916, 928 (Tenn. Ct. App. 2019). The first prong of the

15

negligent hiring, training, retention, and supervision test requires that the Plaintiffs establish a prima facie case of negligence, which includes the following elements: (1) a duty of care owed by a defendant to plaintiff; (2) conduct falling below the applicable standard of care that amounts to a breach of that duty; (3) an injury or loss; (4) cause in fact; and (5) proximate, or legal, cause. *McClung v. Delta Square Ltd. P'shp.*, 937 S.W.2d 891, 894 (Tenn. 1996). The analysis of "knowledge of unfitness" differs slightly between the claims, with negligent hiring and retention focusing on what the employer should have known at the time of hiring, and negligent supervision and training centering around the foreseeability of an employee's actions.

To prevail on a negligent entrustment claim, it must be shown that the entruster (company) had knowledge of such facts and circumstances relating to the incompetency of the entrustee (driver) to operate the motor vehicle as would charge the entruster (company) with knowledge of such incompetency. *Gunter*, 600 S.W.3d at 928. Plaintiffs cannot establish any of the necessary requirements for the direct claims of negligence. The analysis of each claim is set forth more fully below.

**A. Plaintiffs cannot establish that HMD Trucking breached their duty of care or had knowledge of unfitness for Mr. Wortham's position as a truck driver.**

Tennessee law recognizes claims for negligent training of employees, *Heflin v. Iberiabank Corp.*, 571 S.W.3d 727, 737 (Tenn. Ct. App. 2018), as well as negligent hiring, supervision, or retention when the employer knows of an employee's unfitness for the job, *Binns v. Trader Joe's E., Inc.*, 690 S.W.3d 241 (Tenn. 2024) (citing *Doe v. Cath. Bishop for Diocese of Memphis*, 306 S.W.3d 712, 717 (Tenn. Ct. App. 2008)). A negligent hiring claim arises only when an applicant's unfitness creates a danger the employer should have known, *Phipps v. Walker*, No. 03A01-9508-CV-00294, 1996 Tenn. App. LEXIS 210, 1996 WL 155258, at *3 (Tenn. Ct. App. Apr. 4, 1996)

16

(quoting *Gates v. McQuiddy Office Prods.*, No. 02A01-9410-CV-00240, 1995 Tenn. App. LEXIS 715, 1995 WL 650128, at *1 (Tenn. Ct. App. Nov. 2, 1995)), and requires proof of (1) unfitness for the job, (2) unreasonable risk to others, and (3) that the employer knew or should have known the risk would recur, *Phipps*, 1996 WL 155258, at *3; *Gates*, 1995 WL 650128, at *2; see also *Counce v. Ascension Health*, No. M2009-00741-COA-R3-CV, 2010 Tenn. App. LEXIS 178, 2010 WL 786001, at *5 (Tenn. Ct. App. Mar. 8, 2010). Similarly, negligent supervision or retention imposes liability for breaching the duty to employ competent personnel and supervise them, *Wicks v. Vanderbilt Univ.*, No. M2006-00613-COA-R3-CV, 2007 Tenn. App. LEXIS 146, 2007 WL 858780, at *13 (Tenn. Ct. App. Mar. 21, 2007); *Gates*, 1995 WL 650128, at *1. Liability arises only if the employer could foresee, or reasonably should have foreseen, the manner in which the injury occurred. *Jones v. Bedford Cty.*, No. M2006-02710-COA-R3-CV, 2007 Tenn. App. LEXIS 669, 2007 WL 3202760, at *3 (Tenn. Ct. App. Oct. 31, 2007) (emphasis added); *Phipps*, 1996 Tenn. App. LEXIS 210, at *5 (citing *Spivey v. St. Thomas Hosp.*, 31 Tenn. App. 12, 211 S.W.2d 450, 456 (1948)). The injury must be a "reasonably foreseeable probability, **not just a remote possibility**," *Tedder v. Raskin*, 728 S.W.2d 343, 349 (Tenn. Ct. App. 1987) (emphasis added).

In analogous cases, courts have dismissed direct negligence claims where prior incidents were minor, isolated, or dissimilar. *Jackson v. Transportation Corporation of America, Inc.*, No. 1:21-cv-01325-PAB, 2023 U.S. Dist. LEXIS 71274, at *36–41 (N.D. Ohio Apr. 24, 2023) (minor property-only incidents did not indicate incompetence or dangerousness); *Young v. GLM Transp., Inc.*, No. 1:18-CV-147-SKL, 2019 U.S. Dist. LEXIS 243323, at *9–23 (E.D. Tenn. Nov. 1, 2019) (three minor parking-lot incidents insufficient to establish foreseeability or unfitness); see also *La Croix v. Spears Mattress Co.*, No. 1:04-CV-1, 2005 U.S. Dist. LEXIS 16867, 2005 WL 1924712,

17

at *1 & *3 (M.D. Ga. Aug. 10, 2005) (negligent hiring question where prior moving violations involved other vehicles).

Here, prior to his owner-operator relationship with HMD, Mr. Wortham had only one no-fault incident where another vehicle struck his trailer tire, and he had no moving violations while holding a CDL. (Wortham Dep. 12:11–13, 13:5–9). Plaintiffs offer no evidence disputing his driving history. Under 49 C.F.R. § 391.11, Mr. Wortham met all qualifications to operate a commercial vehicle, including age over 21, English proficiency, prior experience and training, valid CDL, and successful road test completion (Wortham Dep. 7:9–10, 8:6–9:12, 11:17–19).

HMD complied with federal regulations and exceeded them: obtaining prior employer information, providing orientation, safety training, road testing, semiannual safety meetings, and additional training through Infinit-I[6] and Tenstreet[7] (Mikniute Dep. 15:22–16:4; Clary Dep. 78:17–80:22). From November 18, 2021, through the Incident, Mr. Wortham's Netradyne safety score never fell below 750, and HMD audits revealed no compliance issues or hours-of-service violations. (Mikniute Dep. 26:12–27:8, 107:13–23).

Mr. Wortham had four prior minor incidents: three involving only his vehicle with minimal damage in tight areas, and one non-fault incident with another vehicle in a parking lot. (Ex. 4 to Mikniute Dep. 58:15–23; Wortham Dep. 27:13–23). None involved personal injury, highways, or DOT-reportable events. As in *Jackson* and *Young*, these minor, dissimilar incidents do not render subsequent accidents foreseeable.

Plaintiffs have not established that HMD breached its duty. There is no evidence that Mr. Wortham was unfit or posed a danger for which HMD should have known. Nothing suggests it was foreseeable he would merge improperly and fail to see another vehicle. Remote possibilities

---

[6] https://infinitiworkforce.com/
[7] https://www.tenstreet.com/

18

are insufficient for negligence. Accordingly, Plaintiffs' claims for negligent hiring, training, retention, or supervision fail, as undisputed facts negate the breach of duty, and HMD could not have foreseen the incident.

### B. Plaintiffs cannot establish that Mr. Wortham was an incompetent driver or that HMD Trucking had knowledge of any incompetence.

The prima facie case for the tort of negligent entrustment requires proof of "'(1) an entrustment of a chattel, (2) to a person incompetent to use it, (3) with knowledge that the person is incompetent, and (4) that is the proximate cause of injury or damage to another.'" *Twenty Holdings, LLC v. Land S. TN, LLC*, No. M2018-01903-COA-R3-CV, 2019 Tenn. App. LEXIS 438 (Ct. App. Sep. 5, 2019) (*citing Concklin v. Holland*, 138 S.W.3d 215, 222 (Tenn. Ct. App. 2003); *Messer Griesheim Indus., Inc. v. Cryotech of Kingsport, Inc.*, 45 S.W.3d 588, 603 (Tenn. Ct. App. 2001)). "Liability of an owner…is generally imposed only where the owner entrusts the vehicle to one whose appearance or conduct is such as to indicate his incompetency or inability to operate the vehicle with care." *Rimer v. City of Collegedale*, 835 S.W.2d 22, 24 (Tenn. Ct. App. 1992). If a plaintiff cannot establish that a defendant driver's incompetency was apparent, "it must be affirmatively shown that the entruster had at [the time of the entrustment], knowledge of such facts and circumstances relating to the incompetency of the entrustee to operate the motor vehicle as would charge the entruster with knowledge of such incompetency." *Id.*

In *Jackson v. Transportation Corporation of America, Inc.*, supra, the Sixth Circuit also discussed a negligent entrustment claim. In *Jackson*, the court said that there was no negligent entrustment when defendant driver had two prior accidents. Instead "[p]laintiff must show that [defendant driver's] alleged incompetence is "pervasive" to survive summary judgment." *Jackson*, 2023 U.S. Dist. LEXIS 71274, *44 (*citing M.M. v. M.F.*, 8th Dist. No. 108957, 2020-Ohio-5082, ¶ 27; *Hoff v. Minder*, 4th Dist. No. 13CA31, 2014-Ohio-3491, ¶ 13). Further, the Sixth Circuit

19

explained that "no reasonable jury could find [defendant driver's] challenges during training and her two prior accidents to be evidence of 'pervasive' incompetence.'" *Id.* (*citing  Hoff v. Minder*, 4th Dist. No. 13CA31, 2014-Ohio-3491, ¶ 13) (affirming summary judgment for defendant on negligent entrustment claim where driver admitted she drove "in excess of speed limit an average amount"); *see also Nocilla v. Bridges*, 2023 U.S. Dist. LEXIS 15741 at *11 (S.D. Ohio Jan. 30, 2023) (granting summary judgment for defendant on negligent entrustment where truck driver previously had CDL suspended for speeding and not paying ticket); *Marinkovic v. Hazelwood*, 2021 U.S. Dist. LEXIS 57768 at *18 (N.D. Ohio Mar. 26, 2021) (granting summary judgment for defendant on negligent entrustment where driver's insurer termed driver unsafe).

Essentially, "it must be affirmatively shown that the entruster had, at that time, knowledge of such facts and circumstances relating to the incompetency of the entrustee to operate the motor vehicle as would charge the entruster with knowledge of such incompetency." *Rimer v. Collegedale*, 835 S.W.2d 22, *24; 1992 Tenn. App. LEXIS 206. According to the Restatement (Second) of Torts § 390 (1964), incompetence stems from youth, inexperience, or otherwise, to use it in a manner involving unreasonable risk of physical harm to himself and others.  For example, Tennessee has recognized the tort in cases where persons "entrust" or supply an automobile to a person known to be habitually intoxicated or who permit an inexperienced teenage boy to use a shotgun. *Nichols v. Atnip*, 844 S.W.2d 655 (Tenn. Ct. App. 1992) (*citing L. Nicholson Constr. Co. v. Lane*, 177 Tenn. 440, 442-43, 150 S.W.2d 1069, 1070 (1941) (automobile); *Prater v. Burns*, 525 S.W.2d 846, 849-50 (Tenn. Ct. App. 1975) (shotgun)).

Here, for the same reasons as discussed above, Plaintiffs cannot show that Mr. Wortham was incompetent in using the tractor trailer or that HMD had such knowledge. Mr. Wortham did not have a "pervasive" history, issue, or problem with merging on the interstate. Mr. Wortham's

20

prior incidents involved minor property damage only at low speeds, not on interstates, and three of four only involved his equipment. The fourth one involved another vehicle but Mr. Wortham did nothing to cause or contribute to it as someone else backed up into him. Furthermore, Mr. Wortham's Netradyne's driving scores indicated appropriate driving throughout his entire relationship with HMD. Mr. Wortham's driving score remained above the 750 threshold Netradyne suggested for coaching or training. There is no history of Mr. Wortham driving and merging on the interstate with "incompetence" that is required to establish a claim of negligent entrustment. Thus, Plaintiffs' negligent entrustment claim must fail because they cannot prove two required elements of the tort (i.e., Plaintiffs cannot point to anything in the record proving that Mr. Wortham was incompetent and that HMD Trucking had knowledge of the incompetence).

### C. Plaintiffs' direct negligence claims against HMD Trucking for negligent hiring, training, retention, entrustment and supervision should be dismissed as they are not relevant under the facts of this case.

From the outset of this litigation, Defendants have unequivocally accepted liability for the Incident, expressly admitting that Mr. Wortham's conduct was the sole proximate cause of the Incident. (HMD and Wortham's Answers, Docs. 10 and 13). At no point have Defendants asserted or alleged any comparative fault on the part of Plaintiffs. As a result, the only matter properly before the trier of fact is the determination of damages—specifically, whether Plaintiffs sustained injuries and, if so, the appropriate measure of economic and non-economic damages. (As argued more fully below, punitive damages are not appropriate and should be dismissed.) Fault is not in dispute; Defendants have admitted 100% responsibility, both directly and vicariously.

Given this posture, any claim of direct negligence against HMD is rendered moot and legally irrelevant. Evidence purporting to support direct negligence serves no legitimate purpose in the adjudication of damages and risks confusing the issues, misleading the jury, and introducing

21

extraneous matters that have no bearing on the outcome. While Tennessee law now permits a plaintiff to plead direct negligence against a company even where vicarious liability is admitted by the company, such a claim is not appropriate under the facts of this case where liability is conceded and the only issue for the trier of fact is the award of compensatory damages. Accordingly, Plaintiffs' direct negligence claim against HMD should be dismissed as they are not relevant.

## II. Plaintiffs' punitive damages claim against both Defendants fails as a matter of law.

Tennessee's statute on punitive damages provides that "[p]unitive damages may only be awarded if the claimant proves by clear and convincing evidence that the defendant against whom punitive damages are sought acted **maliciously, intentionally, fraudulently, or recklessly**." Tenn. Code Ann. § 29-39-104(a)(1) (emphasis added). For vicarious liability, a defendant's culpability "shall be determined separately from that of any alleged agent, employee or representative," Tenn. Code Ann. § 29-39-104(a)(9), though punitive damages may apply if the act was committed by a management employee within the scope of employment, Tenn. Code Ann. § 29-39-104(g).

Punitive damages are reserved for the most egregious cases and require proof by clear and convincing evidence of intentional, reckless, malicious, or fraudulent conduct, *Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896 (Tenn. 1992), superseded in part by Tenn. Code Ann. § 29-39-104. In *Hodges*, the court adopted the criminal definition of "reckless," holding that it involves conscious disregard of a substantial and unjustifiable risk constituting a gross deviation from ordinary care, and that clear and convincing evidence leaves no serious doubt about the correctness of conclusions drawn. *Id.* at n.3.

Case 1:24-cv-00155-TRM-MJD   Document 75   Filed 12/08/25   Page 22 of 28
PageID #: 1067

The Sixth Circuit emphasized this standard in *Capello v. Duncan Aircraft Sales of Florida, Inc.*, 79 F.3d 1465 (6th Cir. 1996), stating that punitive damages in Tennessee serve solely to punish "serious moral dereliction" and that gross negligence alone is insufficient. *Id*. at 1474. In *Capello*, the court held that the pilot's fatigue-related disorientation did not constitute conscious disregard or malice under *Hodges*. 79 F.3d at 1472, 1475.

Similarly, in automobile cases, punitive damages are awarded only in "limited circumstances" requiring egregious conduct, *Anderson v. U.S.A. Truck, Inc.*, No. W2006-01967-COA-R3-CV, 2008 Tenn. App. LEXIS 590, at *40 (Tenn. Ct. App. Oct. 1, 2008) (citing *Richardson v. Gibalski*, 625 S.W.2d 715, 717 (Tenn. Ct. App. 1979)). Typical examples involve intoxication or extreme fatigue. *Id*. at *41–42 (citing *Sakamoto v. N.A.B. Trucking Co.*, 717 F.2d 1000 (6th Cir. 1983); *Worley v. Pharris*, No. 155, 1991 Tenn. App. LEXIS 608 (Tenn. Ct. App. Aug. 7, 1991); *Perry v. Dewey*, No. 02A01-9406-CV-00142, 1995 Tenn. App. LEXIS 475 (Tenn. Ct. App. July 18, 1995); *Honaker v. Leonard*, 325 F. Supp. 212 (E.D. Tenn. 1971)). Courts consistently hold that typical negligence or inattention is insufficient. *Gardner v. Dye*, No. 3:15 C 00669, 2016 U.S. Dist. LEXIS 201930 (M.D. Tenn. May 31, 2016); *Leap v. Malone*, No. 95-6470, 1996 U.S. App. LEXIS 33965 (6th Cir. Dec. 23, 1996); *Medley v. Garmin*, No. 2:06-CV-71, 2008 U.S. Dist. LEXIS 91824 (E.D. Tenn. Sept. 29, 2008); *Rose v. Lydon*, No. 227, 1986 Tenn. App. LEXIS 2934, 1986 WL 4595 (Tenn. Ct. App. 1986); *Womack v. Gettelfinger*, 808 F.2d 446 (6th Cir. 1986).

Cases involving "simple lack of alertness, inattention, or omissions" are routinely resolved in favor of defendants on punitive damages, *Seaman v. Cooper*, No. 3:10-CV-44, 2010 U.S. Dist. LEXIS 124398, at *6 (E.D. Tenn. Nov. 23, 2010). Based on these authorities, the requisite intent for punitive damages cannot be shown in this case.

23

**A. Plaintiffs Failed To Allege The Requisite Elements For Granting Punitive Damages Directly Against HMD Trucking Inc.**

As an initial matter, Plaintiff cannot maintain a punitive damage claim directly against HMD because they have not alleged or proven the requisite standard of punitive damages directly against HMD. In the Complaint, Plaintiffs supported their claim for punitive damages in paragraph 41. (Compl. at ¶41, Doc. 1-2).

> 41. Defendant HMD TRUCKING, INC. was negligent, and grossly negligent in:
>
> a. Hiring and/or contracting with Defendant ANTONIO WORTHAM to drive the commercial vehicle at issue.
> b. Training of Defendant ANTONIO WORTHAM on the FMCSR and compliance.
> c. Failing to supervise Defendant ANTONIO WORTHAM while driving the commercial vehicle.
> d. Failing to train Defendant ANTONIO WORTHAM to properly drive the commercial vehicle.
> e. Entrusting Defendant ANTONIO WORTHAM with the commercial vehicle.
> f. Retaining Defendant ANTONIO WORTHAM to drive the commercial vehicle.
> g. Failing to conduct proper and required checks on the background of their employee, agent, and/or contractor Defendant ANTONIO WORTHAM; and
> h. Failure to exercise ordinary care to determine their employees' agents' and/or contractors' fitness for the task of driving a commercial vehicle interstate.

(Compl. at ¶41, Doc. 1-2).

In paragraph 21, Plaintiff alleged that HMD was negligent and grossly negligent for the above claims of direct negligence. (Compl. at ¶41, Doc. 1-2). Notably, nowhere in the Complaint does Plaintiff directly allege that HMD acted "maliciously, intentionally, fraudulently, or recklessly" by its own actions as a motor carrier so as to make it directly liable to Plaintiff for punitive damages. (*See generally* Compl., Doc. 1-2). In fact, other than blanket accusations of Defendants' direct negligence in paragraph 14 and negligence *per se*, Plaintiffs have not alleged any actions or conduct by HMD that satisfy the requisite elements for an award of punitive damages against it. Specifically, for punitive damages in Tennessee, "[g]ross negligence is no longer sufficient," instead, a "element of conscious wrongdoing" is now required. *Capello*, 79 F.3d at 1474. Plaintiffs have only alleged negligence and gross negligence against HMD. (Compl. at

¶41, Doc. 1-2). Even if this was not the case, the undisputed facts show that HMD is entitled to judgement as a matter of law on the issues of direct negligence (*See above: Law and Argument, Plaintiffs' direct negligence claims against HMD Trucking for negligent hiring, training, retention, entrustment and supervision fail as a matter of law.*). Plaintiffs have neither alleged nor demonstrated that HMD acted "maliciously, intentionally, fraudulently, or recklessly." In fact, as detailed above, Plaintiffs have not shown that HMD was even directly negligent and breached its duty of care as a motor carrier. Therefore, this Court should enter judgment as a matter of law for HMD regarding any punitive damage claim asserted against it.

**B. Mr. Wortham's Acts or Omissions in Causing the Incident Do Not Satisfy the Conscious Wrongdoing Element Required for Punitive Damages.**

The facts and the evidence in this matter establish that there is no basis for an award of punitive damages against Mr. Wortham. As explained above, punitive damages may only be assessed where the "clear and convincing" evidence shows that the defendant "acted maliciously, intentionally, fraudulently, or recklessly." Tenn. Code Ann. § 29-39-104(a)(1). In Tennessee, "[g]ross negligence is no longer sufficient," instead, a "element of conscious wrongdoing" is now required. *Capello*, 79 F.3d at 1474. Plaintiffs have presented no facts or evidence – because none exist – that create any genuine issue of material fact concerning whether Mr. Wortham acted with an "element of conscious wrongdoing" in causing the Incident.

On the contrary, the undisputed facts in this matter clearly show nothing more than a mere mistake or ordinary negligence. Plaintiffs have not "put up" any facts to contradict Mr. Wortham's testimony on how the Incident occurred. Mr. Wortham's testimony about his actions in causing the Incident do not show conscious wrongdoing or conscious disregard by him, which is required to satisfy the legal definition of recklessness. Mr. Wortham simply did not see Plaintiffs' vehicle prior to the lane change. This mere mistake or ordinary negligence is not enough. Likewise,

25

Plaintiffs have admitted that other than the mere fact that the Incident occurred, they have no "facts, witnesses, or documents" that show that Mr. Wortham acted willfully or recklessly. (Pl. Bolivar's Resp. to Defs' Interrog. at ¶ 30; Pl. Goatache's Resp. to Defs' Interrog. at ¶ 30).

Taking Plaintiffs' admissions and developed facts as true, none support the limited or exigent circumstances that are required to award punitive damages in an automobile accident in Tennessee: drugs were not involved; alcohol was not involved; an unlicensed driver was not involved; speeding was not involved; drag racing was not involved; a cell phone was not involved; and lack of sleep was not involved. Instead, the undisputed facts in this case show this to be a situation of a simple "lack of alertness, inattention, or omission" by Mr. Wortham, which makes dismissal of the punitive damages claim ripe for this Court. *Seaman*, 2010 U.S. Dist. LEXIS 124398, at *6. Therefore, this Court should dismiss any claim for punitive damages against Mr. Wortham and HMD.

## CONCLUSION

For the reasons set forth herein, HMD respectfully submits that it is entitled to judgment as a matter of law on all direct negligence claims asserted against it. Plaintiffs cannot establish that HMD breached any duty of care or that the Incident was reasonably foreseeable at the time of hiring or thereafter. Accordingly, Plaintiffs cannot sustain a direct negligence claim, and there is no evidence that HMD had actual or constructive knowledge of any alleged unfitness or incompetence on the part of Mr. Wortham. HMD therefore respectfully requests that the Court grant summary judgment in its favor and dismiss Plaintiffs' direct negligence claims with prejudice. Likewise, Defendants request dismissal of Plaintiffs' punitive damages claims as the facts do not reflect serious moral dereliction, conscious wrongdoing, or conduct rising to the level required for punitive liability. Because there is no clear and convincing evidence that either

defendant acted intentionally, maliciously, fraudulently, or recklessly, Defendants respectfully ask the Court to grant their Motion and find, as a matter of law, that punitive damages are unwarranted.

Respectfully submitted,

LEWIS THOMASON

By: /s/ *Mary Beth White*

    Mary Beth White, BPR #24462
    Ally J. Bojczuk, BPR #042440
    424 Church Street, Suite 2500
    P.O. Box 198615
    Nashville, TN 37219
    (615) 259-1366
    mbwhite@lewisthomason.com
    abojczuk@lewisthomason.com

    *Attorneys for defendants Antonio Wortham and HMD Trucking, Inc.*

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing DEFENDANT HMD TRUCKING, INC. AND ANTONIO WORTHAM'S MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT ON PLAINTIFFS' PUNITIVE DAMAGES CLAIMS AGAINST HMD TRUCKING, INC. AND ANTONIO WORTHAM AND ON DIRECT NEGLIGENCE CLAIMS AGAINST HMD TRUCKING, INC. has been served on the following counsel of record via email and through the Court's electronic filing system:

    Timothy O. Henshaw
    Alexander Shunnarah Trial Attorneys
    1604 Reggie White Blvd., Suite 102
    Chattanooga, TN 36402
    thenshaw@asilpc.com

This the 8th day of December 2025.

    */S/ Mary Beth White*

28