IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TENNESSEE

AT CHATTANOOGA

RADHA BOLIVAR and

ANGELICA GOATACHE,

Plaintiffs,

vs.                                No. 1:24-cv-00155

HMD TRUCKING, INC.,

and ANTONIO WORRTHAM,

Defendants.

The Video-Recorded Deposition of FAUSTA MIKNIUTE, taken remotely via Zoom technology before

JEANINE WATKINS, C.S.R., pursuant to the provisions

of the Federal Rules of Civil Procedure of the

United States District Court, pertaining to the

taking of depositions, taken on March 10, 2025,

commencing at the hour of approximately 1:00 p.m.

Central Time.

Page 1

Case 1:24-cv-00155-TRM-MJD    Document 102-8    Filed 01/19/26    Page 1 of 153
PageID #: 2338

A P P E A R A N C E S:

(All parties participated remotely.)

ALEXANDER SHUNNARAH TRIAL ATTORNEYS

1604 Reggie White Boulevard

Suite 102

Chattanooga Tennessee 37402

BY MR. TIM HENSHAW

thenshaw@asilpc.com

Appeared on behalf of the Plaintiffs;

MARY BETH WHITE,

424 Church Street

Suite 2500

P.O. Box 198615

Nashville, Tennessee TN 37219

mbwhite@lewisthomason.com

Appeared on behalf of the Defendants

HMD Trucking, Inc., and Antonio Wortham.

MR. JASON FULK,

General Counsel for HMD Trucking

10031 Virginia Avenue

Chicago Ridge, Illinois 60415

info@hmdtrucking.com

Page 2

Case 1:24-cv-00155-TRM-MJD     Document 102-8     Filed 01/19/26     Page 2 of 153
PageID #: 2339

I N D E X

WITNESS:                                    PAGE


      FAUSTA MIKNIUTE


Examination by Mr. Henshaw            5, 114
Examination by Ms. White                111


EXHIBITS:


Exhibit No. 1                              20
Exhibit No. 2                              41
Exhibit No. 3                              66
Exhibit No. 4                              67
Exhibit No. 5                              77
Exhibit No. 6                              97
Exhibit No. 7                              97

www.veritext.com            Veritext Legal Solutions            800-556-8974

THE VIDEOGRAPHER: Good afternoon. We are going on the video record at 1:02 p.m. on March 10th, 2025.

Here begins the 30(b)(6) video-recorded deposition of HMD Trucking Inc., testimony provided by Fausta Mikniute in a case matter of Radha Bolivar, et al., versus HMD Trucking, Inc., et al., filed in the US District Court for the Eastern District of Tennessee at Chattanooga, bearing Case Number 1:24-cv-00155.

My name is Kevin Duncan, and I am a legal videographer representing Veritext Legal Solutions. The court reporter today is Ms. Jeanine Watkins.

Counsel, will you please identify yourselves and affiliations starting with the noticing party.

MR. HENSHAW: Thank you. My name is Tim Henshaw, and I represent Radha Bolivar and Angelica Goatache.

Mary Beth White here on behalf of HMD Trucking, Inc., and Antonio Wortham.

THE VIDEOGRAPHER: Thank you, Counsel.

Will the court reporter please administer the oath.

Case 1:24-cv-00155-TRM-MJD    Document 102-8    Filed 01/19/26    Page 4 of 153
PageID #: 2341

(Technical difficulties.)

(The witness was duly sworn.)

THE VIDEOGRAPHER: You may proceed.

FAUSTA MIKNIUTE

having been first duly sworn, was examined and testified as follows:

EXAMINATION

BY MR. HENSHAW:

Q. Thank you.

Ma'am -- sorry. Could you just please briefly just state your name for the record?

A. Fausta Mikniute.

Q. Thanks. And you're here to testify on behalf of HMD Trucking today. Do you understand that?

A. Yes.

Q. Okay. Great. Have you ever given a deposition before?

A. Yes.

Q. Okay. In your capacity as a representative for HMD or some other one?

A. Excuse me?

Q. Have you only ever testified for HMD before or have you testified --

Page 5

Case 1:24-cv-00155-TRM-MJD    Document 102-8    Filed 01/19/26    Page 5 of 153
PageID #: 2342

A. Yes.

Q. -- in other cases?

A. For HMD.

Q. How many times? How many times have you testified for HMD?

A. Two.

(After experiencing technical difficulties, the deposition was resumed as follows:)

THE VIDEOGRAPHER: We are back on record at p.m. You may proceed. 1:06

MR. HENSHAW: All right. Thank you.

BY MR. HENSHAW:

Q. So you, ma'am, you were testifying earlier, and you had said that you'd given two prior depositions on behalf of HMD; is that correct?

A. Yes.

Q. Where did you give those depositions?

A. One was here in the office. And actually one of them was not as a corporate representative. It was as a witness.

Q. Okay.

A. And that was downtown Chicago.

Q. Okay. And you have testified once as a witness and once as a representative of HMD; is that

Page 6

Case 1:24-cv-00155-TRM-MJD    Document 102-8    Filed 01/19/26    Page 6 of 153
PageID #: 2343

right?

A. Uh-huh. Yes.

Q. Thank you. Now, what did you do to prepare for this deposition?

A. I have reviewed the documents that we provided. Pretty much that's it.

Q. Did you review any company policies on driver hiring or supervision?

A. Yes.

Q. And did you review Antonio Wortham's files?

A. Yes.

Q. Did you speak to anyone about his employment? Don't talk to me about what you conversed with your attorneys on.

A. No.

Q. Did you review any safety records or audits or hours of service logs?

A. Yes.

Q. Okay. And are you the person most knowledgeable regarding Antonio Wortham's hiring, training, supervision, and discipline at HMD Trucking?

A. Yes.

Q. Does HMD Trucking claim that Antonio

www.veritext.com          Veritext Legal Solutions          800-556-8974

Wortham was an independent contractor at the time of the crash?

A. Yes.

Q. And I'm going to refer to the crash. You understand I'm here to talk to you about a crash which occurred on March 1st of 2023?

A. Yes.

Q. What does HMD Trucking do to ensure independent contractors operate safely within your authority?

MS. WHITE: Object to the form of the question.

BY MR. HENSHAW:

Q. You can answer the question.

A. We do collectively train them. We make sure their driver's qualifications files are good. We audit their log books. We coach them. We hold safety meetings for our drivers.

Q. And are they required to follow company safety policies even if they are independent contractors?

A. Yes.

MS. WHITE: Object to the form of the question. Go ahead. Answer.

Page 8

Case 1:24-cv-00155-TRM-MJD    Document 102-8    Filed 01/19/26    Page 8 of 153
PageID #: 2345

THE WITNESS: Yes.

BY MR. HENSHAW:

Q. How does the company enforce those safety policies?

MS. WHITE: Object to form of the question. You may answer.

THE WITNESS: We train our drivers and we coach our drivers about the policy.

BY MR. HENSHAW:

Q. Who trained Antonio Wortham?

A. There were a few people involved in the training and coaching.

Q. What are their names?

A. One of them was Jacob Clary. Then me, myself. There's probably been a few safety assistants that at some point talked to him but I can not gave you their names.

Q. Why not?

A. I wouldn't know which personnel he talked to at any point of his employment.

THE COURT REPORTER: Excuse me. Can you spell Jacob's last name, please?

THE WITNESS: C-l-a-r-y.

THE COURT REPORTER: Thank you.

www.veritext.com          Veritext Legal Solutions          800-556-8974

BY MR. HENSHAW:

Q. Okay. So help me understand this. You've got these unidentified safety assistants. What are those?

A. This is our safety personnel.

Q. What is -- what do you mean by that? What is a safety assistant and what do they do?

A. Safety assistant is essentially a person that helps drivers on a daily basis, whether it's logbook issue or an accident gets called in, if drivers have any other questions.

Q. Okay. And why, why can't these people be identified?

A. I -- I would be able to provide you names of all the safety assistants, but what I was saying was I wouldn't know at what point and when Antonio talked to any of them as of his employment.

Q. Okay. He is still employed with HMD Trucking to the present day, correct?

A. Yes.

Q. What day did he start?

A. On November 18th of 2021, I believe.

Q. Now, the safety assistants you talked about, do I understand, I guess, that you would have

www.veritext.com          Veritext Legal Solutions          800-556-8974

a number of these people between March -- sorry -- between November 18th of 2021 and today --

A. Yes.

Q. -- that worked on this job?

A. Yes.

Q. Okay. And so I guess part of it is, is that many what people talk to, from that department, there is no log or record that's created of those types of conversations and who had them?

A. I couldn't hear the first part of the question. Can you repeat, please?

Q. Sure. I guess the reason you can't give me those names of those people is when he talked to someone in the safety assistance department there is no log or record that's created of who he's talking to and when, correct?

A. Correct.

Q. If the company doesn't know who Mr. Wortham is talking to and when from that department, does that contribute to the company's ability to supervise him?

MS. WHITE: I'm going to object to the form of the question.

THE COURT REPORTER: Could you say the

Page 11

Case 1:24-cv-00155-TRM-MJD    Document 102-8    Filed 01/19/26    Page 11 of 153
PageID #: 2348

question again?  You were kind of going in and out.

BY MR. HENSHAW:

Q.   Sure.  If the company does -- sorry.

If the company -- well, let me make this a simpler question.  How about this.

How does the company take the information that the safety assistants get from the driver and use it to make sure the driver is operating safely?

MS. WHITE:  Object to the form of the question.  Go ahead.

THE WITNESS:  So sometimes the driver would call to ask a simple question, so we do trust our personnel to have answers for drivers.  Some situations obviously require for an email to be sent out and getting more people involved if needed.

BY MR. HENSHAW:

Q.   Okay.  Is there any policy within the company for determining which calls are escalated, so to speak, and which calls are just handled right then and there?

A.   We do not have a written policy, but anything accident-related has to be sent out in an email.

Q.   Okay.  I guess -- 23I know we know that

Page 12

Case 1:24-cv-00155-TRM-MJD   Document 102-8   Filed 01/19/26   Page 12 of 153
PageID #: 2349

Mr. Wortham was involved on a crash on March 1st of 2023. So then the question is, if it has to be escalated, why isn't somebody knowledgeable about which safety assistant is related to this crash?

MS. WHITE: I object to the form. Mr. Henshaw, I can't hear you. And I don't know if it's just me. When you're turning it's very muzzled.

MR. HENSHAW: Let me try this.

MS. WHITE: And that was my objection that I couldn't hear the question.

MR. HENSHAW: Hold on one second. I'm going to try to do something here. Move when I'm talking is it better when I talk this way?

MS. WHITE: Yes.

MR. HENSHAW: Okay. Great. I'll move the camera over here or system over here, make sure I'm talking the toward the microphone.

BY MR. HENSHAW:

Q. Okay. So my question to, Ms. -- it's Mikniute; is that right?

A. Mikniute.

Q. Mikniute. Is that some kind of -- it's not Finnish by chance is it?

www.veritext.com          Veritext Legal Solutions          800-556-8974

A.  No, it's not.

Q.  Okay.  Okay.  Do you mind -- you don't have to tell me but I'm curious.

A.  Sure.  I'm Lithuanian.

Q.  Okay.  All right.  All right.

So Ms. Mikniute --

A.  You got it.

Q.  Good.  All right.

Ms. Mikniute, if the company requires the safety assistants to escalate when it's accident-related, we know that we're here about an accident today, so why does the company not have knowledge of who the safety assistants were that were involved with Mr. Wortham's March 1st, 2023, crash?

MS. WHITE:  Object to the form of the question.

THE WITNESS:  We do know who sent out an emailed and talked to Mr. Wortham at the time the incident occurred.

BY MR. HENSHAW:

Q.  Who is that person?

A.  Elias Lukosius.

THE COURT REPORTER:  Would you spell that?

THE WITNESS:  E-l-i-a-s.  Last name is

Page 14

Case 1:24-cv-00155-TRM-MJD   Document 102-8   Filed 01/19/26   Page 14 of 153
PageID #: 2351

L-u-k-o-s-i-u-s.

THE COURT REPORTER:  Thank you.

BY MR. HENSHAW:

Q.  So when she received notice of the crash, was that from talking to Mr. Wortham?

A.  Yes.  It is a he, not a she.

Q.  Oh.  Sorry.  Okay.  Is that individual still employed at your company?

A.  Yes.

Q.  All right.  Now, does the company also receive reports from Netradyne when a crash happens?

A.  No.

Q.  All right.  Do you know why not?

A.  No.

Q.  Do you know if Netradyne is capable of notifying the company when a crash happens?

MS. WHITE:  Object to the form of the question.

THE WITNESS:  I do not know that.

BY MR. HENSHAW:

Q.  All right.  Let's back up.

You said that a man named Jacob, yourself, and some safety assistants whose names we don't know were involved in training Mr. Wortham; is that

Page 15

Case 1:24-cv-00155-TRM-MJD    Document 102-8    Filed 01/19/26    Page 15 of 153
PageID #: 2352

correct?

A. Correct.

Q. Anyone else?

A. Umm -- orientation team.

Q. Okay. And who were those people?

A. I would need to see who were these people at the time if we're talking about the incident timeframe, were when Mr. Antonio was hired.

Q. Sure. So the orientation team would have -- maybe I'm presuming here, but I guess those would be the people around November of 2021 that did that job?

A. Correct.

Q. Okay. And you don't know who those people are?

A. I don't want to tell you that the names. I wouldn't be exact. I would need to check who were working at that time in orientation.

Q. Okay. When you talk about orientation, describe that process.

A. So, drivers are being trained on how to pretty much work here as a company, what are our policies and procedures.

We do also train them how to navigate their

www.veritext.com          Veritext Legal Solutions          800-556-8974

hours of service, their logbooks.  We do train them in how to perform pretrip inspections, safe driving, how to avoid incidents.

Q.   Is every driver given the same orientation?

A.   Yes.

Q.   Even if they have prior experience?

A.   Yes.

Q.   All right.  Did Mr. Wortham complete that orientation?

A.   Yes.  He did.

Q.   You mentioned that he received some other training.  Can you describe what that is?

A.   Other training?

Q.   Yes.

A.   As far as orientation?

Q.   No.  Sorry.  I may have gotten ahead of myself a little bit.  I presume you were not involved in his orientation, correct?

A.   Correct.

Q.   And then you mentioned that there were some other training provided by I think it was Mr. Clary, yourself and the safety assistants. What's the difference -- I assume that's different training than orientation he received --

www.veritext.com                    Veritext Legal Solutions                    800-556-8974

A.   Correct.

Q.   -- is that correct?

A.   Yes.

Q.   All right.  What's the other training that he got after orientation?

A.   So we do conduct in-person safety classes twice a year here in the office where we do require all of our drivers to come to the terminal and attend the class.  So we do those.  Mr. Clary performed those incident reviews with the driver. And that's documented in one of the documents that we provided to you.

Like I said, the safety assistants, they do talk to drivers about their hours of service if any questions come up.  So those would be the trainings that we provide.

Q.   Do you know what days Mr. Wortham attended the in-person safety classes after his November, 2021, hiring?

A.   After the accident?

Q.   No.  After his November, 2021, hire date?

A.   I can't give you an exact date right now. I had -- I had it printed out somewhere.  I can find it or I can give it to you later.

www.veritext.com          Veritext Legal Solutions          800-556-8974

Q. I have a training file here, and I'm going to share this with you. One second.

Are you able to see this?

A. Yes.

Q. Okay. So I'll -- I see here that he got driver orientation in October, 2021, and then he got post-accident training, March of 2023. He got defensive driving training on July of 2023. And there was a -- it looks like there was some other things, proper weight distribution in July of 2023. Something about intermodal equipment training?

A. Uh-huh.

Q. There is a few modules here in the July of 2023 training. And then he got a space management training on August 11th of 2023.

I don't see anything for any sort of in-person trainings between his hire date of November, 2021, and his crash date of March 1 of 2023. Would that just be in a different file?

A. Correct. So the completion certificates are not being generated for those trainings. We just notated them. We have a signup sheet the drivers sign.

Q. Okay. Okay. I pre-marked some of these

www.veritext.com          Veritext Legal Solutions          800-556-8974

exhibits so I'm just going to do -- what I'm going to do is I'm just going to just move some of them. I'm going to rename them as I need to.

I'm going to call that Exhibit 1. The training certificates.

(Exhibit Number 1 was marked for identification.)

MS. WHITE: Tim, are you able to read for me the Bates stamp document -- the Bates stamp numbers at the bottom of each of those documents she put into Exhibit 1?

MR. HENSHAW: Yes. 423 through, well, 428.

MS. WHITE: Thank you. And you marked that as Exhibit 1?

MR. HENSHAW: Yes.

MS. WHITE: Thank you.

BY MR. HENSHAW:

Q. Okay. You mentioned, so twice annually. Is that right, twice annually, is that right? They didn't (sic) do in-person safety with Mr. Clary?

A. It wouldn't be necessarily with Mr. Clary. Me, myself, Mr. Clary, and another safety assistant, we were all doing classes every day.

Q. Okay. So you do those two times a year and

www.veritext.com          Veritext Legal Solutions          800-556-8974

then other trainings are as needed, right?

A. I couldn't hear the last part.

Q. Other trainings as needed; is that right?

A. Correct.

Q. Okay. What does HMD Trucking do if it learns that an independent contractor has a history of safety issues?

MS. WHITE: Object to the form.

BY MR. HENSHAW:

Q. You can answer.

A. We would train, coach our drivers. There is a disciplinary action that can take place, whether it's a warning or a verbal conversation.

Q. And why would you do those things?

A. Well, because we want our drivers to be successful, and we have certain standards in place, and we want to be proactive and train our drivers so they can be the best drivers for us on the road.

Q. Is there a process in your company by which you review a driver's safety history?

A. Yes.

Q. What is that process?

A. Well, we do have to check drivers' driving records at least once a year, and that's called

Page 21

annual NDR.  We do that.  And that's -- that's pretty much the biggest review that we do in a year.

Q.  Do you provide any active monitoring of the drivers or active supervision of the drivers?

A.  Yes.  We use a platform for them that notifies us that some of the driver's record changes.

Q.  Is that the Netradyne platform, or is that something else?

A.  No.  That's something else.

Q.  How is Netradyne incorporated into your supervision of drivers?

A.  So, we do coach our drivers based on some of Netradyne data.  At the time of the -- when the incident occurred, we had policies stating that if a driver has a score lower than 750 we would be coaching the driver.  If a driver ended up with a score lower than 600, then would be issuing write-ups.  And training sometimes.

THE COURT REPORTER:  And what sometimes?

THE WITNESS:  Training.

BY MR. HENSHAW:

Q.  Between November, 2021, and March 1st of 2023, was the Netradyne system in place and in use

Page 22

Case 1:24-cv-00155-TRM-MJD    Document 102-8    Filed 01/19/26    Page 22 of 153
PageID #: 2359

in Mr. Wortham's truck?

A. Yes.

Q. What devices actually are inside the truck that enable you to monitor and come up with the score?

MS. WHITE: Object to the form of the question.

THE WITNESS: It's a camera.

BY MR. HENSHAW:

Q. Does the camera face externally or does it also face internally?

A. It does have a lens that faces the driver. It also has exterior, obviously.

Q. Now, on March 1st -- well, let me say this. Let me back up.

You mentioned two score thresholds. 750, the driver is what, again? Anything under 750 results in what happening?

A. Coaching session, training.

Q. And anything below 600 results in what happening?

A. Also training and coaching the driver and might also get a write-up.

Q. Okay. How do you as a company get alerted

when a driver's score falls below one of these two thresholds?

A. We do not get alerted. We have to go in into a driver's profile and see the score.

Q. Okay. How often do you check the driver's score?

A. Monthly.

Q. Who does that?

A. At the time when the incident happened or currently?

Q. Well, I guess, are they different people?

A. Yes. Well, the person who will handle that in March of 2023, she's no longer with us.

Q. Okay. So these scores that are pulled for the drivers, are they -- is it basically -- does it come to you in some sort of like Excel spreadsheet that you got to look at, or how does that come to you?

A. We can see those by entering driver's name or, yes, we can download a sheet.

Q. Okay. So in March of 2023 -- let me, I'm going to -- I'm going to talk about actually just because this happened on March 1st so, you know, just being -- and it happened at nighttime, so just

Case 1:24-cv-00155-TRM-MJD    Document 102-8    Filed 01/19/26    Page 24 of 153
PageID #: 2361

being fair to you guys.  So, February to March.
That sort of, you know, 30 days before and after.

               At that time somebody was going in monthly
and checking drivers's scores in Netradyne, correct?

A.    Yes.

Q.    That person at that time no longer works
for your company?

A.    Correct.

Q.    Who is that person?

A.    Her name is Maria.  And I would need to
remember the last name to find out.

Q.    Now, the scores when they got pulled, was
she pulling all the scores or just the ones that
were below one of these two thresholds?

A.    Below the thresholds.

Q.    Okay.  And then she's sending a -- I guess
a report with those drivers monthly to somebody in
the safety department for HMD to check on further;
is that right?

A.    No.  She would not be sending those
reports.  She was the one coaching the drivers if
she saw any scores lower than the thresholds.

Q.    Was Maria a safety assistant?

A.    Yes.

www.veritext.com          Veritext Legal Solutions          800-556-8974

Q. Okay. So she did the coaching with the drivers herself after she pulled the reports?

A. Yes.

Q. Between November of 2021 and March 1st of 2023, did we know what Mr. Wortham's average score was?

A. No.

Q. Does that data exist?

MS. WHITE: Object to the form.

THE WITNESS: I don't know.

BY MR. HENSHAW:

Q. Okay. If the company does not know what Mr. Wortham's average score was between November 20, 2021, and March 1st of 2023, how can the company be sure that Mr. Wortham was operating safely during that time frame?

MS. WHITE: Object to the form of the question. You can go ahead and answer.

THE WITNESS: Well, it's not always that we can base our knowledge on camera scores. And if he -- if he was coached, if his score would be lower than what our thresholds were there would be documentation of that, but there is nothing for that.

Page 26

www.veritext.com          Veritext Legal Solutions          800-556-8974

BY MR. HENSHAW:

Q. The company actually doesn't know what Mr. Wortham's score was during that timeframe, though, correct?

MS. WHITE: Object to the form of the question.

THE WITNESS: Well, we do know that it wasn't lower than the set thresholds.

BY MR. HENSHAW:

Q. How do you know that if you don't know what it was?

A. Because if there was a score lower than the threshold there would be a training session reported, a verbal conversation or a write-up.

Q. Okay. Where would that be recorded in his file?

A. It would be under the driver's profile.

Q. In his driver qualification file?

A. Correct.

Q. But sitting here today, the company doesn't actually know that Mr. Wortham's score was ever, say, above 600?

MS. WHITE: Object to the form of the question. Misstates prior testimony.

Page 27

Case 1:24-cv-00155-TRM-MJD   Document 102-8   Filed 01/19/26   Page 27 of 153
PageID #: 2364

BY MR. HENSHAW:

Q. Correct?

A. No, sir. We would -- as I said, the threshold was 750. So if his score was lower than 750, there would be training or coaching reported for that matter.

Q. On March 1st of 2023, the company had the data to indicate Mr. Wortham's score, correct?

A. Correct.

Q. And the company no longer has this data, correct?

MS. WHITE: Object to the form of the question.

THE WITNESS: The company does not have, yeah.

BY MR. HENSHAW:

Q. Okay. So the company is basing its position that Mr. Wortham's score was satisfactory in that system based on data that it got rid of, correct?

MS. WHITE: Object to the form of the question.

THE WITNESS: We did not get rid of that information.

Page 28

www.veritext.com                Veritext Legal Solutions                800-556-8974

BY MR. HENSHAW:

Q. What did do you with it?

A. It was being used for coaching purposes so again, if anybody needed to be coached based on that score, they were coached. If no coaching was required, then we wouldn't use that data.

Q. Okay. Let me see if I understand a couple of basic facts about this Netradyne data.

Number one, the company did not actually receive any alerts from Netradyne itself, correct?

A. Yes.

Q. The only way the company would have had that information preserved is because Maria, a safety assistant who no longer works there, would have put that information about the score in the driver qualification file, correct?

A. I'm not sure I understand the question entirely.

Q. Sure. The data that the -- the company doesn't automatically receive any information from Netradyne, correct?

A. Correct.

Q. The company relies on a person to go into Netradyne and --

www.veritext.com          Veritext Legal Solutions          800-556-8974

THE COURT REPORTER: I'm sorry. You broke up at the end.

BY MR. HENSHAW:

Q. Yes. The company relies on a person to go into the database and see what the score is, correct?

A. For the monthly reporting purposes, yes.

Q. And then the company relies on that person to tell the company if there is a problem with a driver's score, correct?

A. Yes.

Q. That person who did that for people like Mr. Wortham in February and March of 2023 no longer works for your company, correct?

A. Correct.

Q. The company has not ever spoken to her to verify that Mr. Wortham's score was satisfactory, correct?

A. I did not speak to her about it, no.

Q. And the data that she would have looked at is no longer available, correct?

A. Not -- not that I know.

Q. Okay. Why wasn't this data preserved when the company was sent an evidence preservation

Page 30

letter?

MS. WHITE: Object to the form of the question.

THE WITNESS: We did preserve videos of the accident.

MS. WHITE: Do you have a copy of that preservation letter that you just referred to?

MR. HENSHAW: I'm sorry. We can get to that in just a minute.

BY MR. HENSHAW:

Q. You preserved the video. How many videos did you preserve?

A. I can't tell you the exact amount. I think there were about 20.

Q. Did any of those videos that were preserved show Mr. Wortham driving?

A. As in him?

Q. Yes.

A. As a person? No.

Q. Why not?

A. Well, because the camera lens that was facing the driver was covered.

Q. How did you determine that?

A. Because there was no video available for us

Page 31

Case 1:24-cv-00155-TRM-MJD Document 102-8 Filed 01/19/26 Page 31 of 153
PageID #: 2368

to see of him.

Q. When did the company reach that determination?

A. When we went in and checked the accident videos.

Q. What day was that?

A. It was the same day of the incident.

Q. March 1st of 2023?

A. Correct.

Q. What did the company do after it determined that the driver-facing camera was covered up?

A. What do you mean, what did we do?

Q. With respect to Mr. Wortham. Did it take any disciplinary action with him?

A. No. No, we did not.

Q. Why?

A. Because due to driver privacy issues, the driver decided to have it covered. So it's not against our policy to have the camera lens covered.

Q. Why not?

A. Why not as in --

Q. Why is it not against your policy to allow the driver to cover up the camera?

A. Because of the driver privacy issues. It's

Page 32

www.veritext.com          Veritext Legal Solutions          800-556-8974

their office.  It's their home.  It's where they drive.  It's where they eat.

We leave it to drivers to decide if they if they want to uncover it or not.

Q.  When was that decision made?

A.  Probably around the same time when we started getting cameras started.

Q.  What day was that?

A.  I wouldn't be able to give you an exact day, but it was still 2018, I believe, when we started installing them.

Q.  Okay.  How did Mr. Wortham inform the company that he wanted to cover up the camera while he was driving for you?

A.  Drivers, they do not need to inform us about that.

Q.  Okay.  The -- the company has this Netradyne system in its fleet, correct?

A.  Correct.

Q.  Every truck has the outward facing camera and the inward facing camera, correct?

A.  Yes.

Q.  And so at any given point in time, any of those drivers can cover up that camera as they wish?

www.veritext.com          Veritext Legal Solutions          800-556-8974

A. No. Actually, cameras, they do come with a lens cover from the manufacturer.

Q. The manufacturer allows the driver -- okay. So wait a minute. Let me make sure I understand.

So, the cameras that face the driver, they can be -- it has basically like a slide where I can reach up and I could do -- like I can do that with my webcam right now?

A. It's a cap. Uh-huh.

Q. Okay.

A. That goes on the camera.

Q. All right. So you have this cap. And -- but at any given point in time the driver is the one who can decide whether or not the camera will work as it's facing them, correct?

MS. WHITE: Object to the form.

THE WITNESS: Yes. It's up to the driver to decide if he wants to uncover that lens.

BY MR. HENSHAW:

Q. Okay. Does the Netradyne system report coachable events?

A. Umm -- not always.

Q. But it does sometimes?

A. Yes.

Page 34

Case 1:24-cv-00155-TRM-MJD    Document 102-8    Filed 01/19/26    Page 34 of 153
PageID #: 2371

Q. I understand that in August of 2023 --
well, let me back up. I'm not going to go there
yet.

Let's talk about -- it reports coachable
events. Does it do that based on what it's seeing
or does it do that based on the forces of the truck
itself?

MS. WHITE: Object to the form of the
question.

THE WITNESS: There can be different
scenarios. If it's a hard braking event or hard
acceleration yes, it would show an alert.

BY MR. HENSHAW:

Q. Okay. When you get the hard brake/
hard acceleration event, does the system notify you
if, for example, you're unable to determine what
happened because the camera is covered up?

A. I'm -- I'm not sure I understand the
question.

Q. Sure. Do you get reports of -- from the
Netradyne of, hey, a coachable event happened but
the camera is covered; we can't see what happened?

A. No. There is no such report.

Q. Do you get obstructed camera notifications

www.veritext.com                Veritext Legal Solutions                800-556-8974

from Netradyne?

A. We don't get such notifications, no.

Q. Okay. Did the company preserve any other videos of Mr. Wortham's driving between November of 2021 and March of 2023?

A. No.

Q. So all the videos that were preserved are related to the crash of March 1st, 2023, correct?

A. Correct.

Q. Okay. When hiring Mr. Wortham, did the company obtain a complete copy of his prior references?

A. What do you exactly mean by prior reference?

Q. Sure. Did you check with his prior employers about his driving history?

A. Yes.

Q. And did you get all the responses that you're required to get?

A. We received those, yes.

Q. Did -- when you checked his driving history, did it reveal any employers that he did not tell you about?

A. Not that I remember, no.

www.veritext.com          Veritext Legal Solutions          800-556-8974

Q. So I'm going to share with you a document that was produced to me. This is -- starts with HMD 279. It goes through 283.

Are you familiar with this?

A. Yes.

Q. Okay. So I noticed when I was reviewing this that the, one of -- there was this note here from Yurga Muralis to Victoria Sabotkoska.

A. Uh-huh.

Q. It says: Annett Holdings Inc missing from employment history.

A. Yes.

Q. So then there was -- he did not report for the company having worked for Annett Holdings, correct?

A. Not necessarily, no. So a driver can -- I mean it's not that uncommon for a driver to not remember all the previous employers at the time when they applied. This is when they go through the process that driver can call in the next or even the same day and say, oh, I forgot to have this employer.

Q. Got you.

A. Yeah.

www.veritext.com          Veritext Legal Solutions          800-556-8974

Q. Do you then document what the driver says about that employer and why they didn't report it in this file?

A. Well, it would leave a note just like that. Employer needs to be --

Q. Okay. We can go through these pages one by one, but are you aware of in hiring process where any note was made about following up on Mr. Wortham not telling you about Annett Holdings?

A. Like I said, I wouldn't say he did not tell us. It looks like he told us and we just added a note stating that.

Q. Okay. I'm reading this correct: Annett Holdings Inc missing employment history?

A. Uh-huh.

Q. Right? So what is that supposed to mean?

A. That means when possibly when driver complied the first time and submitted his application, but later on he remembered that somebody was missing and he called us and he let us know that there is another employer. That could mean that.

Q. Okay. All right. So this October 15th of 2021 note reflects that Mr. Wortham was -- had

called in to report to you, either Yurga or Victoria, that he did not previously tell you about having worked for Annett Holdings?

MS. WHITE:  I'm going to object to the form.

THE WITNESS:  I am not sure what the conversation was at that time.  But it's quite possible that he did call and let us know that there is this other company, too.

BY MR. HENSHAW:

Q.  We can agree that that note doesn't say anything about Mr. Wortham calling in to give that information, correct?

A.  Right.  It doesn't say that he called in.

Q.  It says that that company is missing from the employment history?

A.  Right.

Q.  Now, are there any other notes about following up on Annett Holdings on this page?

A.  Not that I see, no.

Q.  Okay.  What if we scroll up, because I know this is kind of in the timeline here, to 281.

Do you see anything about following up on that?

Page 39

Case 1:24-cv-00155-TRM-MJD   Document 102-8   Filed 01/19/26   Page 39 of 153
PageID #: 2376

A. No.

Q. What about any other time? Do you see any other notes about following up on that?

A. No.

Q. Did the company actually get information from Annett Holdings Inc and determine what occurred in that employer?

MS. WHITE: Object to the form.

THE WITNESS: If you -- can you open up the exhibit where it has employment verifications? I --

BY MR. HENSHAW:

Q. I can pull up -- I can pull up his driver's qualification file, yes, but I'm just asking if you know right now?

MS. WHITE: Objection to the form of the question.

THE WITNESS: Yeah, I can't remember off the top of my head right now.

BY MR. HENSHAW:

Q. That's fine.

Did you bring the driver qualification file with you to the deposition today?

A. I did have it printed out, yes.

Q. Why don't you just look through there and

Page 40

Case 1:24-cv-00155-TRM-MJD   Document 102-8   Filed 01/19/26   Page 40 of 153
PageID #: 2377

tell me if it's there.

And I'll mark these series of pages Exhibit 2 while we're doing that, okay?

(Exhibit Number 2 was marked for identification.)

A. Uh-huh.

MS. WHITE: Tim, for the record that's HMD -- is it 279 through 282?

MR. HENSHAW: Yes.

MS. WHITE: Okay. Thank you.

MR. HENSHAW: 283 technically.

MS. WHITE: That's helpful. Okay. Thank you.

MR. HENSHAW: I'm not sure how these go.

THE WITNESS: I don't have the document here with me.

BY MR. HENSHAW:

Q. You did not find it?

A. I'm not sure if it's -- yeah, I don't have it printed. I believe it's not all of it.

Q. Because I did see, you know, if I'm looking at HMD 352 and HMD 353, I do see where a response was sent to - where a response was received from Publix?

www.veritext.com          Veritext Legal Solutions          800-556-8974

A. Uh-huh.

Q. And then I see here that a response -- a questionnaire, it says, was submitted to Annett Holdings on 11-3-2021, by Brennan Jones?

A. Okay.

Q. I see it it's HMD 354 and 355.

A. I found the document.

Q. And it says -- it looks like you submitted but you did not actually get a response back from Annett Holdings.

Am I reading the file correctly?

A. We did get a response from them.

Q. Okay. What was the response that you received back?

A. That he was a trainee. That he quit in training. That he drove truck for them for, looks like a month. Maybe less than a month.

Q. Okay. That's the information that they provided back to you?

A. Correct.

Q. Okay. So then he was hired in November of 2021, correct?

A. Yes.

Q. All right. And at that time he was given

Page 42

Case 1:24-cv-00155-TRM-MJD   Document 102-8   Filed 01/19/26   Page 42 of 153
PageID #: 2379

an employee handbook, correct?

A. Yes.

Q. Now, the company handbook, what is the company policy on reporting incidents to the company?

A. All drivers are required to report incidents to the company as soon as possible.

Q. And that's regardless of severity, correct?

A. Correct.

Q. And the policy actually is that unreported incidents will be considered an admission that you could have prevented the incident, correct?

A. That might be --

THE COURT REPORTER: Would you repeat your answer, please?

THE WITNESS: That might be the case, yes.

THE COURT REPORTER: Thank you.

BY MR. HENSHAW:

Q. You say, that might be the case. What would -- what would be a reason that you would change that?

A. Well, it's -- it depends on the situation. Sometimes it might be a communication issue. So that it's --

www.veritext.com        Veritext Legal Solutions        800-556-8974

Q. I've shared with you what's been produced to me as HMD 373. Do you see that?

A. Yes.

Q. I'll refer you down to six?

A. Uh-huh.

Q. It says -- it says, if I'm reading this correctly, it says: Unreported incidents will be considered an admission that you could have prevented the incident. Correct?

A. That's what it says there, yes.

Q. Okay. So that's the company policy, is it not?

A. That is the company policy.

Q. Okay. Now, I think what you just testified to is that although the company has this policy in writing, in reality the company may choose to let something slide?

MS. WHITE: Object to the form of the question.

MR. HENSHAW: You can answer.

MS. WHITE: It misstates prior testimony.

Go ahead, Fausta. You can answer the question.

THE WITNESS: That is not correct. We

www.veritext.com          Veritext Legal Solutions          800-556-8974

Case 1:24-cv-00155-TRM-MJD   Document 102-8   Filed 01/19/26   Page 44 of 153
PageID #: 2381

would conduct the investigation of the incident and we would coach the drier based on the facts.

BY MR. HENSHAW:

Q. Okay. Though if a driver hit a parked car and didn't report it to you, you would investigate and then make a decision whether it was preventable, correct?

A. I'm sorry. I didn't hear the last part of the question.

Q. Sure. So for example, if a driver hit a parked car and then didn't report it to you, it would not necessarily consider that preventable, just from the fact that you later found out it happened, correct?

A. We would review -- we would review how the accident happened and then we will make the determination.

Q. Why does the company have a policy then that unreported incidents will be considered an admission if that is not actually the case?

A. Well, we do coach our drivers if they do not -- if they end up not reporting something they will be coached base on that. There is possibly also to be a write-up to that.

www.veritext.com          Veritext Legal Solutions          800-556-8974

Q. Okay. I need to make sense of this situation where the company has a policy to consider unreported incidents an admission across the board and yet that's not the actual reality of what takes place?

MS. WHITE: Object to the form of the question.

THE WITNESS: I'm not sure I understand your question.

BY MR. HENSHAW:

Q. Sure. Let me ask you this: Are there other circumstances where the company has a written policy but then it will actually vary from the written policy depending on the circumstances?

MS. WHITE: Object to the form of the question.

THE WITNESS: No. Not that I --

BY MR. HENSHAW:

Q. But when it comes to reporting crashes and safety incidents, that's the only time the company will vary from its written policies?

MS. WHITE: Object to the form of the question.

THE WITNESS: I wouldn't say it would vary.

Page 46

Case 1:24-cv-00155-TRM-MJD   Document 102-8   Filed 01/19/26   Page 46 of 153
PageID #: 2383

We would investigate the incident.  Like I said, we would talk to our driver and coach our driver if needed and then the driver does get a write up for not reporting the incident.

BY MR. HENSHAW:

Q.   If you're going to investigate then why do you have a policy that says you're going to consider it preventable no matter what?

A.   Well, that's for drivers to know.

Q.   Are drivers taught that the incident will be investigated and then a determination will be made, or are they taught that incidents will be considered an admission that they could have prevented it no matter what?

A.   Well, that's what it says in that policy.

Q.   Okay.  So you may vary from the policy for a specific incident but you're not going to tell the drivers that that's what you're going to do, correct?

A.   I -- I wouldn't say so.  No.

Q.   You want the drivers to think that if I don't tell the company about something, it's going to go down on my record as a preventable incident and I'm going to be in trouble, correct?

Page  47

Case 1:24-cv-00155-TRM-MJD    Document 102-8    Filed 01/19/26    Page 47 of 153
PageID #: 2384

MS. WHITE: Object to the form.

THE WITNESS: I would not know what a driver would think.

BY MR. HENSHAW:

Q. Okay. What is the company's goal in telling drivers that unreported incidents will be considered an admission that you could have prevented the incident?

A. Well, we want our drivers to report the incidents to us.

Q. Without exception?

A. Correct.

Q. Then you want the drivers to be concerned about consequences if they don't follow this policy, correct?

MS. WHITE: Object to the form.

THE WITNESS: I -- I would not know if a driver would be concerned or not.

BY MR. HENSHAW:

Q. Okay. I understand that you're talking about what a driver may actually think, but what does the company intend here?

A. We want all incidents to be reported.

Q. Why?

www.veritext.com          Veritext Legal Solutions          800-556-8974

A.   Our goal would be multiple reasons. Sometimes we need to be aware if anything happens so we can notify customers that deliveries or pickups can be made on time.  Sometimes the driver might need assistance from us when -- with the incident.

Q.   Is there any other --

A.   And then sometimes --

Q.   Sorry I interrupted you.  Go ahead.

A.   Yeah.  Sometimes cargo needs to be addressed.  There might be various reasons.

MS. WHITE:  Tim, let me know when you get to a good stopping point.  We've been going on about an hour.  I'd like to stretch my legs if I can.

MR. HENSHAW:  Sure.  I'm almost done with this exhibit.

MS. WHITE:  Okay.

BY MR. HENSHAW:

Q.   All right.  Before we move on, this is the -- this is from the driver policy manual that Mr. Wortham would have acknowledged when he came onboard in orientation, correct?

A.   Correct.

Q.   And HMD 373 is something that he would have understood prior to beginning one day of work at

www.veritext.com          Veritext Legal Solutions          800-556-8974

your company, correct?

A.   What was the question again?

Q.   Sure.  The policy listed here in HMD 373, he would have had to understand all these before he began one day of work at your company, correct?

A.   I mean I'm not sure when he signed the actual receipt, but yes, generally yes.

MR. HENSHAW:  Okay.  We can go ahead and take -- five minutes?

MS. WHITE:  Sounds good.  Thank you.

THE VIDEOGRAPHER:  Please stand by.  We are going off record at 2:11 p.m.

(There was a discussion
 held off the record.)

THE VIDEOGRAPHER:  We are back on record at
p.m.  You may proceed.                          2:22

BY MR. HENSHAW:

Q.   Thank you.

One thing, one thing I wanted to clarify with you before we move on to sort of our next area.

You mentioned that HMD's policy is to allow the driver to decide whether or not to cover up the camera, correct?

A.   Yes.  They can choose to do so.

www.veritext.com          Veritext Legal Solutions          800-556-8974

Q. Yes. And that, that policy exists, the driver can choose also to cover up the camera while driving as opposed to just when they are off duty?

A. I'm not sure I understand the question.

Q. Sure. Okay. So in other words, when the drivers are on duty, they can choose to cover up the camera, correct?

A. Well, the camera is covered. That's how they -- that's how we get them shipped. So, yes. Drivers can decide to take that cap off whether they are driving or not.

Q. Okay. Did HMD consider making the policy to allow drivers to cover up the camera when they were off duty but require it to be on when they were on duty?

A. I believe we did consider that, but due to driver privacy issues we could not role out that policy.

Q. What privacy issues do drivers have while they are on duty?

A. Well, they are driving a truck 11 hours a day. They can be on duty 14 hours a day. That's -- that's their working time. And they simply -- it's up to them if they don't want to be seen while

www.veritext.com          Veritext Legal Solutions          800-556-8974

working.

Q.   What reason would a driver have for not wanting to be seen while working?

A.   Well, you are sitting in a truck pretty much the whole day driving in that seat.  Or you might be on duty as well.  And then that is a privacy issue in my opinion.

Q.   So the concern was that drivers would be captured on camera driving a truck safely and that would violate their rights to privacy?

MS. WHITE:  Object to the form of the question.

THE WITNESS:  I -- I don't think I understand your question.

BY MR. HENSHAW:

Q.   Sure.  I mean when they are on duty they are supposed to be doing nothing but driving a truck safely, correct?

A.   Well, correct, but they can be scratching their nose at the same time or, you know -- I don't know.  Scratching heads or they might be driving topless.

There is -- there is several things that they can be doing.  And they don't --  they wouldn't

www.veritext.com          Veritext Legal Solutions          800-556-8974

want to be seen.

Q. Now, having the camera on the driver while the driver is on duty could also help the company curtail behavior such as distracted driving, correct?

A. It potentially could, but not always.

Q. And it could potentially help you prevent drivers from using drugs while driving, correct?

A. I'm not sure how is that relevant.

Q. Well, I'm asking you.

MS. WHITE: She's allowed to ask questions. Do you understand -- if you understand the question you can answer it. If not you can ask him to try to rephrase it.

THE WITNESS: Yes. I -- I don't really understand the drug use part.

BY MR. HENSHAW:

Q. Okay. Well, if the camera was on, then a driver might be less inclined to use drugs while they are operating one of your trucks, correct?

A. Maybe potentially.

Q. Okay. They might be generally more inclined to drive safer, correct?

A. Not always.

www.veritext.com          Veritext Legal Solutions          800-556-8974

MS. WHITE: Object to the form of the question.

BY MR. HENSHAW:

Q. Not always, but generally?

MS. WHITE: Object to the form of the question. Calls for speculation.

THE WITNESS: Generally, not always.

BY MR. HENSHAW:

Q. Okay. So as I understand it then, HMD could have implemented a policy to require the driver to let camera record them while they were on duty but it chose not to because, for example, the driver might be recorded scratching their head or their nose, which would violate their rights to privacy, correct?

MS. WHITE: Object to the form of the question.

THE WITNESS: And that is not the only concern obviously. Driver privacy is a big concern but also we have to navigate between driver hiring and retention so it all comes together with that.

BY MR. HENSHAW:

Q. Okay. So you, if you had a policy that required the driver to uncover the camera when they

Page 54

Case 1:24-cv-00155-TRM-MJD   Document 102-8   Filed 01/19/26   Page 54 of 153
PageID #: 2391

are on duty, it might affect hiring and retention of drivers?

A. It could possibly do that, yes.

Q. Okay. There are companies that require drivers to have the camera on when they are on duty, aren't there?

A. I'm not sure.

Q. Okay. You're not aware -- HMD doesn't -- didn't do anything to take the temperature of the industry when it was making this policy?

A. Well, when he started installing our cameras back in 2018 I'm pretty sure we -- maybe we weren't the first company to do that but it wasn't like every company had cameras in their trucks in general.

Q. Sure. How would requiring drivers to have the camera on when they are on duty affect hiring or retention?

A. I am pretty sure that quite a few drivers would -- would have an issue with their privacy, and they would decide to either resign or to not get on-boarded.

(Court reporter requested that the witness repeat the last part of her

www.veritext.com          Veritext Legal Solutions          800-556-8974

answer.)

THE WITNESS:  Resign or got on-boarded, hired.

BY MR. HENSHAW:

Q.  Is there any specific data or studies or anything that you relied on to reach that conclusion?

A.  We did ask our drivers about that, and the general answer was they would not like to have that driver-facing camera on.

Q.  Did they cite in this -- was this like a survey, I guess, of your drivers?

A.  I don't remember how it was -- no.  I don't think it was a survey.

Q.  Okay.  How did you get information?

A.  I think it was a phone call.  We called quite a few drivers and asked them of their opinion.

Q.  All the drivers or just like a representative sample?

A.  It wasn't all drivers for sure.  I can't tell you exact number how many drivers we called.

Q.  Was that something that you did or something that other people within the company did?

A.  I remember I did make some phone calls,

Page 56

Case 1:24-cv-00155-TRM-MJD   Document 102-8   Filed 01/19/26   Page 56 of 153
PageID #: 2393

yes.

Q. Okay. And the question was posed whether they would be okay with it --

A. Correct.

Q. -- with having the camera on when they were on duty, correct?

A. Right.

Q. So several of them said they were not comfortable with that?

A. Yes.

Q. Did they give their reasons?

A. Once again, they don't want to be seen and filmed while they are sitting in the truck driving or being on duty.

Q. Did any of them state why they didn't want to be seen?

A. Well, like I said, some of them, they don't want to be seen while they are scratching their noses. Some of our drivers, they do have passengers in trucks that would also would not be comfortable with that.

Q. Okay. Did Mr. Wortham give a specific reason why he was not comfortable having the camera face him?

Page 57

Case 1:24-cv-00155-TRM-MJD    Document 102-8    Filed 01/19/26    Page 57 of 153
PageID #: 2394

MS. WHITE: Object to the form.

THE WITNESS: I don't remember asking him that particular question.

BY MR. HENSHAW:

Q. Okay. And the driver makes the decision? You don't ask them their reason for that, correct?

A. Not always, yes.

Q. All right. Now, when after the crash -- sorry.

After Mr. Wortham was hired, when was his first preventable incident?

A. Let me see. I don't remember the exact date. I know there is a document. August of 2022. August 10th it looks like.

Q. Okay. And what you're referring to there is where he received the warning that, about not -- actually not reporting four separate incidents in his time since he started with your company; is that correct?

MS. WHITE: Object to the form.

THE WITNESS: That an incident, as he called it, yes, there was unreported damage to equipment.

BY MR. HENSHAW:

Page 58

Case 1:24-cv-00155-TRM-MJD    Document 102-8    Filed 01/19/26    Page 58 of 153
PageID #: 2395

Q. Okay. Now, as a result of the -- if you're -- are you reviewing the, the document HMD 123, the safety improvement review from that date of August 10, 2022?

A. I don't have it here in front of me right now but I did see it.

Q. I could share it with you. I have it here.

A. Uh-huh.

Q. I just wanted to see if you had it. All right.

So this is the safety improvement review. Have you seen this document before.

A. Yes.

Q. So, the driver's statement here was that he actually -- his first preventable incident was in April of 2022.

Is that correct?

A. Yes.

Q. And he did not report that to the company, correct?

A. Correct.

Q. Which was a violation of the company policy, correct?

A. Yes.

www.veritext.com          Veritext Legal Solutions          800-556-8974

Q. As a result of not reporting it, he did not receive any training, discipline, or coaching after that April, 2022, preventable incident, correct?

A. Well, he did receive -- he did receive coaching after we found out about the damages.

Q. Correct. He received that coaching in August, four months later after it was discovered, correct?

A. Yes.

Q. And that preventable incident was in June of 2022; is that correct?

A. That is what it says here in the document, yes.

Q. And he did not report that to the company, correct?

A. Correct.

Q. And as a result, he did not receive any training, coaching, or disciplinary action until the existence of that incident was discovered approximately two months later in August, correct?

A. Yes.

Q. And it was a violation of company policy for him to not report that incident and when it occurred in June of 2022?

Page 60

Case 1:24-cv-00155-TRM-MJD    Document 102-8    Filed 01/19/26    Page 60 of 153
PageID #: 2397

A. Yes.

Q. Now, in July of 2022 he had a third preventable incident, correct?

MS. WHITE: Object to the form.

THE WITNESS: That one it doesn't look like it was preventable. It says that he got hit as the receiver.

BY MR. HENSHAW:

Q. Well, because he did not report that when it happened, correct?

A. He did not, no.

Q. So under company policy then it's preventable, correct?

MS. WHITE: Object to the form of the question.

THE WITNESS: Under his policy, yes.

BY MR. HENSHAW:

Q. All right. So that third preventable incident that he did not report to the company, it was a violation of him to not report that to the company, correct?

A. Yes.

Q. And he did not receive any coaching or discipline or supervision or training after that

Page 61

Case 1:24-cv-00155-TRM-MJD    Document 102-8    Filed 01/19/26    Page 61 of 153
PageID #: 2398

because, again, the company didn't know about it, correct?

MS. WHITE: Object to the form.

THE WITNESS: Right.

BY MR. HENSHAW:

Q. And then he had a fourth preventable incident, it looks like the same month, July of 2022. Is that correct?

A. Yes. That's what it says on this document.

Q. And again, he did not report this to the company, which was a violation of company policy, correct?

A. Right. He did not report it.

Q. Okay. Now, he also did not receive any supervision, training, or coaching related to that incident until it was discovered that he had not reported it, correct?

A. Right.

Q. At this point in time with Mr. Wortham's history of having had four preventable incidents in his first year with the company, was any determination made as to how much more would be tolerated from Mr. Wortham?

MS. WHITE: Object to the form of the

www.veritext.com          Veritext Legal Solutions          800-556-8974

question.

THE WITNESS: Well, we coached our driver. We sat down and we figured out why he did not report all these incidents, but that by the policy did not trigger termination, if that's what's you're asking.

BY MR. HENSHAW:

Q. Okay. Why did it not trigger a termination?

A. Well, because once the damages were discovered, we sat down with the driver. He got a write-up. We trained him. And after that there were no -- no such issues with him.

Q. Okay. And there were no further issues until March of 2023, correct?

A. Correct.

Q. All right. However, during this time you had Netradyne, which was recording data from how he was using the truck, correct?

A. Yes.

Q. And we have no idea what Netradyne caught, if anything, between August of 2022 and March of 2023, correct?

A. Well, we do know that the threshold for coaching, he did not -- he was not lower than the

www.veritext.com          Veritext Legal Solutions          800-556-8974

threshold. So --

Q. Let me rephrase my question.

The data that was in the Netradyne system existed on March 1st of 2023 but we don't have it here today, do we?

A. We do not.

Q. So I can't look at that data and determine what, if anything, was going on with Mr. Wortham's driving habits according to that data between August and March?

A. No, you cannot do that right now.

Q. What was the purpose in allowing that data to be purged?

MS. WHITE: Object to the form of the question.

THE WITNESS: I'm not sure I understand your question.

BY MR. HENSHAW:

Q. Sure. Why was that data not preserved?

A. Well, we didn't think it was relevant to the incident.

Q. What other information did HMD have access to that it did not -- because it didn't think it was relevant?

Page 64

A. I can't think of anything else.

Q. Okay. In the Netradyne videos that were preserved you mentioned that they are all -- none of them -- none of them show the driver. Do any of them show the -- what the camera was able to see of Mr. Wortham, just covered up?

A. I'm -- I'm not sure I understand the question.

Q. Are any of the videos that you preserved like the blank video of Mr. Wortham but you can't see it because the camera is covered up?

A. Uh-huh.

Q. They are?

A. No. What is the question exactly?

Q. Are any of the videos that video?

A. Of a blank screen?

Q. Yes.

A. I don't think so, no.

Q. Okay. My question, I guess, is did the system record Mr. Wortham, even though it's not actually showing him, during this crash?

A. No. It would not.

Q. Okay. So, the camera, when the cap is on it, it doesn't even record; is that right?

www.veritext.com          Veritext Legal Solutions          800-556-8974

A.   Right.

Q.   Okay.  So then does the -- when the cap is not on, does the system record audio information?

A.   No.

Q.   Okay.  So it would only show the driver under any circumstances; it wouldn't record any audio from inside the cab, correct?

A.   Right.

MR. HENSHAW:  All right.

Madam Court Reporter, I need to do some cleanup before we move on to the next area as far as the exhibits go.  Sorry.

THE COURT REPORTER:  Okay.

MR. HENSHAW:  I need to make -- let's see. I think I'm up to the next exhibit would be four, correct?

THE COURT REPORTER:  I have number 1 and 2. What is 3?

MR. HENSHAW:  Number 3 is -- that's what I was going to clear up.  So Number 3 is going to be HMD 373.

(Exhibit Number 3 was

marked for identification.)

And then Number 4 is going to be that one

www.veritext.com          Veritext Legal Solutions          800-556-8974

that we just went over, August, 2022.

MS. WHITE: What's the Bates number on that, Tim?

MR. HENSHAW: HMD 123.

(Exhibit Number 4 was marked for identification.)

BY MR. HENSHAW:

Q. You talked about one of the things which is in the company handbook, that dishonesty is -- well, sorry.

Can we agree that the company handbook states that dishonesty is prohibited conduct under your policy?

MS. WHITE: Object to the form of the question.

THE WITNESS: I don't remember off the top of my head how it's -- what's the verbiage in there.

BY MR. HENSHAW:

Q. Okay. Sure. I'm happy to pull it up.

So I'll refer you to HMD 414. Guidelines for Appropriate Conduct. You're familiar with this, correct.

A. Yes.

Q. And under HMD's policy, dishonesty is

www.veritext.com          Veritext Legal Solutions          800-556-8974

prohibited, correct?

A. Yes.

Q. And that would include being dishonest about anything, including what happened in a crash, not reporting a crash, things like that, correct?

A. Not always.

Q. Okay. What types of dishonesty would you tolerate?

A. Well, I would say not types of dishonesty, but sometimes it might be a misunderstanding or just driver's lack of knowledge.

Q. Okay. Let's unpack that a little bit. What do you mean by the first one? I think you said it was a misunderstanding?

A. There might be some communication issues, yes.

Q. Give me -- give me an example of how a communication issue, in your mind -- well, explain what you mean by that.

A. So, let's say a driver forgets to do something. We cannot right away say that he's being dishonest.

Q. Okay.

A. Or a driver misinterpreted something or

www.veritext.com          Veritext Legal Solutions          800-556-8974

misunderstood and forgot to do something.  We cannot blame the driver as being dishonest.

Q.   Okay.  So is it the company's view then that Mr. Wortham not reporting the April, June, and two July incidents were communication mishaps?

A.   That's what I would say, yes.

Q.   Okay.  How do you explain that in light of the fact he acknowledged that it would be a violation of policy to not report such incidents?

MS. WHITE:  Object to the form. Misstatement of prior testimony.

THE WITNESS:  So I think he misunderstood his reporting obligations because he was lease operator.

BY MR. HENSHAW:

Q.   Okay.  But he signed the handbook, correct?

A.   Correct.

Q.   And so he was completely aware of what was contained in that policy?

MS. WHITE:  Object to the form.

BY MR. HENSHAW:

Q.   Wasn't he?

A.   Well, I cannot -- I cannot testify for him and say that he was completely aware.  You'll --

Q. Okay. The purpose of having him sign the handbook was to verify that he understood what was in that policy --

A. Yes.

Q. -- and would follow it, correct?

A. Yes.

Q. I also note that it's misconduct under this company guideline to fail to report a safety incident. Is that also true?

A. I didn't get the question.

Q. Sorry. Is it also true that failing to report a safety incident is misconduct under the guidelines that your company has?

A. Yes.

Q. Are there any other types of misconduct that the company is aware of that Mr. Wortham has engaged in besides these four prior incidents leading up to March?

MS. WHITE: Object to the form of the question.

THE WITNESS: Not that I'm aware of, no.

BY MR. HENSHAW:

Q. All right. Would you agree with me that having a driver-facing camera might have deterred

www.veritext.com          Veritext Legal Solutions          800-556-8974

misconduct by Mr. Wortham?

MS. WHITE:  Object to the form of the question.

THE WITNESS:  No, I would not agree with that.  Not necessarily.

BY MR. HENSHAW:

Q.  Not necessarily.  What does that mean?

A.  I mean having the lens open does not necessarily mean that he's doing some sort of misconduct in the truck.

Q.  Just to be clear, the company's position is that having a driver-facing camera would not have aided in deterring Mr. Wortham from engaging in misconduct?

MS. WHITE:  Object to the form of the question.  Misstates prior testimony.

THE WITNESS:  Can you rephrase this question, please?

(The requested portion of the record was read.)

MS. WHITE:  Same objection.

THE WITNESS:  I think, well, the company believes that having the driver-facing camera does not necessarily show any driver improper behavior or

Page 71

Case 1:24-cv-00155-TRM-MJD   Document 102-8   Filed 01/19/26   Page 71 of 153
PageID #: 2408

dishonesty.

BY MR. HENSHAW:

Q. I would appreciate if you could give a yes or a no and then elaborate further.

MS. WHITE: She can answer the question the way that she sees fit, which is what she's doing.

MR. HENSHAW: The company -- it's a yes or no.

MS. WHITE: No. It's not.

MR. HENSHAW: Madam Court Reporter, would you read back the question one more time?

(The requested portion of the record was read.)

MS. WHITE: I'm going to object to the question. She's answered the question as not necessarily and then she explained what she said not necessarily and so she's answered that question.

MR. HENSHAW: Yeah, and actually just so be clear, Madam Court Reporter, I was asking for the question right after that.

(The requested portion of the record was read.)

MS. WHITE: I'm going to object to the form of the question. She's asked and answered it and I

Page 72

Case 1:24-cv-00155-TRM-MJD    Document 102-8    Filed 01/19/26    Page 72 of 153
PageID #: 2409

don't think if that calls for a yes or no.

MR. HENSHAW:  So you're instructing her not to give a yes or no to that question?

MS. WHITE:  I don't know what -- respectfully, I'm not sure what you're asking in that question.  So if you want to ask it again, we'd would appreciate you asking it again.

MR. HENSHAW:  Madam --

MS. WHITE:  Object to the form of the Question.

Fausta, if you understand the question that's been asked you can answer it.  If not you can ask Mr. Henshaw to rephrase it.

THE WITNESS:  Yes, I ask to rephrase the question.

BY MR. HENSHAW:

Q.  Okay.  What do you not understand about the question?

A.  I mean I think I already answered and I said, not necessarily.  That having that lens open does not -- would not necessarily tell us the driver is doing something wrong.

Q.  So is the answer to my question no, that, or yes?

www.veritext.com          Veritext Legal Solutions          800-556-8974

MS. WHITE: Ask the question. She doesn't understand the question. She told you she doesn't understand the question so I'm going to instruct her not to answer because we don't know what you're asking, Mr. Henshaw.

MR. HENSHAW: Madam Court Reporter, read back the question one more time and then that's a -- if you don't understand the question let me know what part of it you don't understand.

MS. WHITE: And if it's the whole thing just tell him it's the whole thing.

Go ahead.

(The requested portion of the record was read.)

MS. WHITE: Object to the form.

BY MR. HENSHAW:

Q. Do you understand the question?

A. I do, and I already answered, I believe.

Q. Okay. You have not given a yes or no in response to that question. Will you?

A. I don't think it's a yes or a no question.

Q. Why isn't it a yes or no question?

A. Well, I said it would not necessarily show certain behaviors.

Page 74

Q. So then is the answer no?

MS. WHITE: Object to the -- Mr. Henshaw, she said, not necessarily.

BY MR. HENSHAW:

Q. What behaviors would a driver-facing camera not help to curb?

MS. WHITE: Object to the form. Calls for speculation. Go ahead and answer.

THE WITNESS: Can you repeat the question again?

BY MR. HENSHAW:

Q. Yeah. What forms of misconduct do you thing would not be deterred by a driver-facing camera?

MS. WHITE: Same objection.

THE WITNESS: What kind of behaviors would not -- I'm not sure I know an answer to that question.

BY MR. HENSHAW:

Q. Can you give me one example of a type of misconduct that a driver-facing camera wouldn't help deter?

A. That would be potential cell phone use.

Q. Okay. So you're saying that -- and I just

www.veritext.com          Veritext Legal Solutions          800-556-8974

want to make sure I understand because we're in the weeds a little bit, and I want to be fair to you. You're saying that a driver-facing camera wouldn't help deter cell phone use?

MS. WHITE:  Object to the form of the question.  That is not in any way how she testified, but go ahead.

BY MR. HENSHAW:

Q.  If that's not what you meant I want to make sure it's clear.  I want to be fair to you.  That's why I think maybe we got a little bit confused there.  So let me inverse it.

We can agree that the driver-facing camera would help deter misconduct like using a cell phone while driving, correct?

A.  Yes.

Q.  Or -- and we talked about, you know, other forms of distracted driving.  You know, watching a movie while you're driving, correct?

A.  Right.

Q.  Or, you know, eating while driving, correct?

A.  Yes.

Q.  Okay.  So I guess we know that a

Page 76

www.veritext.com          Veritext Legal Solutions          800-556-8974

driver-facing camera might help deter distracted driving?

MS. WHITE:  What was that word before, something driving, Mr. Henshaw?  I didn't hear it.

MR. HENSHAW:  Distracted driving.

MS. WHITE:  Thank you.

BY MR. HENSHAW:

Q.  We know that, don't we?

A.  It could potentially.  Yes.

Q.  Okay.  I'll mark this document as Exhibit 5.

(Exhibit Number 5 was marked for identification.)

And Exhibit 5 just for your sake is 409 through 422.

MS. WHITE:  It's the whole thing?

MR. HENSHAW:  Yes.  Particularly the page we were looking at was --

MS. WHITE:  Will you go ahead and make it 408?  Because that's the first -- that's the start of it, right?

MR. HENSHAW:  Yes.  408 through 422.  Did I say 409?  I'm sorry.  I meant 408.  It's 408 through 422.  And the page we were looking at was I guess

www.veritext.com          Veritext Legal Solutions          800-556-8974

414.

MS. WHITE:  Yes.

MR. HENSHAW:  Yeah.  It's 414.  Okay.

BY MR. HENSHAW:

Q.   So, now let's move forward in time to March of 2023.  The incident with my clients happens, correct?

A.   Yes.

Q.   And Mr. Wortham reports the incident to the company, correct?

A.   Yes.

Q.   Mr. Wortham tells the company that Mr. Bolivar and Ms. Angelica, that their car came into his lane, correct?

A.   Yes.

Q.   That was not true?

A.   Correct.

MS. WHITE:  Object to the form.

BY MR. HENSHAW:

Q.   So when he reported that that is what happened he violated company policy for a fifth time, correct?

MS. WHITE:  Object to the form.

THE WITNESS:  I wouldn't say so.  Accidents

www.veritext.com          Veritext Legal Solutions          800-556-8974

happen in a split of a second, so he might have misjudged what happened at that time.

BY MR. HENSHAW:

Q.   Okay.  So did anyone ask Mr. Wortham why he reported that the driver came into his lane when that wasn't true?

A.   I believe he did discuss with Jacob Clary when he --

Q.   And what did he tell Mr. Clary?

A.   Well, I believe Jacob Clary showed him the video of how everything happened exactly and driver acknowledged that he ended up hitting the car.

Q.   Okay.  But specifically what he wrote down and said in a text to the company was that the other car came into his lane, correct?

A.   Right.

Q.   Now, did the company -- the company didn't need to go back and explore this in light of the August, 2022, violations, correct?

A.   I wouldn't say these things are relevant.

Q.   Okay.  It's the company's position that him reporting this incident in March and the August, 2022, incidents had nothing to do with each other?

A.   I believe so, yes.

www.veritext.com          Veritext Legal Solutions          800-556-8974

Q. Okay. Is it true that if we didn't have the camera showing what happened with respect to the March 1st of 2023 incident, that no one may have ever discovered that Mr. Wortham's text about what happened was not accurate?

MS. WHITE: Object to the form.

THE WITNESS: I'm not sure I understand the question.

BY MR. HENSHAW:

Q. Sure. The only reason that we sit here today, the company acknowledges that Mr. Bolivar did not come into Mr. Wortham's lane is because the clearly shows otherwise; is that correct?

MS. WHITE: Object to the form.

THE WITNESS: Was not, not only because -- well, yes. The video slows that.

BY MR. HENSHAW:

Q. Mr. Wortham never had a change of heart and volunteered that he was incorrect about that?

A. No, he did. He did.

Q. After --

A. After he saw the video, yes. I mean that's why he completed all this coaching and training and he signed the documents.

Page 80

Case 1:24-cv-00155-TRM-MJD   Document 102-8   Filed 01/19/26   Page 80 of 153
PageID #: 2417

Q. And similarly, he didn't tell the company about these four prior incidents in 2022 until somebody else discovered it and it was brought to his attention, correct?

A. I -- I don't think you're comparing these two incidents -- I don't see how these are relevant.

Q. Okay. As of March of 2023, Mr. Wortham had now had five prior -- five preventable incidents, correct?

A. Correct.

MS. WHITE: Object to the form.

BY MR. HENSHAW:

Q. And he was retained?

A. Yes.

Q. Okay. Was there any discussion about how much more would be tolerated from Mr. Wortham?

A. Well, he was written up for -- for minor incidents, so as part of company policy he was still within -- within the retention criteria.

Q. Within the what?

A. The retention criteria.

Q. Okay. What's the retention criteria?

A. I believe at the time of that incident the policy was no more than five preventable incidents.

Page 81

Case 1:24-cv-00155-TRM-MJD    Document 102-8    Filed 01/19/26    Page 81 of 153
PageID #: 2418

Q. Over how much time?

A. Over two years.

Q. Was Mr. Wortham given a final warning after the March 1st, 2023, incident?

A. No. I don't think it was final warning.

Q. Where is the retention policy located?

A. I would have thought in the driver policy manual. I might be wrong.

Q. You say in the driver -- the driver manual?

A. Let me check.

Q. Sure. That's fine.

A. I don't have HMD number. It's Page 7 on the driver policy manual. I think the policy later on in the year so this one does not say the five -- the amount of incidents.

Q. Okay. What does it say specifically about retention?

A. It doesn't say about retention. It just talks about consequences for being involved in preventable incidents.

Q. What does it say?

A. It says that any preventable incident will result in the following consequences. Minor incident notice, performance improvement plan, that

Page 82

www.veritext.com          Veritext Legal Solutions          800-556-8974

incidents will be kept in driver file for two years. That has been --

THE COURT REPORTER: I'm sorry; I'm missing your answer. Could you slow down and start from "performance improvement plan?"

THE WITNESS: Sure. Right. It also says, preventable incidents will be kept in the driver file for two years. Independent contractors will be financially responsible in addition to receiving a performance improvement plan.

BY MR. HENSHAW:

Q. After any of the five incidents was Mr. Wortham placed on a performance improvement plan?

A. Yes. That's documented with the compliance review.

Q. And that was done after this crash in March of 2023?

A. Yes.

Q. Does HMD have a policy in performing drug and alcohol tests?

A. Yes.

Q. What is that policy?

A. That's a very broad question.

Page 83

Case 1:24-cv-00155-TRM-MJD   Document 102-8   Filed 01/19/26   Page 83 of 153
PageID #: 2420

Q. Let me ask you this: Do you have a policy of performing drug and alcohol screenings after preventable incidents?

A. Yes.

Q. Would you agree with me that no drug or alcohol screening was performed after the April, 2022, incident?

A. Correct.

Q. And that was because Mr. Wortham did not report it, correct?

A. No. I mean the drug and alcohol testing would not be required for those incidents.

Q. Okay. But they were determined to be preventable, correct?

A. Correct. But that's not our policy. The policy is we follow DOT guidelines and the driver needs to be tested only after a DOT reportable accident.

Q. Okay.

A. If -- if a driver gets a citation issued or warning if there is a fatality.

Q. How do you know that Mr. Wortham didn't receive a citation after the April, 2022, incident?

A. Well, he didn't say he received a citation,

Page 84

Case 1:24-cv-00155-TRM-MJD    Document 102-8    Filed 01/19/26    Page 84 of 153
PageID #: 2421

and also we do annual checks that would show if he was issued a citation or not.

Q. Okay. Isn't it true that you really don't now what happened in April of 2022 or whether he should have been issued a citation because he didn't report it to anybody?

A. I mean I'm not law enforcement. I cannot speak in terms of issuing a citation. What he reported was a minor equipment damage, so the truck wasn't towed. There was no other party involved. That was not even be considered as a DOT reportable accident.

Q. If that's what happened?

A. Well, that's what the driver says happened.

Q. He also said that after March of -- on March 1st of 2023 that Mr. Bolivar came into his lane, didn't he?

A. That's what the driver initially thought that happened.

Q. And that wasn't true?

A. Correct.

Q. So how do you know that what he said happened in April of 2022 was true?

A. Well, that's what the driver told us.

www.veritext.com          Veritext Legal Solutions          800-556-8974

That's what we know.

Q. Okay. And yet your policy also states that you are to report all incidents specifically to avoid this type of situation where if something comes up later and you really don't know what happened, correct?

MS. WHITE: Object to the form.

THE WITNESS: I don't think that's how our policy is worded.

BY MR. HENSHAW:

Q. Okay. Isn't it your policy to report all incidents regardless of severity?

A. Correct.

Q. Okay. If the company had accepted Mr. Wortham's version of events then it would have accepted a version of events that is not true without the camera, correct?

MS. WHITE: Object to the form.

THE WITNESS: Can you rephrase?

BY MR. HENSHAW:

Q. Sure. If the company had accepted Mr. Wortham's version of events about March 1st, 2023, then it would have accepted a version that was not true, correct?

Page 86

Case 1:24-cv-00155-TRM-MJD    Document 102-8    Filed 01/19/26    Page 86 of 153
PageID #: 2423

MS. WHITE:  Object to the form.

THE WITNESS:  Not necessarily.

BY MR. HENSHAW:

Q.  Okay.  Well, Mr. Wortham reported that the other car came into his lane, correct?

A.  Yes.

Q.  And if the company had accepted that, then they would have accepted something that wasn't true, correct?

MS. WHITE:  Object to the form.

THE WITNESS:  Well, not necessarily.  He would still have completed accident investigation with the police report, what it said there.

BY MR. HENSHAW:

Q.  Did the company, after the April, 2022, incident, did the company check to see whether there was any law enforcement reports?

A.  Law enforcement reports, what do you mean by that?

Q.  With regard to the April, 2022, incident?

A.  No.

Q.  Do you know whether any were made?

A.  No.  I mean it was equipment damage.  I'm not sure why would it be reported with police.

Q. Can we agree that in April, 2022, that it's possible that something else entirely happened different from what Mr. Wortham reported when he was caught?

MS. WHITE: Object to the form. Calls for speculation.

THE WITNESS: I don't have knowledge of that.

BY MR. HENSHAW:

Q. Can we agree that something else being -- other than what he reported is possible?

MS. WHITE: Object to the form.

THE WITNESS: I don't -- I don't think I can agree on that, no.

BY MR. HENSHAW:

Q. Okay. Why is it that the company is willing to accept Mr. Wortham's word on April of 2022 incidents when he was demonstrated to be inaccurate with regard to other incidents?

MS. WHITE: Object to the form.

THE WITNESS: I think those incidents, I mean if we're talking about equipment damages, equipment damages are equipment damages.

Now, the March 1st incident, it was a lane

change incident. And the car was in driver's blind spot. So like I said, accidents happen in the split of a second.

BY MR. HENSHAW:

Q. In April of 2022 Mr. Wortham had his second incident and he was not drug or alcohol tested, correct?

MS. WHITE: I'll object to form.

MR. HENSHAW: Sorry. In --

MS. WHITE: What was it you said?

BY MR. HENSHAW:

Q. My bad.

In June of 2022 Mr. Wortham was not drug tested following his second preventable incident, correct.

A. Correct.

MS. WHITE: Object to the form. Go ahead.

BY MR. HENSHAW:

Q. Aside from Mr. Wortham's report in August, the company really doesn't have any other information about what happened in June of 2022, correct?

MS. WHITE: Object to the form.

THE WITNESS: Well, we do have driver's

www.veritext.com          Veritext Legal Solutions          800-556-8974

statement of what happened.

BY MR. HENSHAW:

Q. And aside from that, nothing else, correct?

MS. WHITE: Object to the form.

THE WITNESS: Right.

BY MR. HENSHAW:

Q. And in July of 2022, after Mr. Wortham's third preventable incident, he was not drug or alcohol tested, correct?

A. Correct.

Q. And again, regarding that third preventable incident, the only information the company has is what Mr. Wortham reported in August?

MS. WHITE: Object to the form.

THE WITNESS: Right.

BY MR. HENSHAW:

Q. There is no law enforcement -- there is no police report or any other statements?

A. Correct.

Q. Did you even know the name of the other driver that hit him?

A. No, I do not.

Q. How do you know that that other driver who allegedly hit Mr. Wortham wasn't, in fact,

Page 90

Case 1:24-cv-00155-TRM-MJD   Document 102-8   Filed 01/19/26   Page 90 of 153
PageID #: 2427

Mr. Wortham's victim?

MS. WHITE:  Object to the form.

THE WITNESS:  Well, because Mr. Wortham said that he got -- he got hit.

BY MR. HENSHAW:

Q.  And Mr. Wortham also said he got hit in March of 2023, didn't he?

A.  But these are two completely different accidents.  So I don't see how that's relevant.

Q.  Why is it that the company won't acknowledge that Mr. Wortham has a history of not being truthful?

MS. WHITE:  Object to the form of the question.

THE WITNESS:  I don't think that's what it is.  Like I said, he misunderstood the reporting obligations because he was an owner operator, a lease operator.

BY MR. HENSHAW:

Q.  Even though the policy was clear?

A.  Even though the policy clear, yeah.

Q.  In July of 2022 after his fourth preventable incident he was not drug or alcohol tested, correct?

Page 91

A.    Correct.

Q.    And that's again because he -- well, let me back up.

And again, aside from what Mr. Wortham told you about that incident, you have no other information?

A.    Correct.

Q.    Now, in March of 2023, Mr. Wortham, was he drug or alcohol tested?

A.    No.

Q.    And that was because he did not receive a citation?

A.    Correct.  And the accident was not DOT reportable.

Q.    Why was it not DOT reportable?

A.    Because the only DOT reportable accidents are when there is towing, when there sustained damage to either vehicle, when there is immediate treatment away from the scene, or if there is fatality and driver gets a ticket issued.

Q.    Okay.  Can we agree that Mr. Wortham did not receive a citation because the officers' investigation stated that there were conflicting statements given?

www.veritext.com          Veritext Legal Solutions          800-556-8974

A. I cannot speak to -- for law enforcement.

Q. You reviewed the police report and saw that the police officer stated that conflicting statements were given about what happened, correct?

A. Correct.

Q. Okay. After reviewing the video footage and saying that Mr. Wortham actually caused this crash he claimed the other driver caused, was he drug tested?

A. No. Because this accident was not DOT reportable accident.

Q. Had there been any other issues with Mr. Wortham's employment subsequent to the March, 2023, incident --

MS. WHITE: Object to the form.

BY MR. HENSHAW:

Q. -- with my clients?

A. Not that I can think of it off the top of my head.

Q. Okay. I have been provided that he received training in July of 2023. Do you know why he received training in July of 2023?

A. Can you show that document to me?

Q. Sure. Yeah. We reviewed it earlier, but

Page 93

I'm happy to pull it up.

MS. WHITE:  Tim, we've been going for about another hour again.  When we're at a good stopping point I would like to take a break if you don't mind.

MR. HENSHAW:  Yeah.

MS. WHITE:  Sorry.

MR. HENSHAW:  No, that's okay.

MS. WHITE:  Do you want to do it now or do you want to show her the document?

(Document shown.)

THE WITNESS:  Uh-huh.

BY MR. HENSHAW:

Q.   Do you know what prompted him to receive this training on defensive driving?

A.   I can't think of it right now, no.  I don't recall.

Q.   Do you know what prompted him to receive training on proper weight distribution?

A.   This one probably had to do with an over-weight that the driver received.

Q.   Okay.  So what happened there?

A.   Well, it's a weight distribution issue. Sometimes the way that drivers get loaded and

shippers, they don't load them right, and as driver passes through a weigh station they might get a warning for improper load distribution.

MR. HENSHAW: All right. Let's take a break and then I will be close to finished.

THE VIDEOGRAPHER: Please stand by. We are going off record at 3:27 p.m.

(There was a discussion held off the record.)

THE VIDEOGRAPHER: We are back on record at p.m.                                                    3:35

We will proceed.

BY MR. HENSHAW:

Q. All right. So, getting into some clean-up things. Did the company -- does the company acknowledge receiving a request to preserve evidence on or about March 17th of 2023 related to this crash?

A. What was the question? Did we receive a request?

Q. Uh-huh.

A. Yes.

Q. Yes? I'm going to share with you a document. Is this the -- have you seen this before?

www.veritext.com          Veritext Legal Solutions          800-556-8974

A. No. I wasn't -- I wasn't handling claims at the time.

Q. Okay. Does the company have this document in its files?

A. I haven't seen this document.

Q. Okay. Hold on one sec.

Does the company know what happened with the request to preserve evidence or whether that -- a copy of that request was kept?

MS. WHITE: Object to the form. She can answer in her personal knowledge.

I don't recall the preservation letter being part of the (30)(b)(6) notice, but to the extent to her personal knowledge she knows, she can go ahead and answer.

THE WITNESS: I -- I don't -- I don't have answer to that question. I've never seen the document.

BY MR. HENSHAW:

Q. I'm going to share with you another document.

Have you ever seen this, ma'am?

A. I don't believe so.

Q. Okay. You don't know or the company

www.veritext.com          Veritext Legal Solutions          800-556-8974

doesn't know anything about this at least you're not prepared to talk about it today?

MS. WHITE: I'll respond that that would be correct, Mr. Henshaw.

MR. HENSHAW: We'll mark it for identification purposes.

(Exhibits 6 and 7 were identified for the record.)

MS. WHITE: Both of them?

MR. HENSHAW: Yes. Let's do this --

MS. WHITE: Are you marking them separately or both? I just see Exhibit 6.

(Exhibits 6 and 7 were marked for identification.)

MR. HENSHAW: Six and seven.

BY MR. HENSHAW:

Q. Does the company view failing to report accidents as a serious safety violation?

MS. WHITE: Object to form.

THE WITNESS: What -- what was that again?

BY MR. HENSHAW:

Q. Does the company view failing to report accidents as a serious safety violation?

A. I wouldn't necessarily call it that way, a

www.veritext.com          Veritext Legal Solutions          800-556-8974

serious violation, no.

Q. Why not?

A. Well, there could be a misunderstanding with the driver. Or there could be mis-communication.

Q. Would you agree that if a driver fails to report an accident, that means management did not get a chance to investigate it?

A. Not always.

Q. Okay. Explain that.

A. So in Mr. Wortham's case of the incidents he had to investigate them. We called the driver. He had a chance to let us know what happened. And that's part of our investigation process.

Q. Can we agree that as to the four prior unreported incidents, that the company's only information is what Mr. Wortham reported?

MS. WHITE: Object to the form. Asked and answered.

THE WITNESS: I -- I would say I think Mr. Clary was because he conducted that investigation, sat down with the driver, asked all the right questions and got them.

BY MR. HENSHAW:

Page 98

Case 1:24-cv-00155-TRM-MJD   Document 102-8   Filed 01/19/26   Page 98 of 153
PageID #: 2435

Q. Do you know why Mr. Clary failed to get the name of the other driver who backed into Mr. Wortham's truck?

MS. WHITE: Object to form.

THE WITNESS: I do not know that.

BY MR. HENSHAW:

Q. Would you agree that failing to investigate means that the company does not know whether the driver was at fault?

A. No, I would not agree on that.

Q. Would you agree that a driver who hides accidents is not being truthful?

A. What was that again?

Q. Would you agree that a driver who hides accidents is not being truthful?

A. I'm not sure if maybe I understand the question. In this scenario? In Mr. Wortham's scenario?

Q. In any scenario.

A. Again, I would not say that if a driver does not a report an incident, it doesn't necessarily mean that he's not being truthful or lying.

Q. Would you agree that 100 percent of the

www.veritext.com          Veritext Legal Solutions          800-556-8974

time that a driver who doesn't report an accident is violating company policy?

A. That is true. A driver is not reporting an incident, that's a violation of company policy.

Q. Would you agree that a driver who hides accidents four times has a pattern of dishonesty?

A. What was the second part of your question?

Q. Would you agree that a driver who hides accidents four times has a pattern of dishonesty?

A. I do not agree with that, no.

Q. Would you agree that a driver with the pattern of dishonesty cannot be trusted to accurately report how an accident happened?

A. No, I don't believe so.

Q. Given that Mr. Wortham had a documented history of failing to report incidents accurately, why should anyone believe he said -- anything he ever says?

MS. WHITE: Object to the form. Misstates prior testimony. Go ahead.

THE WITNESS: I can not answer to what -- as to what or could or should everybody believe about that.

BY MR. HENSHAW:

Page 100

Case 1:24-cv-00155-TRM-MJD   Document 102-8   Filed 01/19/26   Page 100 of 153
PageID #: 2437

Q. Given that Mr. Wortham has a documented history of failing to report incidents accurately, why does HMD choose to believe anything that he says?

A. Well, we did investigate those incidents. We sat down with the driver. We completed coaching and training with the driver, and driver did not show these behaviors again.

Q. Do you agree that Mr. Wortham's repeated failure to report incidents should have been a red flag for HMD Trucking?

A. No, I don't think so. Not always.

Q. What steps did HMD Trucking take to monitor Mr. Wortham more closely after he repeatedly failed to report accidents?

MS. WHITE: Object to the form of the question.

THE WITNESS: We do not have such policy where we need to monitor drivers more closely. We follow our standard policies and procedures.

BY MR. HENSHAW:

Q. Even when they document a history of failing to report accidents?

A. The same policies would apply.

Page 101

Q. Why doesn't the company apply more close supervision to drivers who repeatedly fail to report accidents?

MS. WHITE: Object to the form.

THE WITNESS: I mean that's -- that's our policy.

BY MR. HENSHAW:

Q. Why is that your policy?

A. Well, these are the sets of rules that we do follow. So we follow that same policy.

Q. Would you agree with me that you could have required Mr. Wortham to turn on his camera as one measure to monitor him more closely after he repeatedly failed to report accidents?

A. I would not necessarily agree with that, no, because those incidents, I'm not sure how camera would have helped with having those incidents in the first place.

Q. How many miles did Antonio Wortham drive for HMD Trucking in the year leading up to this crash?

A. I don't have that number.

Q. How much revenue did he generate for the company?

www.veritext.com          Veritext Legal Solutions          800-556-8974

A. I don't have the number, sir.

Q. Do would you agree that the more miles the driver logs, the more money the company makes?

A. Not necessarily.

Q. How does HMD Trucking monitor whether its most productive drivers are also its most dangerous drivers?

MS. WHITE: Object to the form.

THE WITNESS: I -- I don't think it's relevant. I'm not sure how we would even measure that.

BY MR. HENSHAW:

Q. Because you do not require your drivers to at least turn on the driver-facing camera, correct?

A. We leave it to up to the drivers to decide, yes.

Q. Does HMD look the other way when a driver generates significant revenue and they have a history of safety violations?

A. What was that again?

Q. Does HMD look the other way on safety violations if the driver is generating significant revenue?

A. No.

www.veritext.com          Veritext Legal Solutions          800-556-8974

Q. Was there ever a discussion at HMD that disciplining Antonio Wortham might jeopardize his ability to drive and reduce company profits?

A. I'm not aware of such discussions.

Q. Has the company ever fired a driver for failing to report accidents?

A. Not that I can remember right now off the top of my head.

Q. HMD Trucking has never terminated a driver for failing to report damage?

MS. WHITE: I'll object to the form of the question.

THE WITNESS: I don't remember, sir.

BY MR. HENSHAW:

Q. How many other drivers has your company allowed to continue operating even after multiple company policy violations?

MS. WHITE: Object to the form of the question.

THE WITNESS: I don't have that number.

BY MR. HENSHAW:

Q. Did the company institute any more close supervision after Mr. Wortham's March 1st, 2023, incident?

A. No. We follow the same procedures and policies.

Q. Sitting here today, HMD wants to tell a jury that it had no reason to question Mr. Wortham's truthfulness and his propensity for telling the truth?

A. Can you rephrase the question?

Q. Sitting here today HMD wants to tell a jury that it has no reason to question Mr. Wortham's honesty?

MS. WHITE: Object to the form.

THE WITNESS: I -- I would say so.

BY MR. HENSHAW:

Q. Would you agree that allowing a driver with a documented history of hiding the truth to continue driving without oversight is reckless?

MS. WHITE: Object to the form.

THE WITNESS: No.

BY MR. HENSHAW:

Q. If a driver who generates significant revenue for the company repeatedly fails to report accidents, lies about a crash, and causes harm, does HMD Trucking take responsibility to that?

MS. WHITE: Objection to the form of the

Page 105

Case 1:24-cv-00155-TRM-MJD   Document 102-8   Filed 01/19/26   Page 105 of 153
PageID #: 2442

question.

THE WITNESS:  Can you repeat the question?

BY MR. HENSHAW:

Q.  If a driver who generates significant revenue for the company repeatedly fails to report accidents, lies about a crash, and causes harm, does HMD Trucking take responsibility?

A.  I'm not sure how drivers and accidents and profit has -- how is that relevant.

Q.  That's a no?

MS. WHITE:  Object to the form.  She can answer in a way that she sees fit.

THE WITNESS:  I -- I don't have the answer to that question.  I don't think it's relevant.  I don't --

BY MR. HENSHAW:

Q.  I understand that you don't think it's relevant but can you answer the question anyways?

MS. WHITE:  She did.

THE WITNESS:  I think I did answer.

BY MR. HENSHAW:

Q.  What's your answer, just to be clear for the record?

A.  That I don't think profit and incidents

www.veritext.com          Veritext Legal Solutions          800-556-8974

and -- it's relevant.

Q. The question wasn't about profit. The question was responsibility.

A. Right. But prior to the question has to do with the profits of the company.

Q. Does HMD Trucking take responsibility for Mr. Wortham's actions?

A. As a whole or this particular incident?

Q. As a whole.

A. I don't think we can, as a company, we can take responsibility of Mr. Wortham's actions entirely.

Q. Did HMD Trucking maintain logs of Antonio Wortham's hours of service?

A. Yes.

Q. Did they audit those logs?

A. Yes.

Q. Was there any compliance issues with the logs?

A. No.

Q. Has HMD Trucking ever found Antonio Wortham in violation of hours of service regulations?

A. No, I don't believe so.

Q. Mr. Wortham testified that he had to stop

www.veritext.com          Veritext Legal Solutions          800-556-8974

driving after he was leaving the scene because he was out of hours. Is the company aware of that?

A. Correct. Yes.

Q. How do you explain that?

A. Explain what exactly?

Q. His testimony that he was out of hours while driving?

A. Well, he said after the incident he was out of hours.

Q. So help me -- I'm not -- let me understand a little better. He ran out of hours after the incident?

A. Correct.

Q. Okay. Not before?

A. Right.

Q. Okay. How long after the incident did he run out of time?

A. I would need to look at that day's logbook to be exact.

Q. Okay. Feel free.

A. So it looks like his clock was over at 7:00 p.m. Central Time.

Q. He was out of time at what time?

A. 7:15, approximately.

www.veritext.com          Veritext Legal Solutions          800-556-8974

Q. Aside from the safety score and videos, does Netradyne give the company access to any other data that's relevant to the driver's safety?

A. Well, no. There is videos and then there is drivers' scores.

Q. Is there any other information like the Netradyne data that HMD didn't preserve because it didn't think it was relevant?

MS. WHITE: Object to the form.

THE WITNESS: Not that I'm aware of, no.

BY MR. HENSHAW:

Q. I just have one thing and I think I'm done.

Is the company aware that this incident was reported to law enforcement at 7:13 p.m.?

MS. WHITE: Object to the form. Misleading.

THE WITNESS: Reported by who?

BY MR. HENSHAW:

Q. Have you ever -- did you review the police report?

A. Yes.

Q. Okay. The time of the crash noted on the police report is approximately 7:13 p.m., correct?

A. Correct.

Page 109

Case 1:24-cv-00155-TRM-MJD   Document 102-8   Filed 01/19/26   Page 109 of 153
PageID #: 2446

MS. WHITE: What's the time on there, Mr. Henshaw?

BY MR. HENSHAW:

Q. The -- okay. So just so I understand, this crash was, according to the police report, reported at 7:13 p.m. in Marion County, Tennessee, correct?

A. Correct. That's the time of the crash. Uh-huh.

Q. All right. And you're sort of anticipating my question, which is Mr. Wortham was set to run out of hours in approximately two minutes, if that's the time of the crash, correct?

A. Well, the report, it's in Eastern Time, and we run our logbooks in Central Time.

Q. Right. Right. So the -- just to be clear, he was going to run out of time at 7:15 Central Time, correct?

A. Correct.

Q. Okay. But the company doesn't find it concerning that he was still driving a few minutes before that because this -- it's your belief that this reflects a crash which actually occurred at ?                                                      8:15

A. No. 6:15.

www.veritext.com          Veritext Legal Solutions          800-556-8974

Q. 6:15?

A. Correct.

Q. 6:15 Central Time?

A. Yes.

MR. HENSHAW: Okay. All right. Thank you for putting up with me and my longwinded-ness. That's all I have.

MS. WHITE: I just need to clear up a couple of things real quick on -- real quick.

EXAMINATION

BY MS. WHITE:

Q. Exhibit 5 is marked as the Driver Policy Manual. Several questions had been asked about this Driver Policy Manual. Give me one second and I'm sure I can pull that up.

Let me show you -- okay. Are you able to see the Driver Policy Manual that I've pulled up, Fausta?

A. Uh-huh. Yes.

Q. Questions were asked as to when this was provided to Mr. Wortham, and I think the exact question was: Was this the manual that was provided to Mr. Wortham? Do you recall that line of questioning?

www.veritext.com          Veritext Legal Solutions          800-556-8974

A. Yes.

Q. Okay. And our office produced and admittedly we put the date stamp number in a very bad place. And I want to make sure. Can you see the actual date of this Driver Policy Manual?

A. No, I can't see it. I just see 2022.

Q. Okay. If I can see that it says, revised September of 2022, would you agree that that could potentially be -- that that could be what it says?

A. Correct. Yes.

Q. Okay. So, if in fact that says, revised September, 2022, that might not be the exact policy that was given to Mr. Wortham at the date of his hire the year prior; would that be accurate?

A. Yes.

Q. Okay. But you would agree that this would be the Driver Policy Manual in effect at the time of the incident that we're here about which was March 1st, 2023?

A. Correct.

Q. Okay. I wanted to make sure we got that cleared up. Thank you.

And let me ask this question because several questions were asked: As it relates to this

www.veritext.com          Veritext Legal Solutions          800-556-8974

incident that we're here about today that occurred on March 1st of 2023, HMD has taken responsibility for it and Mr. Wortham's actions in it, haven't they?

A. Yes.

Q. Okay. And a lot of talk has occurred about Mr. Wortham's credibility over the past couple of hours. But for this particular incident and given that we've got the Netradyne videos, HMD could set Mr. Wortham's statements to the company about how it occurred aside, but that they can look at the video and investigate the incident separate and apart from what Mr. Wortham told them or from what Mr. Bolivar told them, correct?

A. Yes.

MR. HENSHAW: Objection, leading.

BY MS. WHITE:

Q. Okay. So is Mr. Wortham's credibility necessary for HMD to investigate the incident that occurred on March 1st of 2023?

A. What was the question again?

Q. Was Mr. Wortham's creditability material to HMD's investigation of the incident occurring on March 1st of 2023?

www.veritext.com          Veritext Legal Solutions          800-556-8974

A. Correct.

Q. It wasn't needed, was it?

A. No.

MS. WHITE: Okay. And those are all the questions I have.

MR. HENSHAW: I have a couple of followups.

FURTHER EXAMINATION

BY MR. HENSHAW:

Q. Just to be clear, the company's testimony is not changing; that policy that we've spent all this time going over may have been revised in September of 2022, but it was the same policy Mr. Wortham was given when he was hired, correct?

A. I would need to see -- in terms of incident reporting, yes, it would be the same, the same policy.

Q. Well, you wouldn't have produced a driver's manual to me that he wasn't given, correct?

A. Correct.

Q. Have -- is there an older version that you -- did you bring an older version or produce an older version that indicates that the policy was different?

MS. WHITE: As it relates to the reporting

Page 114

Case 1:24-cv-00155-TRM-MJD   Document 102-8   Filed 01/19/26   Page 114 of 153
PageID #: 2451

of incident, Mr. Henshaw?

MR. HENSHAW:  Yes.

MS. WHITE:  I just want -- okay.  Go ahead, Fausta.

THE WITNESS:  There were previous policy manuals that had the same reporting policy, yes.

BY MR. HENSHAW:

Q.   All right.  Thank you.

Mr. Wortham's credibility was necessary in order to keep him employed as a driver for HMD between November of 2021 and March of 2023, correct?

A.   What's the question again?

Q.   Mr. Wortham's credibility was necessary in order to keep him employed as a driver between November of 2021 and March of 2023, correct?

A.   I would say yes.  I mean --

Q.   And it's been necessary to keep him employed since March 1st of 2023, correct?

A.   It's been necessary?

Q.   Uh-huh.

A.   What do you mean by that?

Q.   His credibility has been necessary to keep him employed, correct?

A.   Well, yes.  As long as with other things

www.veritext.com          Veritext Legal Solutions          800-556-8974

like his driving record, clean driving record, all of the ratings that he did, yes.

MR. HENSHAW:  All right.  Thank you.  Nothing further.

THE WITNESS:  You're welcome.

MR. HENSHAW:  And by the way, you have been very nice today.  I'm sorry to have met you under these circumstances.  Nobody ever calls me when fun

things are happening.

THE VIDEOGRAPHER:  Counsel, please stand by

and stay on line.

We are going off record at 4:06 p.m.  This

concludes today's testimony.  Media will be retained

by Veritext Legal Solutions.

Thank you all.

(Deposition concluded at 4:06 p.m.)

Page 116

Case 1:24-cv-00155-TRM-MJD    Document 102-8    Filed 01/19/26    Page 116 of 153
PageID #: 2453

CERTIFICATE

I, Jeanine Watkins, Certified Shorthand Reporter for the State of Illinois, a do hereby certify:

That previous to the commencement of the examination of the witness, FAUSTA MIKNIUTE, was first duly sworn to testify to the whole truth concerning the matters herein;

That the foregoing deposition transcript was reported stenographically by me and was thereafter reduced to typewriting via computer-aided transcription under my personal direction, and constitutes a true record of the testimony given and the proceedings had;

That the said deposition as taken before me at the time and place specified;

That the reading and signing by the witness of the deposition transcript was reserved;

That I am not a relative or employee of attorney or counsel, nor a relative or employee of such attorney or counsel for any of the parties hereto, not interested directly or indirectly in the outcome of this action.

www.veritext.com          Veritext Legal Solutions          800-556-8974

IN WITNESS WHEREOF, I do hereunto set my

hand and affix my seal of office at Chicago,

Illinois, this March 24, 2025.


_____

Jeanine Watkins, C.S.R.

License No. 084-001629

www.veritext.com          Veritext Legal Solutions          800-556-8974

Mary Beth White

mbwhite@lewisthomason.com

March 24, 2025

RE:   Bolivar, Radha Et Al.  v. HMD Trucking, Inc. Et Al.

3/10/2025, HMD Trucking Inc. (#7216004)

The above-referenced transcript is available for review.

Within the applicable timeframe, the witness should read the testimony to verify its accuracy. If there are any changes, the witness should note those with the reason, on the attached Errata Sheet.

The witness should sign the Acknowledgment of Deponent and Errata and return to the deposing attorney. Copies should be sent to all counsel, and to Veritext at errata-tx@veritext.com.

Return completed errata within 30 days from receipt of testimony.

If the witness fails to do so within the time allotted, the transcript may be used as if signed.

Yours,

Veritext Legal Solutions

www.veritext.com          Veritext Legal Solutions          800-556-8974

Bolivar, Radha Et Al.  v. HMD Trucking, Inc. Et Al.

HMD Trucking Inc. (#7216004)

E R R A T A   S H E E T

PAGE_____ LINE_____ CHANGE_____

_____

REASON_____

PAGE_____ LINE_____ CHANGE_____

_____

REASON_____

PAGE_____ LINE_____ CHANGE_____

_____

REASON_____

PAGE_____ LINE_____ CHANGE_____

_____

REASON_____

PAGE_____ LINE_____ CHANGE_____

_____

REASON_____

PAGE_____ LINE_____ CHANGE_____

_____

REASON_____

_____    _____

HMD Trucking Inc.                                        Date

www.veritext.com          Veritext Legal Solutions          800-556-8974

Bolivar, Radha Et Al.  v. HMD Trucking, Inc. Et Al.

HMD Trucking Inc. (#7216004)

ACKNOWLEDGEMENT OF DEPONENT

I, HMD Trucking Inc., do hereby declare that I have read the foregoing transcript, I have made any corrections, additions, or changes I deemed necessary as noted above to be appended hereto, and that the same is a true, correct and complete transcript of the testimony given by me.

_____    _____

HMD Trucking Inc.                          Date

*If notary is required

SUBSCRIBED AND SWORN TO BEFORE ME THIS

_____ DAY OF _____, 20___.

_____

NOTARY PUBLIC

Page 121

Case 1:24-cv-00155-TRM-MJD    Document 102-8    Filed 01/19/26    Page 121 of 153
PageID #: 2458

**[00155 - 6]**

| 0 |
| --- |
| **00155** 1:5 4:10 |
| **084-001629** 118:15 |

| 1 |
| --- |
| **1** 3:16 19:18 20:4,6,11,14 66:17 |
| **10** 1:20 59:4 |
| **100** 99:24 |
| **10031** 2:22 |
| **102** 2:4 |
| **10th** 4:3 58:14 |
| **11** 51:21 |
| **11-3-2021** 42:4 |
| **111** 3:8 |
| **114** 3:7 |
| **11509** 118:10 |
| **11th** 19:15 |
| **123** 59:3 67:4 |
| **14** 51:22 |
| **15th** 38:23 |
| **1604** 2:3 |
| **17th** 95:17 |
| **18th** 10:22 11:2 |
| **198615** 2:13 |
| **1:00** 1:22 |
| **1:02** 4:2 |
| **1:24** 1:5 4:10 |
| **1st** 8:6 13:1 14:14 22:23 23:14 24:23 26:4,14 28:7 |

32:8 36:8 64:4 80:3 82:4 85:16 86:22 88:24 104:23 112:19 113:2 113:20,24 115:18

| 2 |
| --- |
| **2** 3:17 41:3,4 66:17 |
| **20** 3:16 26:13 31:14 121:15 |
| **2018** 33:10 55:12 |
| **2021** 10:22 11:2 16:11 18:19,21 19:6 19:18 22:23 26:4,14 36:5 38:24 42:22 115:11,15 |
| **2022** 58:13 59:4,16 60:3 60:11,24 61:2 62:8 63:21 67:1 79:19,23 81:2 84:7,23 85:4,23 87:15 87:20 88:1,18 89:5,13,21 90:7 91:22 112:6,8,12 114:12 |

| 2023 | 8:6 13:2 |
| --- | --- |
| 14:14 19:7,8 19:10,14,15,19 22:24 24:13,21 26:5,14 28:7 30:13 32:8 35:1 36:5,8 63:14,22 64:4 78:6 80:3 81:7 82:4 83:18 85:16 86:23 91:7 92:8 93:14,21,22 95:17 104:23 112:19 113:2 113:20,24 115:11,15,18 |
| **2025** 1:20 4:3 118:5 119:3 |
| **23i** 12:24 |
| **24** 118:5 119:3 |
| **2500** 2:12 |
| **279** 37:3 41:8 |
| **281** 39:22 |
| **282** 41:8 |
| **283** 37:3 41:11 |
| **2:11** 50:12 |

| 3 |
| --- |
| **3** 3:18 66:18,19 66:20,22 |
| **3/10/2025** 119:5 |

| 30 | 4:4 25:2 |
| --- | --- |
| 96:13 119:16 |
| **352** 41:22 |
| **353** 41:22 |
| **354** 42:6 |
| **355** 42:6 |
| **37219** 2:14 |
| **373** 44:2 49:23 50:3 66:21 |
| **37402** 2:4 |
| **3:27** 95:7 |

| 4 |
| --- |
| **4** 3:19 66:24 67:5 |
| **408** 77:20,22,23 77:23 |
| **409** 77:14,23 |
| **41** 3:17 |
| **414** 67:20 78:1 78:3 |
| **422** 77:15,22,24 |
| **423** 20:12 |
| **424** 2:11 |
| **428** 20:12 |
| **4:06** 116:16,24 |

| 5 |
| --- |
| **5** 3:7,20 77:11 77:12,14 111:12 |

| 6 |
| --- |
| **6** 3:21 4:4 96:13 97:7,12 |

Case 1:24-cv-00155-TRM-MJD   Document 102-8   Filed 01/19/26   Page 122 of 153
PageID #: 2459

97:13
**600** 22:18 23:20 27:22
**60415** 2:23
**66** 3:18
**67** 3:19
**6:15** 110:24 111:1,3

**7**

**7** 3:22 82:12 97:7,13
**7216004** 119:5 120:2 121:2
**750** 22:16 23:16,17 28:4 28:5
**77** 3:20
**7:13** 109:14,23 110:6
**7:15** 108:24 110:16

**9**

**97** 3:21,22

**a**

**ability** 11:20 104:3
**able** 10:14 19:3 20:8 33:9 65:5 111:16
**above** 27:22 119:6 121:7

**acceleration** 35:12,15
**accept** 88:17
**accepted** 86:14 86:16,21,23 87:7,8
**access** 64:22 109:2
**accident** 10:10 12:22 14:10,11 18:20 19:7 31:5 32:4 45:16 84:18 85:12 87:12 92:13 93:10,11 98:7 100:1,13
**accidents** 78:24 89:2 91:9 92:16 97:18,23 99:12,15 100:6 100:9 101:15 101:23 102:3 102:14 104:6 105:22 106:6,8
**accuracy** 119:9
**accurate** 80:5 112:14
**accurately** 100:13,16 101:2
**acknowledge** 91:11 95:16
**acknowledged** 49:20 69:8

79:12
**acknowledge...** 121:3
**acknowledges** 80:11
**acknowledg...** 119:12
**action** 21:12 32:14 60:18 117:24
**actions** 107:7 107:11 113:3
**active** 22:3,4
**actual** 46:4 50:7 112:5
**actually** 6:18 23:3 24:22 27:2,21 29:9 34:1 40:5 42:9 43:10 45:20 46:13 48:21 58:17 59:15 65:21 72:18 93:7 110:22
**added** 38:11
**addition** 83:9
**additions** 121:6
**addressed** 49:10
**administer** 4:24
**admission** 43:11 44:8 45:20 46:3

47:13 48:7
**admittedly** 112:3
**affect** 55:1,17
**affiliations** 4:15
**affix** 118:3
**afternoon** 4:1
**agree** 39:11 67:11 70:23 71:4 76:13 84:5 88:1,10 88:14 92:21 98:6,15 99:7 99:10,11,14,24 100:5,8,10,11 101:9 102:11 102:15 103:2 105:14 112:8 112:16
**ahead** 8:24 12:10 17:16 26:18 44:22 49:8 50:8 74:12 75:8 76:7 77:19 89:17 96:15 100:20 115:3
**aided** 71:13 117:12
**al** 4:7,7 119:4,4 120:1,1 121:1 121:1

www.veritext.com     Veritext Legal Solutions     800-556-8974

alcohol 83:21 84:2,6,11 89:6 90:9 91:23 92:9

alert 35:12

alerted 23:24 24:3

alerts 29:10

alexander 2:3

allegedly 90:24

allotted 119:19

allow 32:22 50:21 51:13

allowed 53:11 104:16

allowing 64:12 105:14

allows 34:3

amount 31:13 82:15

angelica 1:3 4:18 78:13

annett 37:10,14 38:9,13 39:3 39:19 40:6 42:3,10

annual 22:1 85:1

annually 20:18 20:19

answer 8:14,24 9:6 21:10 26:18 43:15 44:20,22 53:13

56:1,9 72:5 73:12,23 74:4 75:1,8,17 83:4 96:11,15,17 100:21 106:12 106:13,18,20 106:22

answered 72:15,17,24 73:19 74:18 98:19

answers 12:13

anticipating 110:9

antonio 1:7 2:18 4:21 7:10 7:20,24 9:10 10:16 16:8 102:19 104:2 107:13,21

anybody 29:4 85:6

anyways 106:18

apart 113:12

appeared 2:7 2:17

appended 121:7

applicable 119:8

application 38:19

applied 37:19

apply 101:24 102:1

appreciate 72:3 73:7

appropriate 67:21

approximately 1:22 60:20 108:24 109:23 110:11

april 59:16 60:3 69:4 84:6 84:23 85:4,23 87:15,20 88:1 88:17 89:5

area 50:20 66:11

aside 89:19 90:3 92:4 109:1 113:11

asilpc.com 2:5

asked 56:17 72:24 73:12 98:18,22 111:13,20 112:24

asking 40:13 53:10 58:2 63:5 72:19 73:5,7 74:5

assistance 11:14 49:5

assistant 10:7,8 13:4 20:22 25:23 29:14

assistants 9:16 10:3,15,23 12:7 14:10,13 15:23 17:22 18:13

assume 17:23

attached 119:11

attend 18:9

attended 18:17

attention 81:4

attorney 117:21,22 119:13

attorneys 2:3 7:14

audio 66:3,7

audit 8:17 107:16

audits 7:16

august 19:15 35:1 58:13,14 59:4 60:7,20 63:21 64:9 67:1 79:19,22 89:19 90:13

authority 8:10

automatically 29:20

available 30:21 31:24 119:6

www.veritext.com Veritext Legal Solutions 800-556-8974

**avenue** 2:22
**average** 26:5
  26:13
**avoid** 17:3 86:4
**aware** 38:7
  49:2 55:8
  69:18,24 70:16
  70:21 104:4
  108:2 109:10
  109:13

**b**

**b** 4:4 96:13
**back** 6:9 15:21
  23:15 35:2
  42:9,14,19
  50:15 55:12
  72:11 74:7
  79:18 92:3
  95:10
**backed** 99:2
**bad** 89:12
  112:4
**base** 26:20
  45:23
**based** 22:13
  28:19 29:4
  35:5,6 45:2
**basic** 29:8
**basically** 24:15
  34:6
**basing** 28:17
**basis** 10:9

**bates** 20:9,9
  67:2
**bearing** 4:9
**began** 50:5
**beginning**
  49:24
**begins** 4:4
**behalf** 2:7,17
  4:20 5:14 6:15
**behavior** 53:4
  71:24
**behaviors**
  74:24 75:5,16
  101:8
**belief** 110:21
**believe** 10:22
  33:10 41:20
  51:16 74:18
  79:7,10,24
  81:23 96:23
  100:14,17,22
  101:3 107:23
**believes** 71:23
**best** 21:18
**beth** 2:10 4:20
  119:1
**better** 13:14
  108:11
**big** 54:19
**biggest** 22:2
**bit** 17:17 68:12
  76:2,11
**blame** 69:2

**blank** 65:10,16
**blind** 89:1
**board** 46:3
**boarded** 55:22
  56:2
**bolivar** 1:3 4:7
  4:18 78:13
  80:11 85:16
  113:13 119:4
  120:1 121:1
**books** 8:17
**bottom** 20:10
**boulevard** 2:3
**box** 2:13
**brake** 35:14
**braking** 35:11
**break** 94:4 95:5
**brennan** 42:4
**briefly** 5:11
**bring** 40:21
  114:21
**broad** 83:24
**broke** 30:1
**brought** 81:3

**c**

**c** 2:1 9:23
**c.s.r.** 1:14
  118:13
**cab** 66:7
**call** 12:12 20:4
  37:20 39:8
  56:16 97:24

**called** 10:10
  21:24 38:20
  39:1,14 56:16
  56:21 58:22
  98:12
**calling** 39:12
**calls** 12:18,19
  54:6 56:24
  73:1 75:7 88:5
  116:8
**camera** 13:17
  23:8,10 26:20
  31:21 32:11,19
  32:23 33:13,20
  33:21,24 34:11
  34:14 35:17,22
  35:24 50:23
  51:2,7,8,13
  52:9 53:2,18
  54:11,24 55:5
  55:17 56:10
  57:5,23 65:5
  65:11,23 70:24
  71:12,23 75:5
  75:14,21 76:3
  76:13 77:1
  80:2 86:17
  102:12,16
  103:14
**cameras** 33:7
  34:1,5 55:12
  55:14
**cap** 34:9,12
  51:10 65:23

Case 1:24-cv-00155-TRM-MJD    Document 102-8    Filed 01/19/26    Page 125 of 153
PageID #: 2462

66:2
**capable** 15:15
**capacity** 5:20
**captured** 52:9
**car** 45:4,11
 78:13 79:12,15
 87:5 89:1
**cargo** 49:9
**case** 4:6,9
 43:16,19 45:20
 98:11
**cases** 6:2
**caught** 63:20
 88:4
**caused** 93:7,8
**causes** 105:22
 106:6
**cell** 75:23 76:4
 76:14
**central** 1:24
 108:22 110:14
 110:16 111:3
**certain** 21:16
 74:24
**certificate**
 117:1
**certificates**
 19:20 20:5
**certified** 117:3
**certify** 117:5
**chance** 13:24
 98:8,13
**change** 43:21
 80:18 89:1

120:4,7,10,13
 120:16,19
**changes** 22:7
 119:10 121:6
**changing**
 114:10
**chattanooga**
 1:2 2:4 4:9
**check** 16:17
 21:23 24:5
 25:18 36:15
 82:10 87:16
**checked** 32:4
 36:21
**checking** 25:4
**checks** 85:1
**chicago** 2:23
 6:22 118:3
**choose** 44:16
 50:24 51:2,6
 101:3
**chose** 54:12
**church** 2:11
**circumstances**
 46:12,14 66:6
 116:8
**citation** 84:20
 84:23,24 85:2
 85:5,8 92:12
 92:22
**cite** 56:11
**civil** 1:16
**claim** 7:24

**claimed** 93:8
**claims** 96:1
**clarify** 50:19
**clary** 9:14
 17:22 18:9
 20:20,21,22
 79:7,9,10
 98:21 99:1
**class** 18:9
**classes** 18:6,18
 20:23
**clean** 95:14
 116:1
**cleanup** 66:11
**clear** 66:20
 71:11 72:19
 76:10 91:20,21
 106:22 110:15
 111:8 114:9
**cleared** 112:22
**clearly** 80:13
**clients** 78:6
 93:17
**clock** 108:21
**close** 95:5
 102:1 104:22
**closely** 101:14
 101:19 102:13
**coach** 8:17 9:8
 21:11 22:13
 45:2,21 47:2
**coachable**
 34:21 35:4,21

**coached** 26:21
 29:4,5 45:23
 63:2
**coaching** 9:12
 22:17 23:19,22
 25:21 26:1
 28:5 29:3,5
 60:2,5,6,18
 61:23 62:15
 63:24 80:23
 101:6
**collectively**
 8:15
**come** 18:8,15
 23:4 24:16,17
 34:1 80:12
**comes** 46:19
 54:21 86:5
**comfortable**
 57:9,20,23
**commencem...**
 117:6
**commencing**
 1:22
**communication**
 43:23 68:15,18
 69:5 98:5
**companies** 55:4
**company** 7:7
 8:19 9:3 11:18
 12:3,4,6,18
 14:9,12 15:8
 15:10,16 16:22
 21:19 23:24

www.veritext.com Veritext Legal Solutions 800-556-8974

**[company - correct]**

25:7 26:12,14 27:2,20 28:7 28:10,14,17 29:9,12,19,23 30:4,8,9,14,16 30:24 32:2,10 33:13,17 36:3 36:11 37:14 39:9,15 40:5 43:3,4,5,7 44:11,13,15,16 45:18 46:2,12 46:20 47:22 48:22 50:1,5 53:3 55:13,14 56:23 58:18 59:19,22 60:14 60:22 61:12,19 61:21 62:1,11 62:11,21 67:9 67:11 70:8,13 70:16 71:22 72:7 78:10,12 78:21 79:14,17 79:17 80:11 81:1,18 86:14 86:21 87:7,15 87:16 88:16 89:20 90:12 91:10 95:15,15 96:3,7,24 97:17,22 99:8 100:2,4 102:1 102:24 103:3

104:3,5,15,17 104:22 105:21 106:5 107:5,10 108:2 109:2,13 110:19 113:10
**company's** 11:20 48:5 69:3 71:11 79:21 98:16 114:9
**comparing** 81:5
**complete** 17:8 36:11 121:8
**completed** 80:23 87:12 101:6 119:16
**completely** 69:18,24 91:8
**completion** 19:20
**compliance** 83:15 107:18
**complied** 38:18
**computer** 117:12
**concern** 52:8 54:19,19
**concerned** 48:13,18
**concerning** 110:20 117:9
**concluded** 116:24

**concludes** 116:18
**conclusion** 56:7
**conduct** 18:6 45:1 67:12,21
**conducted** 98:21
**conflicting** 92:23 93:3
**confused** 76:11
**consequences** 48:14 82:19,23
**consider** 45:12 46:2 47:7 51:12,16
**considered** 43:11 44:8 45:19 47:13 48:7 85:11
**constitutes** 117:14
**contained** 69:19
**continue** 104:16 105:15
**contractor** 8:1 21:6
**contractors** 8:9 8:21 83:8
**contribute** 11:20
**conversation** 21:13 27:14 39:7

**conversations** 11:9
**conversed** 7:14
**copies** 119:14
**copy** 31:6 36:11 96:9
**corporate** 6:19
**correct** 6:15 10:19 11:16,17 16:1,2,13 17:18,19 18:1 18:2 19:20 21:4 25:4,8 27:4,19 28:2,8 28:9,11,20 29:10,16,21,22 30:6,10,14,15 30:18,21 32:9 33:18,19,21 34:15 36:8,9 37:15 38:13 39:13 42:20,22 43:1,8,9,12 44:9,24 45:7 45:14 47:19,24 48:12,15 49:21 49:22 50:1,5 50:23 51:7 52:18,19 53:5 53:8,20,23 54:15 57:4,6 58:6,19 59:17 59:20,21,23 60:3,6,8,11,15

www.veritext.com    Veritext Legal Solutions    800-556-8974

| | | | |
|---|---|---|---|
| 60:16,20 61:3 61:10,13,21 62:2,8,12,17 63:14,15,18,22 66:7,16 67:22 68:1,5 69:16 69:17 70:5 76:15,19,22 78:7,10,14,17 78:22 79:15,19 80:13 81:4,9 81:10 84:8,10 84:14,15 85:21 86:6,13,17,24 87:5,9 89:7,15 89:16,22 90:3 90:9,10,19 91:24 92:1,7 92:13 93:4,5 97:4 103:14 108:3,13 109:23,24 110:6,7,12,17 110:18 111:2 112:10,20 113:14 114:1 114:13,18,19 115:11,15,18 115:23 121:8 **corrections** 121:6 **correctly** 42:11 44:7 | **counsel** 2:21 4:14,22 116:12 117:21,22 119:14 **county** 110:6 **couple** 29:7 111:9 113:7 114:6 **court** 1:1,18 4:8,13,23 9:21 9:24 11:24 14:23 15:2 22:20 30:1 43:14,17 55:23 66:10,13,17 72:10,19 74:6 83:3 **cover** 32:23 33:13,24 34:2 50:22 51:2,6 51:13 **covered** 31:22 32:11,18,19 35:17,22 51:8 65:6,11 **crash** 8:2,4,5 13:1,4 14:14 15:4,11,16 19:18 36:8 58:8 65:21 68:4,5 83:17 93:8 95:18 102:21 105:22 106:6 109:22 | 110:5,7,12,22 **crashes** 46:19 **created** 11:8,15 **credibility** 113:7,18 115:9 115:13,22 **creditability** 113:22 **criteria** 81:19 81:21,22 **curb** 75:6 **curious** 14:3 **currently** 24:10 **curtail** 53:4 **customers** 49:3 **cv** 1:5 4:10 | 109:7 **database** 30:5 **date** 18:21,22 19:17,18 58:13 59:3 112:3,5 112:13 120:24 121:12 **day** 10:19,21 20:23 32:6,7 33:8,10 37:21 49:24 50:5 51:22,22 52:5 121:15 **day's** 108:18 **days** 18:17 25:2 119:16 **decide** 33:3 34:14,18 50:22 51:10 55:21 103:15 **decided** 32:18 **decision** 33:5 45:6 58:5 **declare** 121:4 **deemed** 121:6 **defendants** 1:8 2:17 **defensive** 19:8 94:15 **deliveries** 49:3 **demonstrated** 88:18 **department** 11:7,14,19 |
| | | **d** | |
| | | **d** 3:1 **daily** 10:9 **damage** 58:22 85:9 87:23 92:18 104:10 **damages** 60:5 63:9 88:22,23 88:23 **dangerous** 103:6 **data** 22:14 26:8 28:8,10,19 29:6,8,19 30:20,23 56:5 63:17 64:3,7,9 64:12,19 109:3 | |

| | | | |
|---|---|---|---|
| 25:18 | difference | distracted 53:4 | downtown 6:22 |
| **depending** | 17:23 | 76:18 77:1,5 | **drier** 45:2 |
| 46:14 | **different** 17:23 | **distribution** | **drive** 33:2 |
| **depends** 43:22 | 19:19 24:11 | 19:10 94:19,23 | 53:23 102:19 |
| **deponent** | 35:10 88:3 | 95:3 | 104:3 |
| 119:13 121:3 | 91:8 114:23 | **district** 1:1,1 | **driver** 7:8 12:7 |
| **deposing** | **difficulties** 5:1 | 1:18 4:8,9 | 12:8,11 17:4 |
| 119:13 | 6:7 | **document** 20:9 | 18:10 19:6 |
| **deposition** 1:11 | **direction** | 37:1 38:1 | 22:16,17,17 |
| 4:5 5:18 6:8 | 117:13 | 41:15 42:7 | 23:12,17,22 |
| 7:4 40:22 | **directly** 117:23 | 58:13 59:2,12 | 27:18 29:16 |
| 116:24 117:10 | **disciplinary** | 60:12 62:9 | 31:22 32:11,17 |
| 117:16,19 | 21:12 32:14 | 77:10 93:23 | 32:18,23,24 |
| **depositions** | 60:18 | 94:10,11 95:24 | 34:3,5,13,17 |
| 1:20 6:15,17 | **discipline** 7:21 | 96:3,5,18,21 | 37:16,17,20 |
| **describe** 16:20 | 60:2 61:24 | 101:22 | 38:1,17 40:21 |
| 17:12 | **disciplining** | **documentation** | 45:4,10 47:2,2 |
| **deter** 75:22 | 104:2 | 26:23 | 47:3 48:3,18 |
| 76:4,14 77:1 | **discovered** | **documented** | 48:21 49:4,19 |
| **determination** | 60:7,19 62:16 | 18:11 83:15 | 50:22 51:2,17 |
| 32:3 45:17 | 63:10 80:4 | 100:15 101:1 | 52:2 53:2,3,19 |
| 47:11 62:22 | 81:3 | 105:15 | 54:11,13,19,20 |
| **determine** | **discuss** 79:7 | **documents** 7:5 | 54:24 56:10 |
| 31:23 35:16 | **discussion** | 18:11 20:10 | 58:5 63:2,10 |
| 40:6 64:7 | 50:13 81:15 | 80:24 | 65:4 66:5 |
| **determined** | 95:8 104:1 | **doing** 20:23 | 68:20,24 69:2 |
| 32:10 84:13 | **discussions** | 41:3 52:17,24 | 70:24 71:12,23 |
| **determining** | 104:4 | 71:9 72:6 | 71:24 73:21 |
| 12:18 | **dishonest** 68:3 | 73:22 | 75:5,13,21 |
| **deterred** 70:24 | 68:22 69:2 | **dot** 84:16,17 | 76:3,13 77:1 |
| 75:13 | **dishonesty** 67:9 | 85:11 92:13,15 | 79:5,11 82:7,9 |
| **deterring** 71:13 | 67:12,24 68:7 | 92:16 93:10 | 82:9,13 83:1,7 |
| **devices** 23:3 | 68:9 72:1 | **download** | 84:16,20 85:14 |
| | 100:6,9,12 | 24:20 | 85:18,24 90:21 |

www.veritext.com        Veritext Legal Solutions        800-556-8974

90:23 92:20 93:8 94:21 95:1 98:4,6,12 98:22 99:2,9 99:11,14,20 100:1,3,5,8,11 101:6,7,7 103:3,14,17,22 104:5,9 105:14 105:20 106:4 111:12,14,17 112:5,17 115:10,14

**driver's** 8:16 21:20 22:6 24:1,4,5,19 27:17 30:10 40:12 59:14 68:11 89:1,24 109:3 114:17

**drivers** 8:18 9:7,8 10:9,11 12:13 16:21 18:8,14 19:23 21:11,15,17,18 21:23 22:4,4 22:12,13 24:15 25:17,21 26:2 33:3,15,24 43:6 45:21 47:9,10,18,21 48:6,9,13 51:6 51:10,13,19 52:8 53:8 55:2

55:5,16,19 56:8,12,17,18 56:20,21 57:19 94:24 101:19 102:2 103:6,7 103:13,15 104:15 106:8 109:5

**drivers's** 25:4

**driving** 17:2 19:8 21:23 31:16 33:14 36:4,16,21 51:3,11,21 52:5,9,17,21 53:4,8 57:13 64:9 76:15,18 76:19,21 77:2 77:4,5 94:15 105:16 108:1,7 110:20 116:1,1

**drove** 42:16

**drug** 53:16 83:20 84:2,5 84:11 89:6,13 90:8 91:23 92:9 93:9

**drugs** 53:8,19

**due** 32:17 51:16

**duly** 5:2,5 117:8

**duncan** 4:11

**duty** 51:3,6,14 51:15,20,22 52:6,16 53:3 54:12 55:1,5 55:17 57:6,14

**e**

**e** 2:1,1 3:1 14:24 120:3,3 120:3

**earlier** 6:13 93:24

**eastern** 1:1 4:8 110:13

**eat** 33:2

**eating** 76:21

**effect** 112:17

**either** 39:1 55:21 92:18

**elaborate** 72:4

**elias** 14:22

**email** 12:14,23

**emailed** 14:18

**employed** 10:18 15:8 115:10,14,18 115:23

**employee** 43:1 117:20,21

**employer** 37:22 38:2,5,21 40:7

**employers** 36:16,22 37:18

**employment** 7:13 9:20 10:17 37:11 38:14 39:16 40:10 93:13

**enable** 23:4

**ended** 22:17 79:12

**enforce** 9:3

**enforcement** 85:7 87:17,18 90:17 93:1 109:14

**engaged** 70:17

**engaging** 71:13

**ensure** 8:8

**entering** 24:19

**entirely** 29:18 88:2 107:12

**equipment** 19:11 58:23 85:9 87:23 88:22,23,23

**errata** 119:11 119:13,15,16

**escalate** 14:10

**escalated** 12:18 13:3

**essentially** 10:8

**et** 4:7,7 119:4,4 120:1,1 121:1 121:1

**event** 35:11,15 35:21

www.veritext.com
Veritext Legal Solutions
800-556-8974

| | | | |
|---|---|---|---|
| **events** 34:21 35:5 86:15,16 86:22 | 77:11,12,14 97:12 111:12 | **fact** 45:13 69:8 90:24 112:11 | **fifth** 78:21 |
| **everybody** 100:22 | **exhibits** 3:14 20:1 66:12 97:7,13 | **facts** 29:8 45:2 | **figured** 63:3 |
| **evidence** 30:24 95:16 96:8 | **exist** 26:8 | **fail** 70:8 102:2 | **file** 19:1,19 27:16,18 29:16 38:3 40:13,21 42:11 83:1,8 |
| **exact** 16:17 18:22 31:13 33:9 56:21 58:12 108:19 111:21 112:12 | **existed** 64:4 | **failed** 99:1 101:14 102:14 | **filed** 4:8 |
| | **existence** 60:19 | **failing** 70:11 97:17,22 99:7 100:16 101:2 101:23 104:6 104:10 | **files** 7:10 8:16 96:4 |
| | **exists** 51:1 | | **filmed** 57:13 |
| **exactly** 36:13 65:14 79:11 108:5 | **experience** 17:6 | **fails** 98:6 105:21 106:5 119:18 | **final** 82:3,5 |
| | **experiencing** 6:7 | | **financially** 83:9 |
| **examination** 3:7,8 5:7 111:10 114:7 117:7 | **explain** 68:18 69:7 98:10 108:4,5 | **failure** 101:10 | **find** 18:23 25:11 41:18 110:19 |
| | **explained** 72:16 | **fair** 25:1 76:2 76:10 | **fine** 40:20 82:11 |
| **examined** 5:5 | **explore** 79:18 | **falls** 24:1 | **finished** 95:5 |
| **example** 35:16 45:10 54:12 68:17 75:20 | **extent** 96:14 | **familiar** 37:4 67:21 | **finnish** 13:24 |
| | **exterior** 23:13 | **far** 17:15 66:11 | **fired** 104:5 |
| | **externally** 23:10 | **fatality** 84:21 92:20 | **first** 5:5 11:10 38:18 55:13 58:11 59:15 62:21 68:13 77:20 102:18 117:8 |
| **excel** 24:16 | | | |
| **exception** 48:11 | **f** | **fault** 99:9 | |
| **excuse** 5:22 9:21 | **face** 23:10,11 34:5 57:24 | **fausta** 1:11 3:5 4:6 5:4,12 44:22 73:11 111:18 115:4 117:7 | **fit** 72:6 106:12 |
| **exhibit** 3:16,17 3:18,19,20,21 3:22 20:4,6,11 20:14 40:10 41:2,4 49:15 66:15,22 67:5 | **faces** 23:12 | | **five** 50:9 81:8,8 81:24 82:14 83:12 |
| | **facing** 31:22 32:11 33:20,21 34:15 56:10 70:24 71:12,23 75:5,13,21 76:3,13 77:1 103:14 | **february** 25:1 30:13 | **flag** 101:11 |
| | | **federal** 1:16 | **fleet** 33:18 |
| | | **feel** 108:20 | **follow** 8:19 48:14 70:5 |

Case 1:24-cv-00155-TRM-MJD   Document 102-8   Filed 01/19/26   Page 131 of 153
PageID #: 2468

84:16 101:20 102:10,10 105:1

**following** 38:8 39:19,23 40:3 82:23 89:14

**follows** 5:6 6:8

**followups** 114:6

**footage** 93:6

**forces** 35:6

**foregoing** 117:10 121:5

**forgets** 68:20

**forgot** 37:21 69:1

**form** 8:11,23 9:5 11:22 12:9 13:5 14:15 15:17 21:8 23:6 26:9,17 27:5,23 28:12 28:21 31:2 34:16 35:8 39:5 40:8,15 44:18 46:6,15 46:22 48:1,16 52:11 54:1,5 54:16 58:1,20 61:4,14 62:3 62:24 64:14 67:14 69:10,20 70:19 71:2,15 72:23 73:9

74:15 75:7 76:5 78:18,23 80:6,14 81:11 86:7,18 87:1 87:10 88:5,12 88:20 89:8,17 89:23 90:4,14 91:2,13 93:15 96:10 97:19 98:18 99:4 100:19 101:16 102:4 103:8 104:11,18 105:11,17,24 106:11 109:9 109:15

**forms** 75:12 76:18

**forward** 78:5

**found** 42:7 45:13 60:5 107:21

**four** 58:17 60:7 62:20 66:15 70:17 81:2 98:15 100:6,9

**fourth** 62:6 91:22

**frame** 26:16

**free** 108:20

**front** 59:5

**fulk** 2:20

**fun** 116:8

**further** 25:18 63:13 72:4 114:7 116:4

**g**

**general** 2:21 55:15 56:9

**generally** 50:7 53:22 54:4,7

**generate** 102:23

**generated** 19:21

**generates** 103:18 105:20 106:4

**generating** 103:22

**getting** 12:15 33:7 95:14

**give** 6:17 11:12 18:22,24 33:9 39:12 57:11,22 68:17,17 72:3 73:3 75:20 109:2 111:14

**given** 5:17 6:14 17:4 33:23 34:13 42:24 74:19 82:3 92:24 93:4 100:15 101:1 112:13 113:8 114:13,18

117:14 121:9

**go** 8:24 12:10 24:3 26:18 29:23 30:4 35:2 37:19 38:6 41:14 44:22 47:23 49:8 50:8 66:12 74:12 75:8 76:7 77:19 79:18 89:17 96:15 100:20 115:3

**goal** 48:5 49:1

**goatache** 1:3 4:19

**goes** 34:11 37:3

**going** 4:2 8:4 11:22 12:1 13:13 19:1 20:1,1,2,3,4 24:22,22 25:3 35:2 37:1 39:4 47:6,7,17,18,22 47:24 49:12 50:12 64:8 66:20,20,24 72:14,23 74:3 94:2 95:7,23 96:20 110:16 114:11 116:16

**good** 4:1 8:16 14:8 49:12 50:10 94:3

www.veritext.com
Veritext Legal Solutions
800-556-8974

**gotten** 17:16
**great** 5:17
  13:16
**guess** 10:24
  11:6,12 12:24
  16:10 24:11
  25:16 56:12
  65:19 76:24
  77:24
**guideline** 70:8
**guidelines**
  67:20 70:13
  84:16
**guys** 25:1

**h**

**h** 120:3
**habits** 64:9
**hand** 118:3
**handbook** 43:1
  43:3 67:9,11
  69:16 70:2
**handle** 24:12
**handled** 12:19
**handling** 96:1
**happen** 79:1
  89:2
**happened** 24:9
  24:23,24 35:17
  35:21,22 45:14
  45:16 61:10
  68:4 78:21
  79:2,11 80:2,5
  85:4,13,14,19

85:23 86:6
88:2 89:21
90:1 93:4
94:22 96:7
98:13 100:13
**happening**
  23:18,21
  116:10
**happens** 15:11
  15:16 49:2
  78:7
**happy** 67:19
  94:1
**hard** 35:11,11
  35:14,15
**harm** 105:22
  106:6
**head** 40:18
  54:13 67:17
  93:19 104:8
**heads** 52:21
**hear** 11:10 13:6
  13:11 21:2
  45:8 77:4
**heart** 80:18
**held** 50:14 95:8
**help** 10:2 53:3
  53:7 75:6,21
  76:4,14 77:1
  108:10
**helped** 102:17
**helpful** 41:12
**helps** 10:9

**henshaw** 2:5
  3:7 4:17,18 5:8
  6:11,12 8:13
  9:2,9 10:1 12:2
  12:16 13:6,9
  13:12,16,19
  14:20 15:3,20
  20:12,15,17
  21:9 22:22
  23:9 26:11
  27:1,9 28:1,16
  29:1 30:3 31:8
  31:10 34:19
  35:13 39:10
  40:11,19 41:9
  41:11,14,17
  43:18 44:20
  45:3 46:10,18
  47:5 48:4,19
  49:14,17 50:8
  50:17 52:15
  53:17 54:3,8
  54:22 56:4
  58:4,24 61:8
  61:17 62:5
  63:6 64:18
  66:9,14,19
  67:4,7,18
  69:15,21 70:22
  71:6 72:2,7,10
  72:18 73:2,8
  73:13,16 74:5
  74:6,16 75:2,4
  75:11,19 76:8

77:4,5,7,17,22
78:3,4,19 79:3
80:9,17 81:12
83:11 86:10,20
87:3,14 88:9
88:15 89:4,9
89:11,18 90:2
90:6,16 91:5
91:19 93:16
94:6,8,13 95:4
95:13 96:19
97:4,5,10,15,16
97:21 98:24
99:6 100:24
101:21 102:7
103:12 104:14
104:21 105:13
105:19 106:3
106:16,21
109:11,18
110:2,3 111:5
113:16 114:6,8
115:1,2,7
116:3,6
**hereto** 117:23
  121:7
**hereunto** 118:1
**hey** 35:21
**hides** 99:11,14
  100:5,8
**hiding** 105:15
**hire** 18:21
  19:17 112:14

www.veritext.com          Veritext Legal Solutions          800-556-8974

**hired** 16:8
42:21 56:3
58:10 114:13
**hiring** 7:8,20
18:19 36:10
38:7 54:20
55:1,17
**history** 21:6,20
36:16,22 37:11
38:14 39:16
62:20 91:11
100:16 101:2
101:22 103:19
105:15
**hit** 45:4,10 61:6
90:21,24 91:4
91:6
**hitting** 79:12
**hmd** 1:7 2:18
2:21 4:5,7,20
5:14,21,23 6:3
6:5,15,24 7:21
7:24 8:8 10:18
21:5 25:18
37:2 41:8,22
41:22 42:6
44:2 49:23
50:3 51:12
54:9 55:8 59:2
64:22 66:21
67:4,20 82:12
83:20 101:3,11
101:13 102:20
103:5,17,21

104:1,9 105:3
105:8,23 106:7
107:6,13,21
109:7 113:2,9
113:19 115:10
119:4,5 120:1
120:2,24 121:1
121:2,4,12
**hmd's** 50:21
67:24 113:23
**hmdtrucking....**
2:24
**hold** 8:17 13:12
96:6
**holdings** 37:10
37:14 38:9,14
39:3,19 40:6
42:4,10
**home** 33:1
**honesty** 105:10
**hour** 1:22
49:13 94:3
**hours** 7:17 17:1
18:14 51:21,22
107:14,22
108:2,6,9,11
110:11 113:8
**huh** 7:2 19:12
34:9 37:9
38:15 41:6
42:1 44:5 59:8
65:12 94:12
95:21 110:8
111:19 115:20

**i**

**idea** 63:20
**identification**
20:7 41:5
66:23 67:6
77:13 97:6,14
**identified**
10:13 97:8
**identify** 4:14
**illinois** 2:23
117:4 118:5
**immediate**
92:18
**implemented**
54:10
**improper** 71:24
95:3
**improvement**
59:3,11 82:24
83:5,10,13
**inaccurate**
88:19
**incident** 14:19
16:7 18:10
22:15 24:9
32:7 43:12
44:9 45:1 47:1
47:4,10,17,23
48:8 49:5
58:11,21 59:15
60:3,10,19,23
61:3,19 62:7
62:16 64:21

70:9,12 78:6,9
79:22 80:3
81:23 82:4,22
82:24 84:7,23
87:16,20 88:24
89:1,6,14 90:8
90:12 91:23
92:5 93:14
99:21 100:4
104:24 107:8
108:8,12,16
109:13 112:18
113:1,8,12,19
113:23 114:14
115:1
**incidents** 17:3
43:4,7,11 44:7
45:19 46:3,20
47:12 48:6,10
48:23 58:17
62:20 63:4
69:5,9 70:17
79:23 81:2,6,8
81:18,24 82:15
82:20 83:1,7
83:12 84:3,12
86:3,12 88:18
88:19,21 98:11
98:16 100:16
101:2,5,10
102:16,17
106:24
**inclined** 53:19
53:23

www.veritext.com          Veritext Legal Solutions                    800-556-8974

**[include - knowledge]**

| | | | |
|---|---|---|---|
| **include** 68:3 | **institute** 104:22 | 94:23 | **kept** 83:1,7 |
| **including** 68:4 | **instruct** 74:3 | **issued** 84:20 | 96:9 |
| **incorporated** | **instructing** | 85:2,5 92:20 | **kevin** 4:11 |
| 22:11 | 73:2 | **issues** 21:7 | **kind** 12:1 13:23 |
| **incorrect** 80:19 | **intend** 48:22 | 32:17,24 51:17 | 39:22 75:16 |
| **independent** | **interested** | 51:19 63:12,13 | **know** 9:19 |
| 8:1,9,20 21:6 | 117:23 | 68:15 93:12 | 10:16 11:18 |
| 83:8 | **intermodal** | 107:18 | 12:24,24 13:6 |
| **indicate** 28:8 | 19:11 | **issuing** 22:18 | 14:11,17 15:13 |
| **indicates** | **internally** | 85:8 | 15:15,19,23 |
| 114:22 | 23:11 | | 16:14 18:17 |
| **indirectly** | **interrupted** | **j** | 24:23 25:2 |
| 117:23 | 49:8 | **jacob** 9:14 | 26:5,10,12 |
| **individual** 15:7 | **inverse** 76:12 | 15:22 79:7,10 | 27:2,7,10,10,21 |
| **industry** 55:10 | **investigate** | **jacob's** 9:22 | 30:22 38:21 |
| **info** 2:24 | 45:5 47:1,6 | **jason** 2:20 | 39:8,21 40:14 |
| **inform** 33:12 | 98:8,12 99:7 | **jeanine** 1:14 | 41:21 47:9 |
| 33:15 | 101:5 113:12 | 4:13 117:3 | 48:2,17 49:11 |
| **information** | 113:19 | 118:13 | 52:20,21 58:13 |
| 12:6 28:24 | **investigated** | **jeopardize** | 62:1 63:23 |
| 29:13,15,20 | 47:11 | 104:2 | 73:4 74:4,8 |
| 39:13 40:5 | **investigation** | **job** 11:4 16:12 | 75:17 76:17,18 |
| 42:18 56:15 | 45:1 87:12 | **jones** 42:4 | 76:21,24 77:8 |
| 64:22 66:3 | 92:23 98:14,22 | **july** 19:8,10,13 | 84:22 85:22 |
| 89:21 90:12 | 113:23 | 61:2 62:7 69:5 | 86:1,5 87:22 |
| 92:6 98:17 | **involved** 9:11 | 90:7 91:22 | 90:20,23 93:21 |
| 109:6 | 12:15 13:1 | 93:21,22 | 94:14,18 96:7 |
| **initially** 85:18 | 14:13 15:24 | **june** 60:11,24 | 96:24 97:1 |
| **inside** 23:3 | 17:18 82:19 | 69:4 89:13,21 | 98:13 99:1,5,8 |
| 66:7 | 85:10 | **jury** 105:4,8 | **knowledge** |
| **inspections** | **inward** 33:21 | **k** | 14:12 26:20 |
| 17:2 | **issue** 10:10 | **k** 15:1 | 68:11 88:7 |
| **installing** 33:11 | 43:23 52:7 | **keep** 115:10,14 | 96:11,14 |
| 55:11 | 55:20 68:18 | 115:17,22 | |

www.veritext.com    Veritext Legal Solutions    800-556-8974

**knowledgeable** 7:20 13:3

**knows** 96:14

**l**

**l** 9:23 14:24 15:1

**lack** 68:11

**lane** 78:14 79:5 79:15 80:12 85:17 87:5 88:24

**law** 85:7 87:17 87:18 90:17 93:1 109:14

**leading** 70:18 102:20 113:16

**learns** 21:6

**lease** 69:13 91:18

**leave** 33:3 38:4 103:15

**leaving** 108:1

**legal** 4:11,12 116:20 119:23

**legs** 49:13

**lens** 23:12 31:21 32:19 34:2,18 71:8 73:20

**letter** 31:1,7 96:12

**lewisthomas...** 2:15 119:2

**license** 118:15

**lies** 105:22 106:6

**light** 69:7 79:18

**line** 111:23 116:14 120:4,7 120:10,13,16 120:19

**listed** 50:3

**lithuanian** 14:4

**little** 17:17 68:12 76:2,11 108:11

**load** 95:1,3

**loaded** 94:24

**located** 82:6

**log** 8:17 11:8 11:15

**logbook** 10:10 108:18

**logbooks** 17:1 110:14

**logs** 7:17 103:3 107:13,16,19

**long** 108:16 115:24

**longer** 24:13 25:6 28:10 29:14 30:13,21

**longwinded** 111:6

**look** 24:17 40:24 61:5 64:7 103:17,21

108:18 113:11

**looked** 30:20

**looking** 41:21 77:18,24

**looks** 19:9 38:11 42:8,16 58:14 62:7 108:21

**lot** 113:6

**lower** 22:16,18 25:22 26:21 27:8,12 28:4 63:24

**lukosius** 14:22

**lying** 99:23

**m**

**ma'am** 5:10 6:13 96:22

**madam** 66:10 72:10,19 73:8 74:6

**made** 33:5 38:8 47:12 49:4 62:22 87:22 121:5

**maintain** 107:13

**make** 8:15 12:4 12:8 13:17 34:4 45:6,16 46:1 56:24 66:14 76:1,9 77:19 112:4,21

**makes** 58:5 103:3

**making** 51:12 55:10

**man** 15:22

**management** 19:14 98:7

**manual** 49:19 82:8,9,13 111:13,14,17 111:22 112:5 112:17 114:18

**manuals** 115:6

**manufacturer** 34:2,3

**march** 1:20 4:3 8:6 11:1 13:1 14:14 19:7,18 22:23 23:14 24:13,21,23 25:1 26:4,14 28:7 30:13 32:8 36:5,8 63:14,21 64:4 64:10 70:18 78:6 79:22 80:3 81:7 82:4 83:17 85:15,16 86:22 88:24 91:7 92:8 93:13 95:17 104:23 112:19 113:2,20,24 115:11,15,18

Case 1:24-cv-00155-TRM-MJD   Document 102-8   Filed 01/19/26   Page 136 of 153
PageID #: 2473

118:5 119:3
**maria** 25:10,23 29:13
**marion** 110:6
**mark** 41:2 77:10 97:5
**marked** 19:24 20:7,13 41:5 66:23 67:6 77:13 97:14 111:12
**marking** 97:11
**mary** 2:10 4:20 119:1
**material** 113:22
**matter** 4:6 28:6 47:8,14
**matters** 117:9
**mbwhite** 2:15 119:2
**mean** 10:6 32:12 36:13 37:17 38:16,22 50:6 52:16 68:13,19 71:7 71:8,9 73:19 80:22 84:11 85:7 87:18,23 88:22 99:22 102:5 115:16 115:21
**means** 38:17 98:7 99:8

**meant** 76:9 77:23
**measure** 102:13 103:10
**media** 116:18
**meetings** 8:18
**mentioned** 17:11,20 20:18 23:16 50:21 65:3
**met** 116:7
**microphone** 13:18
**mikniute** 1:12 3:5 4:6 5:4,12 13:21,22,23 14:6,9 117:7
**miles** 102:19 103:2
**mind** 14:2 68:18 94:5
**minor** 81:17 82:23 85:9
**minute** 31:9 34:4
**minutes** 50:9 110:11,20
**mis** 98:4
**misconduct** 70:7,12,15 71:1,10,14 75:12,21 76:14
**mishaps** 69:5

**misinterpreted** 68:24
**misjudged** 79:2
**misleading** 109:16
**missing** 37:10 38:14,20 39:15 83:3
**misstatement** 69:11
**misstates** 27:24 44:21 71:16 100:19
**misunderstan...** 68:10,14 98:3
**misunderstood** 69:1,12 91:16
**modules** 19:13
**money** 103:3
**monitor** 23:4 101:13,19 102:13 103:5
**monitoring** 22:3
**month** 42:17,17 62:7
**monthly** 24:7 25:3,17 30:7
**months** 60:7,20
**move** 13:13,16 20:2 49:18 50:20 66:11 78:5

**movie** 76:19
**multiple** 49:1 104:16
**muralis** 37:8
**muzzled** 13:8

**n**

**n** 2:1 3:1
**name** 4:11,17 5:11 9:22 14:24 24:19 25:10,11 90:20 99:2
**named** 15:22
**names** 9:13,17 10:14 11:13 15:23 16:16
**nashville** 2:14
**navigate** 16:24 54:20
**ndr** 22:1
**necessarily** 20:21 37:16 45:12 71:5,7,9 71:24 72:16,17 73:20,21 74:23 75:3 87:2,11 97:24 99:22 102:15 103:4
**necessary** 113:19 115:9 115:13,17,19 115:22 121:6

www.veritext.com          Veritext Legal Solutions          800-556-8974
Case 1:24-cv-00155-TRM-MJD    Document 102-8    Filed 01/19/26    Page 137 of 153
PageID #: 2474

**need** 16:6,17 20:3 25:10 33:15 46:1 49:2,5 66:10 66:14 79:18 101:19 108:18 111:8 114:14
**needed** 12:15 21:1,3 29:4 47:3 114:2
**needs** 38:5 49:9 84:17
**ness** 111:6
**netradyne** 15:11,15 22:8 22:11,14,24 25:4 29:8,10 29:21,24 33:18 34:20 35:21 36:1 63:17,20 64:3 65:2 109:2,7 113:9
**never** 80:18 96:17 104:9
**nice** 116:7
**nighttime** 24:24
**nose** 52:20 54:14
**noses** 57:19
**notary** 121:13 121:19
**notated** 19:22

**note** 37:7 38:4 38:8,12,24 39:11 70:7 119:10
**noted** 109:22 121:7
**notes** 39:18 40:3
**notice** 15:4 82:24 96:13
**noticed** 37:6
**noticing** 4:16
**notifications** 35:24 36:2
**notifies** 22:6
**notify** 35:15 49:3
**notifying** 15:16
**november** 10:22 11:2 16:11 18:18,21 19:18 22:23 26:4,13 36:4 42:21 115:11 115:15
**number** 4:10 11:1 20:6 29:9 41:4 56:21 66:17,19,20,22 66:24 67:2,5 77:12 82:12 102:22 103:1 104:20 112:3

**numbers** 20:10

**o**

**o** 15:1
**oath** 4:24
**object** 8:11,23 9:5 11:22 12:9 13:5 14:15 15:17 21:8 23:6 26:9,17 27:5,23 28:12 28:21 31:2 34:16 35:8 39:4 40:8 44:18 46:6,15 46:22 48:1,16 52:11 54:1,5 54:16 58:1,20 61:4,14 62:3 62:24 64:14 67:14 69:10,20 70:19 71:2,15 72:14,23 73:9 74:15 75:2,7 76:5 78:18,23 80:6,14 81:11 86:7,18 87:1 87:10 88:5,12 88:20 89:8,17 89:23 90:4,14 91:2,13 93:15 96:10 97:19 98:18 99:4 100:19 101:16

102:4 103:8 104:11,18 105:11,17 106:11 109:9 109:15
**objection** 13:10 40:15 71:21 75:15 105:24 113:16
**obligations** 69:13 91:17
**obstructed** 35:24
**obtain** 36:11
**obviously** 12:14 23:13 54:19
**occurred** 8:6 14:19 22:15 40:6 60:24 110:22 113:1,6 113:11,20
**occurring** 113:23
**october** 19:6 38:23
**office** 6:18 18:7 33:1 112:2 118:3
**officer** 93:3
**officers** 92:22
**oh** 15:7 37:21
**okay** 5:17,20 6:21,23 7:19

www.veritext.com
Veritext Legal Solutions
800-556-8974

10:2,12,18
11:6 12:17,24
13:16,20 14:2
14:2,5 15:7
16:5,14,19
19:5,24,24
20:18,24 21:5
23:24 24:5,14
24:21 25:16
26:1,12 27:15
28:17 29:7
30:23 33:12,17
34:3,10,20
35:14 36:3,10
37:6 38:6,13
38:23 39:21
41:3,10,12
42:5,13,18,21
44:11,14 45:4
46:1 47:16
48:5,20 49:16
50:8 51:5,12
53:18,22 54:9
54:23 55:4,8
56:15 57:2,3
57:22 58:5,15
59:1 62:14
63:7,13 65:2
65:19,23 66:2
66:5,13 67:19
68:7,12,23
69:3,7,16 70:1
73:17 74:19
75:24 76:24

77:10 78:3
79:4,13,21
80:1 81:7,15
81:22 82:16
84:13,19 85:3
86:2,11,14
87:4 88:16
92:21 93:6,20
94:8,22 96:3,6
96:24 98:10
108:14,16,20
109:22 110:4
110:19 111:5
111:16 112:2,7
112:11,16,21
113:6,18 114:4
115:3
**older** 114:20,21
114:22
**onboard** 49:21
**once** 6:23,24
21:24 57:12
63:9
**ones** 25:13
**open** 40:9 71:8
73:20
**operate** 8:9
**operating** 12:8
26:15 53:20
104:16
**operator** 69:14
91:17,18
**opinion** 52:7
56:17

**opposed** 51:3
**order** 115:10
115:14
**orientation**
16:4,9,18,19
17:4,9,15,18,24
18:5 19:6
49:21
**outcome**
117:24
**outward** 33:20
**oversight**
105:16
**owner** 91:17

**p**

**p** 2:1,1
**p.m.** 1:22 4:2
6:10 50:12,16
95:7,11 108:22
109:14,23
110:6 116:16
116:24
**p.o.** 2:13
**page** 3:3 39:19
77:17,24 82:12
120:4,7,10,13
120:16,19
**pages** 38:6 41:2
**parked** 45:4,11
**part** 11:6,10
21:2 45:8
53:16 55:24
74:9 81:18

96:13 98:14
100:7
**participated**
2:2
**particular** 58:3
107:8 113:8
**particularly**
77:17
**parties** 2:2
117:22
**party** 4:16
85:10
**passengers**
57:19
**passes** 95:2
**past** 113:7
**pattern** 100:6,9
100:12
**people** 9:11
10:12 11:1,7
11:13 12:15
16:5,6,11,14
24:11 30:12
56:23
**percent** 99:24
**perform** 17:2
**performance**
82:24 83:5,10
83:13
**performed**
18:10 84:6
**performing**
83:20 84:2

www.veritext.com Veritext Legal Solutions 800-556-8974

| | | | |
|---|---|---|---|
| **person** 7:19 10:8 14:21 18:6,18 19:17 20:20 24:12 25:6,9 29:23 30:4,8,12 31:19 | **police** 87:13,24 90:18 93:2,3 109:19,23 110:5 | 114:22 115:5,6 | **pretrip** 17:2 |
| **personal** 96:11 96:14 117:13 | **policies** 7:7 8:20 9:4 16:23 22:15 46:21 101:20,24 105:2 | **portion** 71:19 72:12,21 74:13 | **pretty** 7:6 16:22 22:2 52:4 55:12,19 |
| **personnel** 9:19 10:5 12:13 | **policy** 9:8 12:17,21 32:19 32:22 43:4,10 44:11,13,15 45:18 46:2,13 46:14 47:7,15 47:16 48:14 49:19 50:3,21 51:1,12,18 54:10,23 55:10 59:23 60:22 61:12,16 62:11 63:4 67:13,24 69:9,19 70:3 78:21 81:18,24 82:6,7,13,13 83:20,23 84:1 84:15,16 86:2 86:9,11 91:20 91:21 100:2,4 101:18 102:6,8 102:10 104:17 111:12,14,17 112:5,12,17 114:10,12,16 | **posed** 57:2 | **prevent** 53:7 |
| **pertaining** 1:18 | | **position** 28:18 71:11 79:21 | **preventable** 45:6,12 47:8 47:23 58:11 59:15 60:3,10 61:3,6,13,18 62:6,20 81:8 81:24 82:20,22 83:7 84:3,14 89:14 90:8,11 91:23 |
| **phone** 56:16,24 75:23 76:4,14 | | **possible** 39:8 43:7 88:2,11 | |
| **pickups** 49:3 | | **possibly** 38:17 45:23 55:3 | |
| **place** 21:12,16 22:24 46:5 102:18 112:4 117:17 | | **post** 19:7 | |
| | | **potential** 75:23 | |
| **placed** 83:13 | | **potentially** 53:6,7,21 77:9 112:9 | **prevented** 43:12 44:9 47:14 48:8 |
| **plaintiffs** 1:4 2:7 | | **pre** 19:24 | **previous** 37:18 115:5 117:6 |
| **plan** 82:24 83:5 83:10,14 | | **prepare** 7:3 | **previously** 39:2 |
| | | **prepared** 97:2 | **printed** 18:23 40:23 41:20 |
| **platform** 22:5,8 | | **present** 10:19 | |
| **please** 4:14,23 5:10 9:22 11:11 43:15 50:11 71:18 95:6 116:12 | | **preservation** 30:24 31:7 96:12 | **prior** 6:14 17:6 27:24 36:11,13 36:15 44:21 49:24 69:11 70:17 71:16 81:2,8 98:15 100:20 107:4 112:14 |
| | | **preserve** 31:4 31:12 36:3 95:16 96:8 109:7 | |
| | | **preserved** 29:13 30:23 31:11,15 36:7 64:19 65:3,9 | |
| **point** 9:16,20 10:16 33:23 34:13 49:12 62:19 94:4 | | **presume** 17:17 | |
| | | **presuming** 16:10 | **privacy** 32:17 32:24 51:17,19 52:7,10 54:15 |

Case 1:24-cv-00155-TRM-MJD    Document 102-8    Filed 01/19/26    Page 140 of 153 PageID #: 2477

54:19 55:20
**proactive** 21:17
**probably** 9:15
33:6 94:20
**problem** 30:9
**procedure** 1:16
**procedures**
16:23 101:20
105:1
**proceed** 5:3
6:10 50:16
95:12
**proceedings**
117:15
**process** 16:20
21:19,22 37:20
38:7 98:14
**produce** 114:21
**produced** 37:2
44:1 112:2
114:17
**productive**
103:6
**profile** 24:4
27:17
**profit** 106:9,24
107:2
**profits** 104:3
107:5
**prohibited**
67:12 68:1
**prompted**
94:14,18

**propensity**
105:5
**proper** 19:10
94:19
**provide** 10:14
18:16 22:3
**provided** 4:5
7:6 17:21
18:12 42:19
93:20 111:21
111:22
**provisions** 1:14
**public** 121:19
**publix** 41:24
**pull** 40:12,12
67:19 94:1
111:15
**pulled** 24:14
25:12 26:2
111:17
**pulling** 25:13
**purged** 64:13
**purpose** 64:12
70:1
**purposes** 29:3
30:7 97:6
**pursuant** 1:14
**put** 20:11 29:15
112:3
**putting** 111:6

**q**

**qualification**
27:18 29:16

40:13,21
**qualifications**
8:16
**question** 8:12
8:14,24 9:5
11:11,23 12:1
12:5,10,12
13:2,11,20
14:16 15:18
23:7 26:18
27:6,24 28:13
28:22 29:17
31:3 35:9,19
40:16 44:19,23
45:9 46:7,9,16
46:23 50:2
51:4 52:12,14
53:12 54:2,6
54:17 57:2
58:3 61:15
63:1 64:2,15
64:17 65:8,14
65:19 67:15
70:10,20 71:3
71:16,18 72:5
72:11,15,15,17
72:20,24 73:3
73:6,10,11,15
73:18,23 74:1
74:2,3,7,8,17
74:20,21,22
75:9,18 76:6
80:8 83:24
91:14 95:19

96:17 99:17
100:7 101:17
104:12,19
105:4,7,9
106:1,2,14,18
107:2,3,4
110:10 111:22
112:23 113:21
115:12
**questioning**
111:24
**questionnaire**
42:3
**questions** 10:11
18:15 53:11
98:23 111:13
111:20 112:24
114:5
**quick** 111:9,9
**quit** 42:15
**quite** 39:7
55:19 56:17

**r**

**r** 2:1 9:23 120:3
120:3
**radha** 1:3 4:6
4:18 119:4
120:1 121:1
**ran** 108:11
**ratings** 116:2
**reach** 32:2 34:7
56:6

www.veritext.com Veritext Legal Solutions 800-556-8974

read 20:8 71:20 72:11,13,22 74:6,14 119:9 121:5

reading 38:13 42:11 44:6 117:18

real 111:9,9

reality 44:16 46:4

really 53:15 85:3 86:5 89:20

reason 11:12 43:20 52:2 57:23 58:6 80:10 105:4,9 119:11 120:6,9 120:12,15,18 120:21

reasons 49:1,10 57:11

recall 94:17 96:12 111:23

receipt 50:7 119:17

receive 15:11 29:10,20 60:2 60:4,4,17 61:23 62:14 84:23 92:11,22 94:14,18 95:19

received 15:4 17:11,24 36:20

41:23 42:14 58:16 60:6 84:24 93:21,22 94:21

receiver 61:7

receiving 83:9 95:16

reckless 105:16

record 4:2 5:11 6:9 11:8,15 22:6 41:7 47:23 50:12,14 50:15 54:11 65:20,24 66:3 66:6 71:19 72:12,22 74:14 95:7,9,10 97:8 106:23 116:1,1 116:16 117:14

recorded 1:11 4:4 27:15 54:13

recording 63:17

records 7:16 21:24

red 101:10

reduce 104:3

reduced 117:12

refer 8:4 44:4 67:20

reference 36:14

referenced 119:6

references 36:12

referred 31:7

referring 58:15

reflects 38:24 110:22

regard 87:20 88:19

regarding 7:20 90:11

regardless 43:8 86:12

reggie 2:3

regulations 107:22

related 12:22 13:4 14:11 36:8 62:15 95:17

relates 112:24 114:24

relative 117:20 117:21

relevant 53:9 64:20,24 79:20 81:6 91:9 103:10 106:9 106:14,18 107:1 109:3,8

relied 56:6

relies 29:23 30:4,8

remember 25:11 36:24

37:18 40:17 56:13,24 58:2 58:12 67:16 104:7,13

remembered 38:19

remotely 1:12 2:2

rename 20:3

repeat 11:11 43:14 55:24 75:9 106:2

repeated 101:9

repeatedly 101:14 102:2 102:14 105:21 106:5

rephrase 53:14 64:2 71:17 73:13,14 86:19 105:7

report 25:17 34:20 35:23 37:13 38:2 39:1 43:6 45:5 45:11 48:9 59:19 60:14,23 61:9,19,20 62:10,13 63:3 69:9 70:8,12 84:10 85:6 86:3,11 87:13 89:19 90:18 93:2 97:17,22

Case 1:24-cv-00155-TRM-MJD   Document 102-8   Filed 01/19/26   Page 142 of 153
PageID #: 2479

**[report - right]**

98:7 99:21
100:1,13,16
101:2,10,15,23
102:2,14 104:6
104:10 105:21
106:5 109:20
109:23 110:5
110:13
**reportable**
84:17 85:11
92:14,15,16
93:11
**reported** 27:14
28:5 48:23
62:17 78:20
79:5 85:9 87:4
87:24 88:3,11
90:13 98:17
109:14,17
110:5 117:11
**reporter** 4:13
4:23 9:21,24
11:24 14:23
15:2 22:20
30:1 43:14,17
55:23 66:10,13
66:17 72:10,19
74:6 83:3
117:4
**reporting** 30:7
43:4 45:22
46:19 47:4
58:17 60:1
68:5 69:4,13

79:22 91:16
100:3 114:15
114:24 115:6
**reports** 15:11
25:21 26:2
35:4,20 78:9
87:17,18
**represent** 4:18
**representative**
5:20 6:19,24
56:19
**representing**
4:12
**request** 95:16
95:20 96:8,9
**requested**
55:23 71:19
72:12,21 74:13
**require** 12:14
18:7 51:14
54:10 55:4
103:13
**required** 8:19
29:6 36:19
43:6 54:24
84:12 102:12
121:13
**requires** 14:9
**requiring**
55:16
**reserved**
117:19
**resign** 55:21
56:2

**respect** 32:13
80:2
**respectfully**
73:5
**respond** 97:3
**response** 41:22
41:23 42:2,9
42:12,13 74:20
**responses**
36:18
**responsibility**
105:23 106:7
107:3,6,11
113:2
**responsible**
83:9
**result** 59:1 60:1
60:17 82:23
**results** 23:18
23:20
**resumed** 6:8
**retained** 81:13
116:18
**retention** 54:21
55:1,18 81:19
81:21,22 82:6
82:17,18
**return** 119:13
119:16
**reveal** 36:22
**revenue** 102:23
103:18,23
105:21 106:5

**review** 7:7,10
7:16 21:20
22:2 45:15,15
59:3,11 83:16
109:19 119:7
**reviewed** 7:5
93:2,24
**reviewing** 37:6
59:2 93:6
**reviews** 18:10
**revised** 112:7
112:11 114:11
**rid** 28:19,23
**ridge** 2:23
**right** 6:11 7:1
12:19 13:21
14:5,5,8 15:10
15:13,21 17:8
18:4,22 20:19
20:19 21:1,3
25:19 34:8,12
38:16,23 39:14
39:17 40:14,18
42:24 49:18
57:7 58:8 59:5
59:10 61:18
62:4,13,18
63:16 64:11
65:24 66:1,8,9
68:21 70:23
72:20 76:20
77:21 79:16
83:6 90:5,15
94:16 95:1,4

www.veritext.com     Veritext Legal Solutions     800-556-8974

95:14 98:23
104:7 107:4
108:15 110:9
110:15,15
111:5 115:8
116:3
**rights** 52:10
54:14
**road** 21:18
**role** 51:17
**rules** 1:16
102:9
**run** 108:17
110:10,14,16

**s**

**s** 2:1 14:24 15:1
15:1 120:3
**sabotkoska**
37:8
**safe** 17:2
**safely** 8:9 12:8
26:15 52:9,18
**safer** 53:23
**safety** 7:16
8:18,20 9:3,15
10:3,5,7,8,15
10:23 11:14
12:7 13:4
14:10,13 15:23
17:22 18:6,13
18:18 20:20,22
21:7,20 25:18
25:23 29:14

46:20 59:3,11
70:8,12 97:18
97:23 103:19
103:21 109:1,3
**sake** 77:14
**sample** 56:19
**sat** 63:3,10
98:22 101:6
**satisfactory**
28:18 30:17
**saw** 25:22
80:22 93:2
**saying** 10:15
75:24 76:3
93:7
**says** 37:10 38:1
39:15 42:3,8
44:6,6,7,10
47:7,15 60:12
61:6 62:9
82:22 83:6
85:14 100:18
101:4 112:7,9
112:11
**scenario** 99:17
99:18,19
**scenarios** 35:11
**scene** 92:19
108:1
**score** 22:16,18
23:5,16 24:1,4
24:6 26:5,13
26:21 27:3,12
27:21 28:4,8

28:18 29:5,15
30:5,10,17
109:1
**scores** 24:14
25:4,12,13,22
26:20 109:5
**scratching**
52:19,21 54:13
57:18
**screen** 65:16
**screening** 84:6
**screenings** 84:2
**scroll** 39:21
**seal** 118:3
**seat** 52:5
**sec** 96:6
**second** 13:12
19:2 79:1 89:3
89:5,14 100:7
111:14
**see** 16:6 19:3,5
19:16 24:4,19
29:7 30:5 32:1
35:22 39:20,23
40:2 41:21,22
42:2,6 44:2
58:12 59:6,9
65:5,11 66:14
81:6 87:16
91:9 97:12
111:17 112:4,6
112:6,7 114:14
**seeing** 35:5

**seen** 51:24 52:3
53:1 57:12,16
57:18 59:12
95:24 96:5,17
96:22
**sees** 72:6
106:12
**sending** 25:16
25:20
**sense** 46:1
**sent** 12:14,22
14:17 30:24
41:23 119:14
**separate** 58:17
113:12
**separately**
97:11
**september**
112:8,12
114:12
**series** 41:2
**serious** 97:18
97:23 98:1
**service** 7:17
17:1 18:14
107:14,22
**session** 23:19
27:13
**set** 27:8 110:10
113:9 118:1
**sets** 102:9
**seven** 97:15
**several** 52:23
57:8 111:13

www.veritext.com
Veritext Legal Solutions
800-556-8974

| | | | |
|---|---|---|---|
| 112:24 | significant | 67:10 70:11 | standard |
| **severity** 43:8 | 103:18,22 | 77:23 83:3 | 101:20 |
| 86:12 | 105:20 106:4 | 89:9 94:7 | **standards** |
| **share** 19:2 37:1 | **signing** 117:18 | 116:7 | 21:16 |
| 59:7 95:23 | **signup** 19:22 | **sort** 19:16 | **start** 10:21 |
| 96:20 | **similarly** 81:1 | 24:16 25:2 | 77:20 83:4 |
| **shared** 44:1 | **simple** 12:12 | 50:20 71:9 | **started** 33:7,7 |
| **sheet** 19:22 | **simpler** 12:5 | 110:9 | 33:11 55:11 |
| 24:20 119:11 | **simply** 51:23 | **sounds** 50:10 | 58:18 |
| **shipped** 51:9 | **sir** 28:3 103:1 | **space** 19:14 | **starting** 4:15 |
| **shippers** 95:1 | 104:13 | **speak** 7:12 | **starts** 37:2 |
| **shorthand** | **sit** 80:10 | 12:19 30:19 | **state** 5:11 |
| 117:3 | **sitting** 27:20 | 85:8 93:1 | 57:15 117:4 |
| **show** 31:16 | 52:4 57:13 | **specific** 47:17 | **stated** 92:23 |
| 35:12 65:4,5 | 105:3,8 | 56:5 57:22 | 93:3 |
| 66:5 71:24 | **situation** 43:22 | **specifically** | **statement** |
| 74:23 85:1 | 46:2 86:4 | 79:13 82:16 | 59:14 90:1 |
| 93:23 94:10 | **situations** | 86:3 | **statements** |
| 101:8 111:16 | 12:14 | **specified** | 90:18 92:24 |
| **showed** 79:10 | **six** 44:4 97:15 | 117:17 | 93:4 113:10 |
| **showing** 65:21 | **slide** 34:6 44:17 | **speculation** | **states** 1:1,18 |
| 80:2 | **slow** 83:4 | 54:6 75:8 88:6 | 67:12 86:2 |
| **shown** 94:11 | **slows** 80:16 | **spell** 9:22 14:23 | **stating** 22:15 |
| **shows** 80:13 | **solutions** 4:12 | **spent** 114:10 | 38:12 |
| **shunnarah** 2:3 | 116:20 119:23 | **split** 79:1 89:2 | **station** 95:2 |
| **sic** 20:20 | **somebody** 13:3 | **spoken** 30:16 | **stay** 116:14 |
| **sign** 19:23 70:1 | 25:3,17 38:20 | **spot** 89:2 | **stenographic...** |
| 119:12 | 81:3 | **spreadsheet** | 117:11 |
| **signature** | **soon** 43:7 | 24:16 | **steps** 101:13 |
| 118:10 | **sorry** 5:10 11:1 | **stamp** 20:9,9 | **stop** 107:24 |
| **signed** 50:6 | 12:3 15:7 | 112:3 | **stopping** 49:12 |
| 69:16 80:24 | 17:16 30:1 | **stand** 50:11 | 94:3 |
| 119:19 | 31:8 45:8 49:8 | 95:6 116:12 | **street** 2:11 |
| | 58:9 66:12 | | |

www.veritext.com            Veritext Legal Solutions            800-556-8974

stretch 49:13
studies 56:5
submitted
  38:18 42:3,8
subscribed
  121:14
subsequent
  93:13
successful
  21:16
suite 2:4,12
supervise 11:21
supervision 7:8
  7:21 22:4,12
  61:24 62:15
  102:2 104:23
supposed 38:16
  52:17
sure 8:16 11:12
  12:3,8 13:17
  14:4 16:9
  26:15 29:17,19
  34:4 35:18,20
  36:15 39:6
  41:14,19 45:10
  46:8,11 49:14
  50:3,6 51:4,5
  52:16 53:9
  55:7,12,16,19
  56:20 64:16,19
  65:7 67:19
  73:5 75:17
  76:1,10 80:7
  80:10 82:11

83:6 86:21
87:24 93:24
99:16 102:16
103:10 106:8
111:15 112:4
112:21
survey 56:12
  56:14
sustained 92:17
sworn 5:2,5
  117:8 121:14
system 13:17
  22:24 28:19
  33:18 34:20
  35:15 64:3
  65:20 66:3

t

t 120:3,3
take 12:6 21:12
  32:13 50:9
  51:10 55:9
  94:4 95:4
  101:13 105:23
  106:7 107:6,11
taken 1:12,20
  113:2 117:16
takes 46:4
talk 7:13 8:5
  11:7 13:14
  16:19 18:14
  24:22 35:4
  47:2 97:2
  113:6

talked 9:16,19
  10:17,23 11:13
  14:18 67:8
  76:17
talking 11:15
  11:19 13:14,18
  15:5 16:7
  48:20 88:22
talks 82:19
taught 47:10
  47:12
team 16:4,9
technical 5:1
  6:7
technically
  41:11
technology
  1:12
tell 14:3 16:16
  30:9 31:13
  36:23 38:10
  39:2 41:1
  47:17,22 56:21
  73:21 74:11
  79:9 81:1
  105:3,8
telling 38:9
  48:6 105:5
tells 78:12
temperature
  55:9
tennessee 1:1
  2:4,14 4:9
  110:6

terminal 18:8
terminated
  104:9
termination
  63:5,8
terms 85:8
  114:14
tested 84:17
  89:6,14 90:9
  91:24 92:9
  93:9
testified 5:6,23
  5:24 6:5,23
  44:14 76:6
  107:24
testify 5:13
  69:23 117:8
testifying 6:13
testimony 4:5
  27:24 44:21
  69:11 71:16
  100:20 108:6
  114:9 116:18
  117:14 119:9
  119:17 121:8
testing 84:11
tests 83:21
text 79:14 80:4
thank 4:17,22
  5:9 6:11 7:3
  9:24 15:2
  20:13,16 41:10
  41:12 43:17
  50:10,18 77:6

111:5 112:22 115:8 116:3,22
**thanks** 5:13
**thenshaw** 2:5
**thing** 50:19,19 74:10,11 75:13 77:16 109:12
**things** 19:10 21:14 52:23 67:8 68:5 79:20 95:15 111:9 115:24 116:10
**think** 17:21 31:13 44:14 47:21 48:3,21 52:13 56:14,16 64:20,23 65:1 65:18 66:15 68:13 69:12 71:22 73:1,19 74:21 76:11 81:5 82:5,13 86:8 88:13,21 91:15 93:18 94:16 98:20 101:12 103:9 106:14,17,20 106:24 107:10 109:8,12 111:21
**third** 61:2,18 90:8,11

**thought** 82:7 85:18
**threshold** 27:13 28:4 63:23 64:1
**thresholds** 23:16 24:2 25:14,15,22 26:22 27:8
**ticket** 92:20
**tim** 2:5 4:17 20:8 41:7 49:11 67:3 94:2
**time** 1:24 8:1 14:18 16:7,18 22:14 24:9 25:3,6 26:16 33:6,23 34:13 37:18 38:18 39:7 40:2 42:24 46:20 49:4 51:23 52:20 58:18 62:19 63:16 72:11 74:7 78:5,22 79:2 81:23 82:1 96:2 100:1 108:17,22,23 108:23 109:22 110:1,7,12,13 110:14,16,17 111:3 112:18

114:11 117:17 119:18
**timeframe** 16:8 27:3 119:8
**timeline** 39:22
**times** 6:4,4 20:24 100:6,9
**tn** 2:14
**today** 4:13 5:14 11:2 14:12 27:20 40:22 64:5 80:11 97:2 105:3,8 113:1 116:7
**today's** 116:18
**together** 54:21
**told** 38:11 74:2 85:24 92:4 113:13,14
**tolerate** 68:8
**tolerated** 62:23 81:16
**top** 40:18 67:16 93:18 104:8
**topless** 52:22
**toward** 13:18
**towed** 85:10
**towing** 92:17
**train** 8:15 9:7 16:24 17:1 21:11,17
**trained** 9:10 16:21 63:11

**trainee** 42:15
**training** 7:21 9:12 15:24 17:12,13,21,24 18:4 19:1,7,8 19:11,14,15 20:5 22:19,21 23:19,22 27:13 28:5 42:16 60:2,18 61:24 62:15 80:23 93:21,22 94:15 94:19 101:7
**trainings** 18:15 19:17,21 21:1 21:3
**transcript** 117:10,19 119:6,19 121:5 121:8
**transcription** 117:13
**treatment** 92:19
**trial** 2:3
**trigger** 63:5,7
**trouble** 47:24
**truck** 23:1,3 33:20 35:6 42:16 51:21 52:4,9,17 57:13 63:18 71:10 85:9 99:3

www.veritext.com          Veritext Legal Solutions          800-556-8974
Case 1:24-cv-00155-TRM-MJD    Document 102-8    Filed 01/19/26    Page 147 of 153 PageID #: 2484

**trucking** 1:7
2:18,21 4:5,7
4:21 5:14 7:22
7:24 8:8 10:19
21:5 101:11,13
102:20 103:5
104:9 105:23
106:7 107:6,13
107:21 119:4,5
120:1,2,24
121:1,2,4,12
**trucks** 53:20
55:14 57:20
**true** 70:9,11
78:16 79:6
80:1 85:3,20
85:23 86:16,24
87:8 100:3
117:14 121:8
**trust** 12:12
**trusted** 100:12
**truth** 105:6,15
117:8
**truthful** 91:12
99:12,15,22
**truthfulness**
105:5
**try** 13:9,13
53:13
**turn** 102:12
103:14
**turning** 13:7
**twice** 18:7
20:18,19

**two** 6:6,14
20:24 23:16
24:1 25:14
60:20 69:5
81:6 82:2 83:1
83:8 91:8
110:11
**tx** 119:15
**type** 75:20 86:4
**types** 11:9 68:7
68:9 70:15
**typewriting**
117:12

**u**

**u** 15:1,1
**uh** 7:2 19:12
34:9 37:9
38:15 41:6
42:1 44:5 59:8
65:12 94:12
95:21 110:8
111:19 115:20
**umm** 16:4
34:22
**unable** 35:16
**uncommon**
37:17
**uncover** 33:4
34:18 54:24
**under** 23:17
27:17 61:12,16
66:6 67:12,24
70:7,12 116:7

117:13
**understand**
5:14 8:5 10:2
10:24 29:7,17
34:4 35:1,18
46:8 48:20
50:4 51:4
52:14 53:12,12
53:16 54:9
64:16 65:7
73:11,17 74:2
74:3,8,9,17
76:1 80:7
99:16 106:17
108:10 110:4
**understood**
49:24 70:2
**unidentified**
10:3
**united** 1:1,18
**unpack** 68:12
**unreported**
43:10 44:7
45:19 46:3
48:6 58:22
98:16
**ups** 22:19
**use** 12:8 22:5
22:24 29:6
53:16,19 75:23
76:4
**used** 29:3
119:19

**using** 53:8
63:18 76:14

**v**

**v** 119:4 120:1
121:1
**various** 49:10
**vary** 46:13,21
46:24 47:16
**vehicle** 92:18
**verbal** 21:13
27:14
**verbiage** 67:17
**verifications**
40:10
**verify** 30:17
70:2 119:9
**veritext** 4:12
116:20 119:14
119:23
**veritext.com.**
119:15
**version** 86:15
86:16,22,23
114:20,21,22
**versus** 4:7
**victim** 91:1
**victoria** 37:8
39:2
**video** 1:11 4:2
4:4 31:11,24
65:10,15 79:11
80:16,22 93:6
113:11

www.veritext.com Veritext Legal Solutions 800-556-8974

**videographer** 4:1,12,22 5:3 6:9 50:11,15 95:6,10 116:12
**videos** 31:4,11 31:15 32:5 36:4,7 65:2,9 65:15 109:1,4 113:9
**view** 69:3 97:17 97:22
**violate** 52:10 54:14
**violated** 78:21
**violating** 100:2
**violation** 59:22 60:22 61:20 62:11 69:9 97:18,23 98:1 100:4 107:22
**violations** 79:19 103:19 103:22 104:17
**virginia** 2:22
**volunteered** 80:19
**vs** 1:5

**w**

**wait** 34:4
**want** 16:16 21:15,17 33:4 47:21 48:9,13 48:23 51:24
53:1 57:12,15 57:18 73:6 76:1,2,9,10 94:9,10 112:4 115:3
**wanted** 33:13 50:19 59:9 112:21
**wanting** 52:3
**wants** 34:18 105:3,8
**warning** 21:13 58:16 82:3,5 84:21 95:3
**watching** 76:18
**watkins** 1:14 4:13 117:3 118:13
**way** 13:14 29:12 72:6 76:6 94:24 97:24 103:17 103:21 106:12 116:6
**we've** 49:12 94:2 113:9 114:10
**webcam** 34:8
**weeds** 76:2
**weigh** 95:2
**weight** 19:10 94:19,21,23
**welcome** 116:5

**went** 32:4 67:1
**whereof** 118:1
**white** 2:3,10 3:8 4:20 8:11 8:23 9:5 11:22 12:9 13:5,10 13:15 14:15 15:17 20:8,13 20:16 21:8 23:6 26:9,17 27:5,23 28:12 28:21 31:2,6 34:16 35:8 39:4 40:8,15 41:7,10,12 44:18,21 46:6 46:15,22 48:1 48:16 49:11,16 50:10 52:11 53:11 54:1,5 54:16 58:1,20 61:4,14 62:3 62:24 64:14 67:2,14 69:10 69:20 70:19 71:2,15,21 72:5,9,14,23 73:4,9 74:1,10 74:15 75:2,7 75:15 76:5 77:3,6,16,19 78:2,18,23 80:6,14 81:11 86:7,18 87:1

87:10 88:5,12 88:20 89:8,10 89:17,23 90:4 90:14 91:2,13 93:15 94:2,7,9 96:10 97:3,9 97:11,19 98:18 99:4 100:19 101:16 102:4 103:8 104:11 104:18 105:11 105:17,24 106:11,19 109:9,15 110:1 111:8,11 113:17 114:4 114:24 115:3 119:1
**willing** 88:17
**wish** 33:24
**witness** 3:3 5:2 6:20,24 9:1,7 9:23 12:11 14:17,24 15:19 22:21 23:8 26:10,19 27:7 28:14,23 31:4 34:17 35:10 39:6 40:9,17 41:15 43:16 44:24 46:8,17 46:24 48:2,17 52:13 53:15 54:7,18 55:24

www.veritext.com Veritext Legal Solutions 800-556-8974

**[witness - zoom]**

56:2 58:2,21 61:5,16 62:4 63:2 64:16 67:16 69:12 70:21 71:4,17 71:22 73:14 75:9,16 78:24 80:7,15 83:6 86:8,19 87:2 87:11 88:7,13 88:21 89:24 90:5,15 91:3 91:15 94:12 96:16 97:20 98:20 99:5 100:21 101:18 102:5 103:9 104:13,20 105:12,18 106:2,13,20 109:10,17 115:5 116:5 117:7,18 118:1 119:8,10,12,18

**word** 77:3 88:17

**worded** 86:9

**words** 51:5

**work** 16:22 34:14 49:24 50:5

**worked** 11:4 37:14 39:3

**working** 16:18 51:23 52:1,3

**works** 25:6 29:14 30:14

**worrtham** 1:7

**wortham** 2:18 4:21 8:1 9:10 11:18 13:1 14:18 15:5,24 17:8 18:17 26:15 30:13 31:16 32:13 33:12 36:10 38:8,24 39:12 49:20 57:22 58:10 62:23 65:6,10,20 69:4 70:16 71:1,13 78:9 78:12 79:4 80:18 81:7,16 82:3 83:13 84:9,22 87:4 88:3 89:5,13 90:13,24 91:3 91:6,11 92:4,8 92:21 93:7 98:17 100:15 101:1,14 102:12,19 104:2 107:21 107:24 110:10 111:21,23 112:13 113:13

114:13

**wortham's** 7:10,20 14:14 23:1 26:5,13 27:3,21 28:8 28:18 30:17 36:4 62:19 64:8 80:4,12 86:15,22 88:17 89:19 90:7 91:1 93:13 98:11 99:3,17 101:9 104:23 105:4,9 107:7 107:11,14 113:3,7,10,18 113:22 115:9 115:13

**write** 22:19 23:23 27:14 45:24 47:3 63:11

**writing** 44:16

**written** 12:21 46:12,14,21 81:17

**wrong** 73:22 82:8

**wrote** 79:13

| x |
| --- |

**x** 3:1

| y |
| --- |

**y** 9:23

**yeah** 28:15 37:24 40:17 41:19 49:9 72:18 75:12 78:3 91:21 93:24 94:6

**year** 18:7 20:24 21:24 22:2 62:21 82:14 102:20 112:14

**years** 82:2 83:1 83:8

**yurga** 37:8 39:1

| z |
| --- |

**zoom** 1:12

www.veritext.com                    Veritext Legal Solutions                    800-556-8974

Federal Rules of Civil Procedure

Rule 30

(e) Review By the Witness; Changes.

(1) Review; Statement of Changes. On request by the deponent or a party before the deposition is completed, the deponent must be allowed 30 days after being notified by the officer that the transcript or recording is available in which:

(A) to review the transcript or recording; and

(B) if there are changes in form or substance, to sign a statement listing the changes and the reasons for making them.

(2) Changes Indicated in the Officer's Certificate. The officer must note in the certificate prescribed by Rule 30(f)(1) whether a review was requested and, if so, must attach any changes the deponent makes during the 30-day period.

DISCLAIMER: THE FOREGOING FEDERAL PROCEDURE RULES ARE PROVIDED FOR INFORMATIONAL PURPOSES ONLY. THE ABOVE RULES ARE CURRENT AS OF APRIL 1, 2019. PLEASE REFER TO THE APPLICABLE FEDERAL RULES OF CIVIL PROCEDURE FOR UP-TO-DATE INFORMATION.

VERITEXT LEGAL SOLUTIONS

COMPANY CERTIFICATE AND DISCLOSURE STATEMENT

Veritext Legal Solutions represents that the foregoing transcript is a true, correct and complete transcript of the colloquies, questions and answers as submitted by the court reporter. Veritext Legal Solutions further represents that the attached exhibits, if any, are true, correct and complete documents as submitted by the court reporter and/or attorneys in relation to this deposition and that the documents were processed in accordance with our litigation support and production standards.

Veritext Legal Solutions is committed to maintaining the confidentiality of client and witness information, in accordance with the regulations promulgated under the Health Insurance Portability and Accountability Act (HIPAA), as amended with respect to protected health information and the Gramm-Leach-Bliley Act, as amended, with respect to Personally Identifiable Information (PII). Physical transcripts and exhibits are managed under strict facility and personnel access controls. Electronic files of documents are stored in encrypted form and are transmitted in an encrypted

fashion to authenticated parties who are permitted to access the material. Our data is hosted in a Tier 4 SSAE 16 certified facility.

Veritext Legal Solutions complies with all federal and State regulations with respect to the provision of court reporting services, and maintains its neutrality and independence regardless of relationship or the financial outcome of any litigation. Veritext requires adherence to the foregoing professional and ethical standards from all of its subcontractors in their independent contractor agreements.

Inquiries about Veritext Legal Solutions' confidentiality and security policies and practices should be directed to Veritext's Client Services Associates indicated on the cover of this document or at www.veritext.com.