UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| RADHA BOLIVAR, *et al.*, | ) | |
|---|---|---|
| | ) | Case No. 1:24-cv-155 |
| *Plaintiffs*, | ) | |
| | ) | Judge Travis R. McDonough |
| v. | ) | |
| | ) | Magistrate Judge Michael J. Dumitru |
| HMD Trucking, Inc., *et al.*, | ) | |
| | ) | |
| *Defendants*. | ) | |

**MEMORANDUM AND ORDER**

Before the Court is Defendants HMD Trucking, Inc. and Antonio Wortham's motion for partial summary judgment (Doc. 74). For the following reasons, the Court will **GRANT** Defendants' motion for partial summary judgment (*id.*).

**I.  BACKGROUND**

    **A.  Factual Background**

This action arises from a motor vehicle collision that occurred on March 1, 2023. On that day, both Defendant Antonio Wortham ("Wortham") and Plaintiff Radha Bolivar ("Bolivar") were driving westbound on Interstate 24. (Doc. 75, at 2; Doc. 87, at 6.) Plaintiff Bolivar had one passenger in his vehicle, Plaintiff Angelica Goatache. (Doc. 75, at 2.) Wortham moved to the left lane to pass Bolivar. (*Id.*) Later, Wortham attempted to move back to the right lane, but collided with Bolivar. (Doc. 75, at 2; Doc. 87, at 6.) Bolivar sought medical care after the accident. (Doc. 75, at 3; Doc. 87, at 6.)

Wortham began working for HMD Trucking Inc. ("HMD") in October 2021. (Doc. 74-5, at 2.) Before hiring Wortham, HMD conducted background checks on him and communicated

with his previous employers.  (Doc. 102-1, at 45–48, 60–68.)  Wortham had one accident in 2020, prior to working at HMD, where "a motor vehicle hit [Wortham's] trailer tire, and [the other driver] took 100 percent fault in the accident."  (Doc. 74-1, at 8.)  The company Wortham worked for during the 2020 accident continued to employ him after this accident and noted to HMD that he passed all DOT-regulated testing for drugs and alcohol.  (Doc. 102-1, at 67.)

While employed at HMD, Wortham had four incidents that caused damage to his vehicle.  Three of these incidents did not involve any other vehicle but caused damage to Wortham's vehicle.  (Doc. 74-5, at 5–8; Doc. 102-7, at 1.)  The first incident occurred when Wortham was backing in to a dock at a low speed and dented his air deflector.  (Doc. 74-5, at 5; Doc. 102-7, at 1.)  His second incident happened when he was parking his vehicle and scratched his rim.  (Doc. 74-5, at 6; Doc. 102-7, at 1.)  The third incident occurred when another vehicle struck Wortham's hood, and there was no fault attributed to Wortham.  (Doc. 74-5, at 7; Doc. 102-7, at 1.)  The fourth incident caused damage to the plastic cover on the driver's side step—air fairing—and resulted from road debris.  (Doc. 74-5, at 8; Doc. 102-7, at 1.)  Wortham did not report these incidents immediately to HMD.  (Doc. 74-1, at 28–29; Doc. 74-4, at 22.)  After these four incidents, in August 2022, Wortham completed an in-person safety training at HMD's orientation room.  (Doc. 102-7, at 1; Doc. 74-6, at 7–10; Doc. 90-4, at 74–81.)  In August 2023, Wortham completed an online "space management" training through Tenstreet.  (Doc. 102-5, at 6; Doc. 74-6, at 7–10; Doc. 90-4, at 74–81).

Vehicles operated under HMD contain a recording device that have four lenses; one lens faces the driver's sleeping area, and another lens faces the driver when in the driving position.  (Doc. 90-4, at 20–21.)  To further monitor its drivers, HMD vehicles have a real-time monitoring

system that analyzes drivers' safety, and HMD is provided with a monthly report with drivers' safety metrics. (*See* Doc. 74-5, at 3–4.)

B. **Procedural Background**

Plaintiffs filed suit on February 26, 2024, in the Circuit Court for Marion County, Tennessee. (Doc. 1-2, at 3.) Defendants timely removed the case to this Court. (*See* Doc. 1.) In their complaint, Plaintiffs assert claims against HMD for direct negligence—entrustment, hiring, supervision, retention, and training. (Doc. 1-2, at 5–8.) Plaintiffs also assert negligence claims against Wortham. (*Id.* at 8–10.) Plaintiffs seek punitive damages against both HMD and Wortham. (*Id.* at 10.) On December 9, 2025, Defendants filed a motion for partial summary judgment on Plaintiffs' punitive damages claims against both Defendants and Plaintiffs' direct negligence claims against HMD. (Doc. 74.) Defendant's motion for partial summary judgment is ripe for the Court's review.

II. **STANDARD OF LAW**

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court views the evidence in the light most favorable to the nonmoving party and makes all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis Inc.*, 253 F.3d 900, 907 (6th Cir. 2001).

The moving party bears the burden of demonstrating that there is no genuine dispute as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Leary v. Daeschner*, 349 F.3d 888, 897 (6th Cir. 2003). The moving party may meet this burden either by affirmatively producing evidence establishing that there is no genuine issue of material fact or by pointing out the absence of support in the record for the nonmoving party's case. *Celotex*, 477 U.S. at 325.

Once the movant has discharged this burden, the nonmoving party can no longer rest upon the allegations in the pleadings; rather, it must point to specific facts supported by evidence in the record demonstrating that there is a genuine issue for trial. *Chao v. Hall Holding Co., Inc.*, 285 F.3d 415, 424 (6th Cir. 2002).

At summary judgment, the Court may not weigh the evidence; its role is limited to determining whether the record contains sufficient evidence from which a jury could reasonably find for the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). A mere scintilla of evidence is not enough; the Court must determine whether a fair-minded jury could return a verdict in favor of the non-movant based on the record. *Id.* at 251–52; *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994). If not, the Court must grant summary judgment. *Celotex*, 477 U.S. at 323.

## III. ANALYSIS

### A. Direct Negligence Claims Against HMD

Defendants argue that Plaintiffs' "direct negligence claims against HMD, claiming that HMD negligently hired, trained, retained, entrusted, and supervised Mr. Wortham" fail as a matter of law because "Plaintiffs cannot establish any of the necessary requirements for the direct claims of negligence." (Doc. 75, at 15–16.) Plaintiffs contend that there are questions of material fact as to whether HMD negligently hired, trained, retained, supervised, and entrusted Wortham. (*See* Doc. 87, at 19–29.)

As an initial matter, Rule 56 of the Federal Rules of Civil Procedure requires a party asserting a fact to "support the assertion by: (A) citing to particular parts of materials in the record . . . ." Fed. R. Civ. P. 56(c)(1); *Brown v. FCA US LLC*, No. 25-1405, 2025 WL 3657226, at *4 (6th Cir. Dec. 17, 2025) ("the non-moving party, must 'cite specific portions of the record'

to show that a material dispute of fact exists." (citing U.*S. Structures, Inc. v. J.P. Structures, Inc.*, 130 F.3d 1185, 1191 (6th Cir. 1997)). In opposing Defendants' motion for summary judgment, Plaintiffs fail to cite evidence that establishes the facts they are asserting or generally cite to exhibits that do not correspond to the facts they are asserting. For example, Plaintiffs state, "Yet HMD's corporate representative testified: 'I cannot identify any investigation into the Publix crash.'" (Doc. 87, at 20.) Yet, Plaintiffs provide no citation to admissible evidence to support this fact or even provide the name of the person who allegedly made such a statement. (*See id.*) Plaintiffs also claim that Wortham had a violation for improper backing in July 2019 and cites "Alabama MVR (Exhibit E)." (*Id.* at 21.) However, the document listed as "Exhibit E" does not show any such violation, and even states, in what appears to be the section where such violations would be noted, that there is "No Incident History to Report". (Doc. 102-2, at 1.) Conclusory representations unsupported by evidence fail to demonstrate that disputes of material fact remain.

1. **Negligent Entrustment**

Defendants argue that Plaintiffs' negligent-entrustment claim fails because there is no evidence suggesting that Wortham was an incompetent driver or that HMD had knowledge of any incompetence. (Doc. 75, at 19–21.) Plaintiffs respond that Wortham's crash prior to his hiring at HMD and his failures to report four incidents while employed at HMD made him unfit to operate HMD's vehicles.[1] (Doc. 87, at 27.)

In Tennessee, negligent-entrustment claims consist of four elements: "(1) an entrustment of a chattel, (2) to a person incompetent to use it, (3) with knowledge that the person is

---

[1] Plaintiffs also argue that HMD's federal safety scores should have made it aware of that there were elevated risks for its drivers generally, which put HMD on notice not to entrust its drivers with vehicles. (*See* Doc. 87, at 27.) However, negligent-entrustment claims are based on the entrustor's knowledge about the entrustee. *Harper v. Churn*, 83 S.W.3d 142, 146 (Tenn. Ct. App. 2001). An entrustor's federal safety scores are not the type of information that can be attributed to an individual entrustee's competency for a negligent-entrustment claim.

incompetent, and (4) that is the proximate cause of injury or damage to another." *Harper v. Churn*, 83 S.W.3d 142, 146 (Tenn. Ct. App. 2001). Negligent-entrustment is based on the entrustor's "direct negligence in entrusting the chattel to an incompetent user[,]" and "is committed at the moment when control of a chattel is relinquished by an entrustor to an incompetent user." *West v. E. Tenn. Pioneer Oil Co.*, 172 S.W.3d 545, 555 (Tenn. 2005) (citing *Ali v. Fisher*, 145 S.W.3d 557, 564 (Tenn. 2004)); *Rimer v. City of Collegedale, Tenn.*, 835 S.W.2d 22, 24 (Tenn. Ct. App. 1992) ("it must be affirmatively shown that the entruster had at that time knowledge of such facts and circumstances relating to the incompetency of the entrustee to operate the motor vehicle as would charge the entruster with knowledge of such incompetency"). Tennessee courts will find negligent-entrustment when an entrustor had knowledge that an entrustee was "addicted to habits of intoxication" and still entrusted the chattel to the entrustee. *V.L. Nicholson Const. Co. v. Lane*, 150 S.W.2d 1069, 1070 (Tenn. 1941). However, if there is no evidence that shows the entrustor had knowledge that the driver was incompetent, the entrustor cannot be held liable for negligent-entrustment. *See Hamrick v. Spring City Motor Co.*, 708 S.W.2d 383, 386 (Tenn. 1986); *Rimer*, 835 S.W. 2d at 25.

In this case, there is no evidence in the record from which a reasonable jury could conclude that HMD knew Worthman was incompetent. Wortham's 2020 accident was an accident in which "a motor vehicle hit [Wortham's] trailer tire, and [the other driver] took 100 percent fault in the accident." (Doc. 74-1, at 8.) Furthermore, Wortham's employer at the time of the 2020 accident noted that Wortham passed all DOT-regulated testing for drugs and alcohol. (Doc. 102-1, at 67.) One accident for which another driver was at fault is insufficient to create a genuine issue of material fact as to whether an entrustee is incompetent.

Plaintiffs also argue that Wortham's failure to report four incidents proves he was "unfit[]". (Doc. 87, at 27.) Three of these incidents were minor incidents: (1) denting an air reflector while backing up; (2) scratching a rim while parking; and (3) damaging a plastic cover to a step by hitting road debris. (Doc. 74-5, at 5–8; Doc. 102-7, at 1.) The fourth incident occurred when another vehicle struck Wortham's hood, and there was no fault attributed to Wortham. (Doc. 74-5, at 7; Doc. 102-7, at 1.) These incidents are not the type on which a reasonable jury could base a finding of incompetency.

Plaintiffs' next argument, that Wortham's failure to immediately report these incidents makes him dishonest and, thus, incompetent, is also unavailing. Even viewing in the light most favorable to the Plaintiffs, dishonesty about minor incidents does not make someone incompetent as a driver. Plaintiffs fail to cite—and the Court cannot find—any precedent suggesting dishonesty about minor vehicle incidents makes a driver incompetent. Accordingly, there is insufficient evidence from which a reasonable jury could conclude that Wortham was an incompetent driver, and thus, insufficient evidence from which a reasonable jury could conclude that HMD knew he was an incompetent driver. As a result, the Court will grant HMD's motion for summary judgment on Plaintiffs' claim for negligent-entrustment.

### 2. Negligent Hiring, Supervision, Retention, or Training

Defendants argue that Plaintiffs have not established "any of the necessary requirements for the direct claims of negligence." (Doc. 75, at 16.) Plaintiffs contend that HMD was negligent because: (1) it did not conduct an adequate background check on Wortham; (2) it retained Wortham after he had five incidents; (3) it allegedly falsified training records; and (4) it did not adequately supervise Wortham. (*See* Doc. 87, at 20–26.)

In Tennessee, a negligence claim requires proof of the following elements: "(1) a duty of care owed by the defendant to the plaintiff; (2) conduct by the defendant falling below the

7
Case 1:24-cv-00155-TRM-MJD   Document 104   Filed 02/17/26   Page 7 of 12
PageID #: 2500

standard of care amounting to a breach of that duty; (3) an injury or loss; (4) causation in fact; and (5) proximate or legal cause." *Hale v. Ostrow*, 166 S.W.3d 713, 716 (Tenn. 2005). Claims for negligent training, hiring, supervision, or retention of an employee requires a plaintiff to establish, "in addition to the elements of a negligence claim, that the employer had knowledge of the employee's unfitness for the job." *See Binns v. Trader Joe's East, Inc.*, 690 S.W.3d 241, 254 (Tenn. 2024) (citation modified).

As discussed above in Part II.A.I, there is insufficient evidence from which a reasonable jury could conclude that Wortham was an incompetent driver, and thus, Wortham was fit for the job. As a result, there is also insufficient evidence from which a reasonable jury could conclude that HMD knew Wortham was unfit for the job. Accordingly, Plaintiffs' negligent hiring, supervision, retention, and training claims also fail.

Additionally, Plaintiffs' argument that HMD negligently hired Wortham because it did not conduct an adequate background check is contradicted by the evidence, which shows that HMD ran several background checks on Wortham and communicated with Wortham's previous employers to get information about Wortham's work history. (Doc. 102-1, at 45–48, 60–68.) There was nothing in the background checks that would give an employer pause to hire Wortham. (*See id.*) Also, the evidence does not support Plaintiffs' argument that HMD should have terminated or enhanced its monitoring of Wortham after his four incidents and discovery that he did not promptly report those incidents, and thus, Plaintiffs negligent retention and supervision claims fail. Plaintiffs' assertions that "HMD negligently trained Wortham by falsifying training records"[2] because there are two different dates cited for trainings (Doc. 87, at

---

[2] Plaintiffs cite "Exhibit G" for the HMD training records from August 2022 training, but "Exhibit G" appears to be an internal system for HMD to keep track of communications with Wortham and does not note any trainings completed by Wortham. (*See* Doc. 102-4). Although

23) is also unsupported by the evidence. Documents produced by HMD show that Wortham attended two separate trainings—not one—an in-person training and an online training through Tenstreet. (Doc. 74-4, at 11; Doc. 74-5, at 9; Doc. 74-6, at 7–10; Doc. 90-4, at 74–81). There is no evidence in the record from which a reasonable jury could conclude that HMD was negligent in its hiring, supervision, retention, or training of Wortham. Accordingly, the Court will grant HMD's motion for summary judgment on Plaintiffs' direct negligence claims, and those claims against HMD will be dismissed.

### B. Punitive Damages

In Tennessee, punitive damages are appropriate only if the claimant can show, by clear and convincing evidence, that the opposing party engaged in "intentional, fraudulent, malicious, or reckless conduct." *Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 901 (Tenn. 1992). Punitive damages are only to be awarded "in the most egregious of cases." *Id.* "A person acts recklessly when the person is aware of, but consciously disregards, a substantial and unjustifiable risk of such a nature that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances." *Id.*

#### 1. Punitive Damages Against Wortham

Defendants argue that Plaintiffs cannot recover punitive damages from Wortham because his action of "not see[ing] Plaintiffs' vehicle prior to the lane change" was a "mistake or ordinary negligence," which they argue does not satisfy the requirements for a punitive damages award. (Doc. 75, at 25.) Plaintiffs argue that Wortham "ha[s] a pattern of dishonesty and concealment . . . ," and "a driver who repeatedly hides collisions and misrepresents fault is a driver who knows his conduct creates risks . . . ." (Doc. 87, at 11–12.)

---

not entirely clear, Plaintiff may have meant to cite Exhibit J, which notes the four incidents and the damage incurred to Wortham's truck. (*See* Doc. 102-7.)

The Sixth Circuit has observed that, in cases "arising out of an automobile-truck accident in Tennessee[,] . . . poor judgment and lack of ordinary care are not the stuff of which punitive damages awards are made[.]" *Leap v. Malone*, 106 F.3d 401, 1996 WL 742306, at *2 (6th Cir. 1996) (table) (citation modified); *Womack v. Gettelfinger*, 808 F.2d 446, 453–54 (6th Cir. 1986) (holding that punitive damages could not be sustained against a truck driver who made a wide-turn onto a highway in heavy fog); *see also Anderson v. U.S.A. Truck, Inc.*, No. W200601967COAR3CV, 2008 WL 4426810, at *14 (Tenn. Ct. App. Oct. 1, 2008) (listing automobile crash cases where Tennessee state courts have found that punitive damages did or did not apply and noting that a case where the driver "was negligent in his failure to see the plaintiff's vehicle just before impact" did not justify punitive damages).

Here, it is undisputed that Wortham caused the accident because he changed lanes without seeing Plaintiffs' vehicle. (Doc. 75, at 25; Doc. 87, at 12; Doc. 74-1, at 16.) Even if viewed in the light most favorable to the Plaintiff, Wortham's failure to report prior accidents to his employer is insufficient to show that he engaged in "intentional, fraudulent, malicious, or reckless conduct" in connection with the accident in this matter. *See Hodges*, 833 S.W.2d at 901. Also, the four incidents relied on by Plaintiffs involved three incidents where Wortham's vehicle was the only vehicle involved and one incident where "another driver back[ed] into [Wortham's] vehicle." (Doc. 87, at 12.) These incidents are not ones that create a substantial or unjustifiable risk—the requirement for punitive damages. Accordingly, Plaintiffs' prayer for punitive damages against Wortham is denied.

### 2. Punitive Damages Against HMD

Plaintiffs argue that HMD's conscious disregard of Wortham's unfitness for the job and its policy that allowed drivers to cover the inward cameras in the vehicles makes HMD liable for punitive damages. (Doc. 87, at 13–18.) As discussed earlier, HMD was not reckless in hiring,

10

Case 1:24-cv-00155-TRM-MJD    Document 104    Filed 02/17/26    Page 10 of 12
PageID #: 2503

retaining, supervising, or training Wortham (*see supra* Part II.A.2), and Wortham was competent for the job (*see supra* Part II.A.1).

Plaintiffs also argue that HMD's policy of allowing drivers to cover their inward facing camera shows that HMD "conscious[ly] disregarded" public safety. (Doc. 87, at 13.) For a claim that a party was reckless, punitive damages are only awarded "in the most egregious of cases" and when a conscious disregard "constitutes a gross deviation from the standard of care that an ordinary person would exercise." *Hodges*, 833 S.W.2d at 901. Here, the evidence does not establish that HMD's policy of allowing drivers to cover their inward cameras, the lens that would face a driver's sleeping area, is a "gross deviation," especially considering that the recording device had four lenses including a side lens that could capture a driver. (Doc. 90-4, at 20–21.) HMD also utilized a system with real-time monitoring that analyzed drivers' safety and provided HMD metrics monthly for HMD to evaluate drivers' safety performance. (Doc. 74-5, at 3–4.) There is insufficient evidence that HMD's policy of placing recording devices in its vehicles that record drivers' activities but allows drivers to cover the one lens that captures their sleeping area is reckless conduct to warrant punitive damages. Therefore, Plaintiffs' prayer for punitive damages against HMD is denied.

### IV. CONCLUSION

For the reasons stated herein, Defendants' motion for partial summary judgment (Doc. 74) is **GRANTED**. Plaintiffs' direct negligence claims against HMD—negligent entrustment, hiring, supervision, retention, and training—are **DISMISSED WITH PREJUDICE**. Plaintiffs' prayer for punitive damages against both Wortham and HMD is **DENIED**.

**SO ORDERED.**

/s/ *Travis R. McDonough*
**TRAVIS R. MCDONOUGH
UNITED STATES DISTRICT JUDGE**