# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
### AT CHATTANOOGA

| | | |
|---|---|---|
| RADHA BOLIVAR, *et al.*, | ) | |
| | ) | |
| *Plaintiffs*, | ) | Case No. 1:24-cv-155 |
| | ) | |
| v. | ) | Judge Travis R. McDonough |
| | ) | |
| HMD TRUCKING INC, *et al.*, | ) | Magistrate Judge Michael J. Dumitru |
| | ) | |
| *Defendants*. | ) | |

## MEMORANDUM OPINION

Before the Court are: (1) Plaintiffs' motion to exclude the testimony and opinions of Dr. Joseph Schaffer (Doc. 80); and (2) Defendants' motion to exclude the testimony and opinions of Dr. Gregory Smith and for partial summary judgment on future damages (Doc. 77). For the following reasons, the Court will **DENY** Plaintiffs' motion to exclude (Doc. 80) and **DENY** Defendants' motion to exclude and for partial summary judgment (Doc. 77).

## I.      BACKGROUND

This action arises from a motor vehicle collision that occurred on March 1, 2023, between Defendant Antonio Wortham and Plaintiff Radha Bolivar ("Bolivar"). (*See* Doc. 1-2, at 4.) Plaintiff Bolivar had one passenger in his vehicle, Plaintiff Angelica Goatache. (*Id.*) Plaintiffs seek damages for "past, current and future economic and non-economic damages." (*Id.* at 10.)

Plaintiffs retained Dr. Gregory Smith—a medical doctor and life care planner—as an expert. (Docs. 78-3, at 1; 78-4, at 2.) Dr. Smith provided an expert report and life care plan, which estimates future medical costs for Bolivar. (*See* Doc. 78-4.) As the basis for his opinions,

Dr. Smith states he reviewed Bolivar's medical records, which included records from his treating physicians. (*See id.* at 2.) He also conducted an interview with Bolivar. (*Id.* at 7.)

Defendants disclosed Dr. Joseph Schaffer—an orthopedic shoulder surgeon—as an expert. (Doc. 81, at 1.) Dr. Schaffer reviewed video footage of the accident and opines that he does not believe the accident caused Bolivar's shoulder injury based on his knowledge of shoulder injuries, understanding of energy from his engineering degree, and training in sports medicine. (Doc. 80-1, at 5–7.)

## II.     FEDERAL RULES OF EVIDENCE 702 AND 703

### A.      STANDARD OF LAW

Federal Rules of Evidence 702 and 703 govern the admissibility of testimony by expert witnesses. Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702. According to Rule 703, an expert is permitted to base an opinion on facts or data of which she has been made aware or has personally observed. *See* Fed. R. Evid. 703. The underlying facts or data need not be admissible for the opinion to be admitted, so long as an expert in the field would reasonably rely on them in forming an opinion on the subject. *Id.*

The Sixth Circuit has identified three requirements for an expert's testimony to be admissible under Rule 702: (1) "the witness must be qualified by knowledge, skill, experience,

2

training, or education"; (2) "the testimony must be relevant, meaning that it will assist the trier of fact to understand the evidence or to determine a fact in issue"; and (3) "the testimony must be reliable." *Burgett v. Troy-Bilt, LLC*, 579 F. App'x 372, 376 (6th Cir. 2014) (quoting *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 528–29 (6th Cir. 2008)) (citation modified). Reliability is assessed by the factors set out in Rule 702: (1) whether "the testimony is based on sufficient facts or data"; (2) whether "the testimony is the product of reliable principles and methods"; and (3) whether the methods and principles were reliably applied to the facts of the case. Fed. R. Evid. 702. The focus is on reliability rather than "credibility and accuracy." *Superior Prod. P'ship v. Gordon Auto Body Parts Co., Ltd.*, 784 F.3d 311, 323 (6th Cir. 2015) (quoting *In re Scrap*, 527 F.3d at 529). Thus, courts should focus on the methodology employed rather than the conclusions drawn. *Id.*; *see also Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 595 (1993).

In determining whether expert testimony "is the product of reliable principles and methods," Fed. R. Evid. 702(c), courts may consider whether the methods and principles have been and are capable of being tested, whether they have been subjected to peer review and publication, their known or potential rate of error, and whether they are generally accepted within the relevant scientific community. *See Daubert*, 509 U.S. at 593–94; *see also United States v. Mallory*, 902 F.3d 584, 592–93 (6th Cir. 2018) (noting that all of the factors do not necessarily apply in every case). The inquiry, however, is flexible, and the district court may also consider other factors that bear on the reliability of the expert's testimony. *See Kuhmo Tire Co. v. Carmichael*, 526 U.S. 137, 141, 149–50 (1999) ("[A] trial court should consider the specific factors identified in *Daubert* where they are reasonable measures of the reliability of expert testimony."). A rebuttal expert may provide contrasting expert opinions or challenge the

methodology utilized by the opposing party's experts in arriving at his conclusions. *E.E.O.C. v. Tepro, Inc.*, 133 F. Supp. 3d 1034, 1048 (E.D. Tenn. 2015).

While a court's role is to determine whether an expert's testimony is reliable, not whether it is accurate or credible, a court must still determine that an expert's opinion rests on a "reliable foundation" rather than "unsupported speculation." *In re Scrap*, 527 F.3d at 529–30. Even expert testimony based on erroneous facts is generally permitted "when there is some support for those facts in the record." *Id.* at 530. Expert testimony based on "shaky" evidence is admissible, so long as the testimony is not based on "guesses" or "assumptions." *See Jahn v. Equine Servs., PSC*, 233 F.3d 382, 393 (6th Cir. 2000). However, a "court is not required to admit expert testimony 'that is connected to existing data only by [an assertion without proof]" and "may conclude that there is simply too great an analytical gap between the data and the opinion proffered." *Nelson v. Tenn. Gas Pipeline Co.,* 243 F.3d 244, 254 (6th Cir. 2001) (quoting *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)).

"[R]ejection of expert testimony is the exception rather than the rule," and "Rule 702 should be broadly interpreted on the basis of whether the use of expert testimony will assist the trier of fact." *Burgett*, 579 F. App'x at 376 (citation omitted) ("*Daubert* did not work a seachange over federal evidence law, and the trial court's role as a gatekeeper is not intended to serve as a replacement for the adversary system.").

**B.     ANALYSIS**

**1.     Dr. Gregory Smith**

Dr. Smith's expert report discloses that he believes, based on Bolivar's "clinical records and information provided," that Bolivar has:  (1) "ongoing issues with left shoulder internal derangement, cervical and lumbar herniated disc that will require interventional pain injunctions, and/or surgery[;]" (2) that his "chronic pain . . . will benefit from prolonged us of a

4

neuromuscular stimulator[;]" and (3) that his "reported symptoms of anxiety, depression, insomnia and fear/avoidance behaviors . . . need to be evaluated and treated." (Doc. 78-4, at 7–8.) Defendants argue that Dr. Smith is not qualified, that his testimony is not supported by sufficient facts or data, and that his methods are not reliable. (Doc. 78, at 12–17.)

Dr. Smith is board-certified in occupational medicine with over 30 years of clinical practice treating injuries. (Doc. 78-4, at 2.) His training as a doctor, along with his experience with injuries, makes him qualified to analyze the future medical care Bolivar may need as a result of a motor vehicle accident.

His expert report relies on sufficient facts and data. Specifically, he reviewed medical records from several of Bolivar's treating physicians and conducted a phone interview with Bolivar. (*Id.* at 2–5.)

Defendant argues that Dr. Smith's methods are not reliable because he does "not focus on the specific facts of the case but rather provide[s] an average for an abstract, unspecified individual." (Doc. 78, at 15.) However, Dr. Smith's report states he reviewed specific information about Bolivar to come to his conclusions (Doc. 78-4, at 2–5), and whether his opinions are ultimately too abstract is more appropriately determined by a jury after cross examination. *See Burgett*, 579 F. App'x at 376 (holding that "rejection of expert testimony is the exception rather than the rule") (citation omitted).

Defendants disagree with Dr. Smith's conclusions and claim it contradicts other individuals' testimonies about Bolivar's future needs. (Doc. 78, at 15–17.) However, during Dr. Smith's phone interview with Bolivar, he complained to Dr. Smith that he "continues to have ongoing mechanical left shoulder, neck[,] and low back pain that is associated with stiffness and decreased range of motion . . . ." (Doc. 78-4, at 5.) Although Dr. Smith's conclusions may

5

differ from other individuals' opinions about the scope of Bolivar's injuries and his future medical needs, his conclusions have some basis in facts and data specific to Bolivar. Defendants' arguments go to the weight of Dr. Smith's testimony and not the admissibility. Accordingly, Defendant's motion to exclude Dr. Smith pursuant to Federal Rules of Evidence 702 and 703 is **DENIED**.

### 2. Dr. Joseph Schaffer

Dr. Schaffer plans to testify on "Bolivar's alleged injuries, complaints, and limitations and whether or not they are causally related to the March 1, 2023 incident." (Doc. 82, at 4.) One of Dr. Schaffer's opinions is that he does not believe Bolivar's shoulder injury was caused by the accident based on his analysis of Bolivar's medical records and video of the accident. (Doc. 80-1, at 1.)

Plaintiffs "do[] not challenge Dr. Schaffer's qualifications as an orthopedic shoulder surgeon" but argue that he is not qualified to provide an opinion: (1) regarding Bolivar's spine and (2) interpreting video of the accident. (Doc. 81, at 1, 4–8.) Plaintiffs argue that Dr. Schaffer's video analysis lacks technical foundation and may not supplant the jury's exercise of common sense. (*Id.* at 4–5.) Defendants counter that Dr. Schaffer's clinical practice includes evaluating patients for back pain, and that his use of the video was only one piece of information that helped him form his opinion. (Doc. 82, at 3–7.) Defendants also state that Dr. Schaffer is qualified in observing "injuries as they occur and evaluating whether the mechanism of an event is consistent with the alleged injuries." (*Id.* at 5.)

Dr. Schaffer's experience and training as a medical doctor make him qualified to opine on Bolivar's injuries, including his alleged back injuries. Further, his use of the accident video is not outside the scope of his expertise nor does it supplant the jury's exercise of common sense. Rather, Dr. Schaffer states that he formed his opinion based on the video in conjunction with his

6

knowledge of how shoulders work and when Bolivar's symptoms and pain developed. (Doc. 80-1, at 2.) During his deposition, Dr. Schaffer testified that his experience as a shoulder surgeon and his history of observing injuries as they occur in sporting events provide him with knowledge on how injuries may present after an accident. (*Id.* at 2, 6.) Dr. Schaffer's opinion, which is partially based on video evidence, will not supplant the jury's exercise of common sense, because he has specialized knowledge on shoulder injuries and how such injuries can present. Similar to Defendants' argument to exclude Dr. Smith, Plaintiffs' arguments go to the weight of Dr. Schaffer's testimony and not its admissibility. Accordingly, Plaintiffs' motion to exclude Dr. Schaffer is **DENIED**.

## III. FEDERAL RULE OF EVIDENCE 403

Defendants also argue that Dr. Smith's opinion should be excluded because it "would unfairly prejudice Defendants, confuse the issues, mislead the jury, and waste time." (Doc. 78, at 17.) Specifically, Defendants argue that Dr. Smith's opinion is "based on averages and generalities and not particular to Mr. Bolivar." (*Id.*)

Rule 403 of the Federal Rules of Evidence states that the "[C]ourt may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

Defendants' argument that Dr. Smith's opinion is not based on information particular to Bolivar is unpersuasive. Dr. Smith's report states that he relied on Bolivar's medical records and an interview with Bolivar to come to his conclusions. (Doc. 78-4, at 2–5.) Dr. Smith's opinions are probative to Bolivar's claims that he is entitled to future damages and are not substantially outweighed by the danger of unfairly prejudicing Defendants, confusing the issues, misleading

7

the jury, or wasting time.  Therefore, Defendants' motion to exclude Dr. Smith's testimony pursuant to Federal Rule of Evidence 403 is denied.

## IV.    SUMMARY JUDGMENT ON DAMAGES

Defendants move for partial summary judgment "as it relates to Mr. Bolivar's claims for future economic and non-economic damages" because Dr. Smith's "testimony cannot create a genuine issue of material fact."  (Doc. 78, at 18–19.)

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The Court views the evidence in the light most favorable to the nonmoving party and makes all reasonable inferences in favor of the nonmoving party.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis Inc.*, 253 F.3d 900, 907 (6th Cir. 2001).  The moving party bears the burden of demonstrating that there is no genuine dispute as to any material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Leary v. Daeschner*, 349 F.3d 888, 897 (6th Cir. 2003).  The moving party may meet this burden either by affirmatively producing evidence establishing that there is no genuine issue of material fact or by pointing out the absence of support in the record for the nonmoving party's case.  *Celotex*, 477 U.S. at 325.  At summary judgment, the Court may not weigh the evidence; its role is limited to determining whether the record contains sufficient evidence from which a jury could reasonably find for the non-movant.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986).

Here, Defendants argue that there is no genuine issue of material fact of future damages because Dr. Smith's opinions contradict earlier testimony by Bolivar, medical records, and testimonies of three other physicians.  (*See* Doc. 78, at 19.)  Although Dr. Smith's opinions

8

contradict other evidence, his opinions are based on his analysis of Bolivar's medical records and an interview with Bolivar that occurred after the testimony cited by Defendants. (Doc. 78-4, at 2–5.) There is sufficient evidence that establishes a dispute of fact regarding Bolivar's claims for future damages. Accordingly, Defendants' motion for partial summary judgment is **DENIED**.

## V. CONCLUSION

For the reasons stated above, Plaintiffs' motion to exclude Dr. Schaffer (Doc. 80) is **DENIED**, and Defendants' motion to exclude Dr. Smith and for partial summary judgment (Doc. 77) is **DENIED**.

**SO ORDERED.**

/s/ *Travis R. McDonough*
**TRAVIS R. MCDONOUGH**
**UNITED STATES DISTRICT JUDGE**

9